UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| GOVERNOR JOSH SHAPIRO, *et al.*,<br><br>            Plaintiffs,<br><br>        v.<br><br>U.S. DEPARTMENT OF AGRICULTURE, *et al.*,<br><br>            Defendants. | No. 25-cv-998<br>Judge Joseph F. Saporito, Jr. |

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

Table of Authorities ............................................................................................. ii

Introduction ......................................................................................................... 1

Background .......................................................................................................... 2

Statement of the Question Involved .................................................................... 5

Standard of Review ............................................................................................. 5

Argument ............................................................................................................. 6

   I.     USDA's unexplained termination of the LFPA program is
         likely arbitrary and capricious. .................................................... 6

   II.    USDA's unexplained termination of the LFPA program will
         cause irreparable harm. ............................................................... 12

   III.   Balancing the remaining equitable considerations favors
         granting an injunction of USDA's unexplained termination of
         the LFPA program. ..................................................................... 16

Conclusion ......................................................................................................... 17

**TABLE OF AUTHORITIES**

**Cases**

*Chosen 300 Ministries, Inc. v. City of Philadelphia*, No. 12-cv-3159,
   2012 WL 3235317 (E.D. Pa. Aug. 9, 2012) .......................................................17

*Coinbase, Inc., v. SEC*, 126 F.4th 175 (3d Cir. 2025) ...........................................6, 8

*Colorado v. U.S. Dep't of Health & Human Servs.*, No. 25-cv-121,
   2025 WL 1426226 (D.R.I. May 16, 2025) ..........................................................11

*Dep't of Homeland Security v. Regents of the Univ. of Cal.*, 591 U.S.
   1 (2020) ...................................................................................................................7

*Encino Motorcars, LLC v. Navarro*, 579 U.S. 211 (2016)................................ 6, 7, 9

*FDA v. Wages & White Lion Investments, L.L.C.*, 145 S.Ct. 898
   (2025).......................................................................................................................7

*Jie Fang v. Dir. United States Immigration & Customs Enf't*, 935 F.3d
   172 (3d Cir. 2019)..................................................................................................10

*Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700 (3d Cir. 2004) .............................17

*Logic Tech. Dev. LLC v. United States Food & Drug Admin.*, 84 F.4th
   537 (3d Cir. 2023)....................................................................................................7

*Massachusetts v. Kennedy*, No. 25-cv-10814, 2025 WL 1371785 (D.
   Mass. May 12, 2025) .............................................................................................11

*Nat'l Jobs Corps Assoc. v. Dep't of Labor*, No. 25-cv-4641, 2025 WL
   1752414 (S.D.N.Y. June 25, 2025) ......................................................................11

*Ohio v. Environmental Protection Agency*, 603 U.S. 279 (2024) ............................6

*Reilly v. City of Harrisburg*, 858 F.3d 173 (3d Cir. 2017) ................................. 6, 12

*Rhode Island v. Trump*, No. 25-cv-128, 2025 WL 1303868 (D.R.I.
   May 6, 2025).........................................................................................................11

*Smith v. City of Atl. City*, 138 F.4th 759 (3d Cir. 2025) .........................................16

*Thakur v. Trump*, No. 25-cv-4737, 2025 WL 1734471 (N.D. Cal. June 23, 2025) ..................................................................................................11

*Widakuswara v. Lake*, No. 25-cv-1015, 2025 WL 1166400 (D.D.C. Apr. 22, 2025) ....................................................................................11

**Statutes**

5 U.S.C. § 704 .........................................................................................10

5 U.S.C. § 706 ...........................................................................................6

## INTRODUCTION

This action challenges the U.S. Department of Agriculture's decision to end a program administered by the Pennsylvania Department of Agriculture that let food banks purchase food from local farmers to then be used to supply healthy meals to Pennsylvanians experiencing hunger. USDA terminated that program because, it concluded, the program no longer effectuated USDA's priorities. That conclusion bears none of the hallmarks of reasoned decision making. In fact, USDA has failed to provide ***any*** explanation for its decision. The termination is therefore likely arbitrary and capricious, in violation of the Administrative Procedure Act.

Further, the support that the now-terminated program provided food banks on the front lines of the fight against food insecurity is irreplaceable. USDA's termination decision will deprive the Pennsylvanians most in need of food assistance of over 12 million meals that otherwise would have been available through Pennsylvania's food banks. Even more, local farms that anticipated selling some of their product to these food banks will now have some of that food wasted. These harms are irreparable. And having food wasted rather than go to the people who need it most is certainly not in the public interest.

For these reasons, the Court should grant Plaintiffs' motion for a preliminary injunction.

**BACKGROUND**

Since 2022, the Pennsylvania Department of Agriculture (PDA) has administered USDA's Local Food Purchase Assistance (LFPA) Program in Pennsylvania. Sec. Russell Redding Decl. ¶¶ 11-12 (attached as Exhibit 1). LFPA is a food-assistance program through which funding received from USDA is used to purchase food from Pennsylvania farmers to then be distributed through Pennsylvania's charitable food network to adults and children experiencing food insecurity. Redding Decl. ¶ 13; Julie Bancroft Decl. ¶¶ 8-9 (attached as Exhibit 2).

The program's purpose "is to maintain and improve food and agricultural supply chain resiliency," and the program allows states "to procure and distribute local and regional foods and beverages that are healthy, nutritious, unique to their geographic areas and that meet the needs of the population."[1]

PDA received nearly $30 million through two initial rounds of USDA funding for LFPA. That money allowed PDA to run its LFPA program until midway through 2025. By July 2025, the $30 million invested in the program was exhausted, all used to allow food banks to purchase healthy food from local farmers. Redding Decl. ¶ 12. That food has provided more than 25 million meals to people experiencing hunger in Pennsylvania. Bancroft Decl. ¶ 10.

---

[1] *See Local Food Purchase Assistance Cooperative Agreement Program*, USDA, available at: https://www.ams.usda.gov/selling-food-to-usda/lfpacap (last visited July 3, 2025).

2

Initially, USDA did not want the program to expire. In October 2024, USDA announced it would provide further funding for states' LFPA programs. Redding Decl. ¶ 14. And in December 2024, USDA awarded PDA $13 million more to continue its LFPA program. Redding Decl. ¶¶ 15-16; *see also* Exhibit A to Redding Decl. After executing an agreement for the $13 million (referred to here as the LFPA25 Agreement) PDA began preparations to contract with Feeding Pennsylvania—a statewide association of food banks—to administer use of the $13 million. Redding Decl. ¶ 17; Bancroft Decl. ¶ 6. PDA also had started on a project summary and work plan to submit to USDA for approval of PDA's planned use of the $13 million award. Redding Decl. ¶ 17.

Approval of those documents would have allowed PDA to begin expending LFPA25 funds after exhausting the earlier $30 million allocation. Redding Decl. ¶ 17. PDA intended to begin using funds awarded under LFPA25 in July 2025. Redding Decl. ¶ 16. That funding would have been directed to Pennsylvania's charitable food network to purchase food from Pennsylvania farmers. Redding Decl. ¶ 16.

In March 2025, without warning, USDA notified PDA via letter that it intended to terminate the LFPA25 Agreement "in accordance with 2 C.F.R. § 200.340(a)(4) and the terms and conditions of the award." Redding Decl. ¶ 18; *see also* Exhibit B to Redding Decl. Quoting the same regulation, USDA asserted that the agreement "no longer effectuates agency priorities" and thus that "termination

of the award is appropriate." *See* Exhibit B to Redding Decl. The termination letter did not provide any explanation for why or how USDA had made its determination. *See* Exhibit B to Redding Decl.

PDA Secretary Russell Redding responded to the notice asking that USDA describe its procedures for the administrative appeal that USDA was required to make available under 2 C.F.R. § 200.342. Redding Decl. ¶¶ 19-20; *see also* Exhibit C to Redding Decl.

USDA never responded. Redding Decl. ¶ 21. Instead, USDA Secretary Brooke Rollins visited Pennsylvania to publicly proclaim that PDA did not have the facts right. Redding Decl. ¶ 22.

Secretary Redding then sent Secretary Rollins a subsequent letter to address her misconceptions about how the LFPA program operated and of the relevant facts. Redding Decl. ¶ 22; *see also* Exhibit D to Redding Decl.

USDA did not respond to this letter either. Redding Decl. ¶ 23.

On May 7, 2025, USDA informed PDA it had made a final decision to end PDA's LFPA program and terminate the funding allocated under the LFPA25 Agreement. Redding Decl. ¶ 24; *see also* Exhibit E to Redding Decl. To date, USDA has neither accepted PDA's letters as an administrative appeal of the termination nor told PDA how it can appeal.

Even after USDA made its final decision, Secretary Redding met with representatives of USDA to encourage them to revisit the decision and to ask that they describe the appeal procedures. Redding Decl. ¶ 25. USDA would do neither.

Having exhausted all other options, Plaintiffs—Governor Josh Shapiro, Secretary Redding, and PDA—filed this action. The complaint includes four counts: (1) that the termination decision was arbitrary and capricious; (2) that the termination decision was beyond the authority conferred to Defendants under 2 C.F.R. § 200.340; (3) that the termination decision failed to comply with the procedural requirements of 2 C.F.R. § 200.341; and (4) that Defendants failed to provide due process.

Having been unable to agree with Defendants on an expedited schedule for final resolution of this matter, Plaintiffs have moved for preliminary injunctive relief. Plaintiffs seek preliminary injunctive relief only on their first count.

## STATEMENT OF THE QUESTION INVOLVED

Should this Court preliminary enjoin the U.S. Department of Agriculture's unexplained decision to end a program that provided critical support for Pennsylvanians, including children, experiencing hunger and for Pennsylvania farmers?

## STANDARD OF REVIEW

District courts may grant preliminary injunctions when a Plaintiff demonstrates that they are likely to succeed on the merits of their claim and irreparable

harm is more likely than not absent preliminary relief. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017). If both those are true, the court should also evaluate "the possibility of harm to other interested persons from the grant or denial of the injunction" as well as "the public interest," *id.* at 176 (internal citations omitted), and then weigh whether, as matter of sound discretion, the balance of all four factors together favors granting the requested preliminary relief, *id.* at 179.

## ARGUMENT

### I.    USDA's unexplained termination of the LFPA program is likely arbitrary and capricious.

The Administrative Procedures Act ("APA") requires a court to set aside any agency action that is "arbitrary" or "capricious." 5 U.S.C. § 706(2)(A). A decision is arbitrary or capricious if it "is not reasonable and reasonably explained." *Ohio v. Environmental Protection Agency*, 603 U.S. 279, 292 (2024) (internal quotation marks omitted). To apply this standard, courts look to whether "the agency has offered a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *Id.* (cleaned up). An agency's explanation of its decision must be clear enough that its rationale is reasonably discernable. *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016); *see also Coinbase, Inc., v. SEC*, 126 F.4th 175, 198 (3d Cir. 2025) ("The agency must provide us with assurance that it considered the relevant factors as well as a discernable path to which we may defer." (cleaned up)).

In some contexts, there are certain benchmarks an agency must hit to demonstrate that its action is the product of reasoned decision making. If an agency is changing its position, that requires "a reasoned explanation for the change." *FDA v. Wages & White Lion Investments, L.L.C.*, 145 S.Ct. 898, 916 (2025)*. In this explanation, the agency "must at least display awareness that it is changing position and show that there are good reasons for the new policy." *Encino*, 579 U.S. at 221 (cleaned up).

Additionally, agency action that departs from prior practice must acknowledge and account for legitimate reliance interests in the prior practice. *Dep't of Homeland Security v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020). It is arbitrary and capricious to change position without accounting for legitimate reliance interests. *Id.*

Finally, courts may not sustain an agency decision "based only on any *post hoc* reasoning" that the federal agency introduces for the first time in litigation. *Logic Tech. Dev. LLC v. United States Food & Drug Admin.*, 84 F.4th 537, 549 (3d Cir. 2023). Rather, courts may look only to "justifications that were available to and relied upon by the agency" when it made its decision. *Id.*

Here, Defendants' decision to cancel the LFPA25 Agreement was arbitrary and capricious because Defendants have repeatedly failed to offer ***any*** explanation or reason for their action. In their initial termination notice, Defendants parroted

7

regulatory language by asserting that the LFPA25 Agreement "no longer effectuates agency priorities," but the letter says nothing else. *See* Exhibit. B to Redding Decl. Such conclusory assertions do not satisfy the APA's demand for reasoned decision making. *Coinbase*, 126 F.4th at 199. Defendants did not say, for example, what agency priorities had been served by the LFPA25 Agreement, which of those priorities had changed, why those priorities had changed, what the new priorities are, or why any change in priorities justified terminating the agreement.

When Secretary Redding asked for this information by letter in March, he received no response. Instead, USDA Secretary Brooke Rollins came to Pennsylvania in April and made public comments that "[t]he money is there" for Pennsylvania and other states to continue their LFPA programs. Redding Decl. ¶ 22; *see also* Compl. ¶ 49 & n.2. It was not clear then, and it is not clear now, whether Secretary Rollins intended this statement to explain USDA's termination decision, but if she did, the statement is nonsensical. PDA does not have money to continue a federal program when the federal government stops funding the program. And to the extent Secretary Rollins meant to justify the termination by suggesting that PDA had remaining money to use under its initial allocations of LFPA funding, the justification has no factual support. Redding Decl. ¶ 16. Secretary Rollins's statement makes USDA's decision only more arbitrary and capricious.

Defendants' decision to extend the program in December 2024 but terminate it in March 2025, without explanation, exemplifies arbitrary and capricious action. It is precisely the type of "[u]nexplained inconsistency" in agency action that the Supreme Court has held violates the APA. *See Encino*, 579 U.S. at 222.

Moreover, if a food assistance program that benefits both Pennsylvania farmers and Pennsylvanians without reliable access to food somehow no longer effectuates USDA's priorities, that is a change from the agency's position only a few months earlier. Yet USDA has not at all acknowledged the change, even further reason their termination is arbitrary and capricious.

Nor does the termination give any consideration to the reasonable reliance engendered by the LFPA25 Agreement. PDA had already begun preparations for use of that funding. Redding Decl. ¶ 17. Farmers that had previously sold to food banks supported by LFPA funding had made production decisions based on an understanding that the LFPA program would continue throughout 2025 and on. Saad Ali Decl. ¶¶ 12-13 (attached as Exhibit 3); Amy Brickner Decl. ¶¶ 12-13 (attached as Exhibit 4); Brian Campbell Decl. ¶¶ 11-12 (attached as Exhibit 5). Food banks that previously had received funding from LFPA similarly expected to continue receiving funds through the LFPA25 Agreement and had taken concrete steps in anticipation, such as cultivating relationships with growers, expanding distribution programs, expanding storage space, and bringing on new staff. Gregory Hall Decl. ¶¶ 13-14

9

(attached as Exhibit 6); Loree Jones-Brown Decl. ¶¶ 13-14 (attached as Exhibit 7); Jennifer Warabak Decl. ¶¶ 13-14 (attached as Exhibit 8).

Because Defendants' arbitrary termination decision constitutes final agency action, it is subject to review under the APA. 5 U.S.C. § 704. To be final, agency action "must mark the 'consummation' of the agency's decision-making process, and the action must determine a 'right[ ] or obligation[ ].'" *Jie Fang v. Dir. United States Immigration & Customs Enf't*, 935 F.3d 172, 180 (3d Cir. 2019) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)). The decision to end the LFPA25 Agreement because it supposedly no longer effectuates USDA's priorities satisfies both requirements.

By its own terms, the May 2025 termination letter reflects a consummation of agency decision-making—it states that "the USDA Agricultural Marketing Service **has terminated** the subject agreement" in accordance with the notice first issued in March. *See* Exhibit E to Redding Decl. (emphasis added). The term "terminated" reflects a final decision. And despite PDA's attempt to appeal the termination or obtain the procedures for doing so, USDA has declined to engage in any further administrative review. *See* Redding Decl. ¶¶ 20-25. USDA's silence further indicates finality.

Moreover, there can be little doubt that the decision determined a right of Plaintiffs—prior to termination, they could administer the federally funded LFPA

food assistance program. Now they cannot. Indeed, in recent months, courts have repeatedly ruled that federal agencies' decisions to terminate grants and agreements for federally funded programs constitute final agency action reviewable by district courts. *See, e.g.*, *Nat'l Jobs Corps Assoc. v. Dep't of Labor*, No. 25-cv-4641, 2025 WL 1752414, at *7 (S.D.N.Y. June 25, 2025) (holding that decision to terminate jobs program was final agency action); *Thakur v. Trump*, No. 25-cv-4737, 2025 WL 1734471, at *16 (N.D. Cal. June 23, 2025) (holding that "form grant termination letters represent final agency actions"); *Colorado v. U.S. Dep't of Health & Human Servs.*, No. 25-cv-121, 2025 WL 1426226, *11 (D.R.I. May 16, 2025) (holding that "actions in terminating the public health funding at issue satisfy both prongs of the final agency test"); *Massachusetts v. Kennedy*, No. 25-cv-10814, 2025 WL 1371785, *10 (D. Mass. May 12, 2025) (holding that directives resulting in the termination of grants were final agency action); *Rhode Island v. Trump*, No. 25-cv-128, 2025 WL 1303868, at *9 (D.R.I. May 6, 2025) (holding that grant termination notices nearly identical to the one here constituted final agency action); *Widakuswara v. Lake*, No. 25-cv-1015, 2025 WL 1166400, at *12 (D.D.C. Apr. 22, 2025) (holding that cancellation of grants to United States Agency for Global Media was final agency action).

The termination of the LFPA25 Agreement was final agency action. And given that there was no reason at all provided for the termination decision, it was

arbitrary and capricious. Plaintiffs thus have a "significantly better than negligible"

chance that they will be successful on Count I. *See Reilly*, 858 F.3d at 179.

## II.    USDA's unexplained termination of the LFPA program will cause irreparable harm.

People must eat every day. But not everyone always has ready access to food.

The LFPA program was created to respond to that problem. Terminating it, therefore, keeps food from those who need it, and every day matters. At the same time, because PDA's LFPA program allowed food banks to purchase food from local farmers, terminating the program disrupts local supply chains. These are irreparable harms that could not be remedied when the termination of the LFPA25 Agreement is found unlawful at the end of this case.

Food insecurity is a persistent problem in Pennsylvania and across the country. A 2023 report identified 1.7 million Pennsylvanians (which is one of out eight) as food insecure, meaning they lacked certainty about where their next meal would come from. Redding Decl. ¶ 8; Bancroft Decl. ¶¶ 6-7; Warabak Decl. ¶ 7; Lisa Scales Decl. ¶ 7 (attached as Exhibit 9); Shila Ulrich Decl. ¶ 7 (attached as Exhibit 10). In the Philadelphia area alone, about 700,000 people are food insecure. Decl. Jones-Brown ¶ 7.

Rates of food insecurity are even higher among children—closer to 20%—and there are around 475,000 children in Pennsylvania who do not know always

have ready access to food. Redding Decl. ¶ 8; Hall Decl. ¶ 7; Warabak Decl. ¶ 7;

Scales Decl. ¶ 7; Ulrich Decl. ¶ 7; Rebecca Page Decl. ¶ 7 (attached Exhibit 11).

Pennsylvania's network of food banks works to reduce food insecurity across

the Commonwealth's 67 counties by providing access to fresh, nutritious food. Ban-

croft Decl. ¶ 6. That network serves around 1.5 million people every year who need

food. Bancroft Decl. ¶¶ 6-7.

More specifically:

- In the Pittsburgh area, the Greater Pittsburgh Community Food Bank has averaged over 830,000 visits monthly for the current fiscal year. Scales Decl. ¶ 8.

- Philabundance, which covers five counties in Southeastern Pennsylvania (and four more in Southern New Jersey), serves around 135,00 people weekly. Its children and family programs distributed over 1 million pounds of food during fiscal year 2024 to children facing hunger. Jones-Brown Decl. ¶¶ 6-8.

- The Central Pennsylvania Food Bank, which covers a 27-county region, serves 250,000 individuals every month, including children and seniors. Ulrich Decl. ¶¶ 6, 8.

- Helping Harvest provides food to over 100,000 people every year in Berks and Schuylkill Counties, including over 20,000 children. Jay Worrall Decl. ¶ 8 (attached as Exhibit 12).

- Second Harvest Food Bank, which covers 11 counties in Northwest Pennsylvania, serves about 88,000 people annually, more than a third of which are children. Hall Decl. ¶¶ 6, 8.

- The Community Food Warehouse of Mercer County serves 13,000 people each month, more than 40% of which are children. Page Decl. ¶ 8.

13

- In 2024, the Weinberg Northeast Regional Foodbank delivered more than 1,100,000 meals across Lackawanna, Luzerne, Susquehanna, and Wyoming Counties. Warabak Decl. ¶¶ 7-8.

Defendants' termination decision will deprive more than a million people who rely on Pennsylvania's charitable food network of access to food, because the LFPA program provides irreplaceable funding for each food bank to buy healthy food. Bancroft Decl. ¶ 15. Statewide, the termination could result in 12 million fewer meals reaching the people who most need them. Redding Decl. ¶ 27; Bancroft Decl. ¶ 15. In particular:

- The Greater Pittsburgh Community Food Bank has received about $4.6 million through LFPA since 2022. It has used that money to buy more than 7 million pounds of milk, eggs, produce and other products. It has no substitute for the money received through LFPA and anticipates providing 1.8 million fewer meals to the community it serves because of the LFPA25 termination. Scales Decl. ¶¶ 9-15.

- Philabundance has received about $4.3 million from LFPA since 2022. It has used that money to purchase 3.19 million pounds of produce, eggs, meat, and more. That food has been used for more than 2.45 million meals. Philabundance will provide 1.2 million fewer healthy meals following the LFPA25 termination decision because there is no replacement for what it expected to receive through that funding. Jones-Brown Decl. ¶¶ 9-15.

- The Central Pennsylvania Food Bank has used roughly $6.2 million received through LFPA since 2022 to purchase proteins, milk, eggs, and dairy products. It has no replacement for funding received through LFPA. Therefore, because of the LFPA25 termination, the Central Pennsylvania Food Bank will spend $173,000 less per month on the healthy foods that it ultimately provides to children, seniors, and adults who are food insecure. Ulrich Decl. ¶¶ 9-15.

- Helping Harvest, which has used around $1.3 million received from LFPA since 2022 to purchase fresh products, will spend roughly $450,000 less than anticipated in 2025 on the products it delivers to community members

because it has no funding to replace what it anticipated receiving through LFPA25. Worrall Decl. ¶¶ 9-14.

- Second Harvest Food Bank, which has used the $1.6 million from LFPA since 2022 to purchase milk, eggs, and produce, will be able to provide around 850,000 fewer meals than anticipated following the LFPA25 termination because it has no replacement funding. Hall Decl. ¶¶ 9-15.

- The Community Food Warehouse of Mercer County has received about $277,000 through LFPA since 2022, which it has used to purchase nutrient-dense foods it then served in rural communities. It has no replacement for money received through LFPA and will have to reduce its food distribution operation because of the LFPA25 termination. Page Decl. ¶¶ 9-15.

- The Weinberg Northeast Regional Food Bank has used roughly $1.7 million received through LFPA since 2022 to purchase 1.4 million pounds of milk, dairy, and fresh produce from Pennsylvania vendors. It has no replacement for LFPA funding. Because of the LFPA25 termination, the Weinberg Northeast Regional Food Bank will have to reduce the meals it can provide to people—including through its Children's Produce Market—experiencing food insecurity. Warabak Decl. ¶¶ 9-15.

Defendants' decision to terminate LFPA25 will not only stop food from reaching people who need it most, it will disrupt Pennsylvania's supply chain and lead to food going to waste.

The network of food banks that receive LFPA funding use it to purchase from around 190 Pennsylvania farmers. Redding Decl. ¶ 13; Bancroft Decl. ¶ 14. Those purchases are an important revenue source for Pennsylvania farmers. Ali Decl. ¶¶ 8-10; Brickner Decl. ¶¶ 8-10; Campbell Decl. ¶¶ 7-9; Ben Rice Decl. ¶¶ 8-10 (attached as Exhibit 13); David Schneider Decl. ¶¶ 8-10 (attached as Exhibit 14). Many had taken steps to prepare for the upcoming year based on the expected availability of the $13 million that would come to Pennsylvania through the LFPA25 Agreement.

Brickner Decl. ¶¶ 12-14; Schneider Decl. ¶¶ 12-14; Campbell Decl. ¶¶ 11-12. That included keeping production up during months when demand typically drops or expanding capacity. Ali Decl. ¶ 13; Brickner Decl. ¶ 13.

Several farmers now risk the possibility of having to waste some of their product because of the loss of anticipated buyers. Ali Decl. ¶ 11, 14; Brickner Decl. ¶ 11; Campbell Decl. ¶¶ 10, 13; Rice Decl. ¶¶ 9, 11; Schneider Decl. ¶ 11. That is particularly true for products such as produce, meat, and milk, that are either perishable or have a shorter shelf life. Ali Decl. ¶ 11; Brickner Decl. ¶ 14; Rice Decl. ¶ 11. For some farms, this loss could be up to 20% of their total production and could require layoffs. Ali Decl. ¶ 14; Brickner Decl. ¶ 11.

## III.    Balancing the remaining equitable considerations favors granting an injunction of USDA's unexplained termination of the LFPA program.

The final two factors to be considered for a preliminary injunction—whether the injunction is in the public interest and whether it would harm the defendant— may be combined in cases involving a government defendant. *Smith v. City of Atl. City*, 138 F.4th 759, 779 (3d Cir. 2025). Here, consideration of these factors further supports granting an injunction.

Although courts are required to consider the public interest, this determination is "often fairly routine" because "'[a]s a practical matter, if a plaintiff demonstrates both a likelihood of success on the merits and irreparable injury, it almost always will be the case that the public interest will favor the plaintiff.'" *Kos Pharm., Inc. v.*

16

*Andrx Corp.*, 369 F.3d 700, 730 (3d Cir. 2004) (quoting *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 n.8 (3d Cir. 1994)).

Here, the impact of preliminary relief on the Defendants would be minimal. They will have little reliance on their recent termination decision and will experience no burden if a program that is already established and had been operating for several years resumes.

By contrast, as described above, the impact of termination on the public is devastating. "It hardly needs to be said that [ ] food-sharing programs benefit the public interest." *Chosen 300 Ministries, Inc. v. City of Philadelphia*, No. 12-cv-3159, 2012 WL 3235317, at *26 (E.D. Pa. Aug. 9, 2012).

## CONCLUSION

For the reasons above, the Court should grant Plaintiffs' motion for a preliminary injunction and enjoin USDA's May 2025 termination of PDA's LFPA program.

July 3, 2025

Respectfully submitted,

John H. Howard (Pa. 84002)
Chief Counsel
Pennsylvania Department of Agriculture
2301 N. Cameron Street
Harrisburg, PA 17110

Jennifer C. Selber
General Counsel

Michael J. Fischer (Pa. No. 322311)
Executive Deputy General Counsel

*s/ Jacob B. Boyer*

Jacob B. Boyer (Pa. No. 324396)
Stephen R. Kovatis (Pa. No. 209495)
Deputy General Counsel
Office of General Counsel
30 North Street, Suite 200
Harrisburg, PA 17101
jacobboyer@pa.gov
(717) 460-6786

*Counsel for Plaintiffs*

## CERTIFICATES

I hereby certify that a copy of this motion has been served on all counsel of record using the Court's CM/ECF system.

I further certify, as required under Local Rule 7.8(b)(2), that this brief is 4,064 words long as determined by Word's word count feature.