# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GOVERNOR JOSH SHAPIRO, *et al.*, | Case No.  1:25-CV-00998 |
| Plaintiffs, | |
| v. | Hon. Joseph F. Saporito, Jr., United States District Judge |
| U.S. DEPARTMENT OF AGRICULTURE, *et al.*, | |
| Defendants. | |

## BRIEF IN OPPOSITION TO PLAINTIFFS'
## MOTION FOR PRELIMINARY INJUNCTION

JOHN C. GURGANUS
Acting United States Attorney

Richard D. Euliss
Assistant U.S. Attorney
DC 999166
1501 N. 6th Street, Box 202
Harrisburg, PA 17102
Phone: (717) 221-4482

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

NATURE OF THE CASE ........................................................................................2

PROCEDURAL HISTORY......................................................................................5

STATEMENT OF FACTS .......................................................................................5

    I.    Local Food Purchase Assistance ...................................................................5

    II.   LFPA Plus and the Commodity Credit Corporation ...................................6

    III.  LFPA25 .........................................................................................................9

QUESTION PRESENTED.....................................................................................11

LEGAL STANDARD.............................................................................................11

ARGUMENT .........................................................................................................12

    I.    The Court Lacks Jurisdiction to Compel the Government to Pay Money
        Under a Contract...........................................................................................12

        A. The Source of Plaintiffs' Right to Funding Is the LFPA25
           Agreement ..............................................................................................15

        B. Plaintiffs Seek a Remedy Which Sounds in Contract...........................18

        C. Plaintiffs Cannot Evade *Dep't of Educ* ...............................................19

    II.   Two Statutory Exceptions to the APA's Sovereign Immunity Waiver
        Apply Here....................................................................................................22

        A. Plaintiffs Have Other Adequate Remedies Available to Them.............22

        B. CCC Funding Decisions Are Committed to Agency Discretion by
           Law .......................................................................................................24

III.    Plaintiffs Cannot Show Likelihood of Success on the Merits Claims Even if the APA Is an Appropriate Recourse for Plaintiffs' Dispute ................... 27

   A. Plaintiffs Failed to Exhaust Administrative Remedies ........................... 28

   B. The Terminations Were Not Arbitrary and Capricious ......................... 30

IV.    Plaintiffs Cannot Demonstrate Irreparable Harm ............................................. 33

   A. Plaintiffs Rely Exclusively on Supposed Irreparable Harm of Non-Parties ................................................................................................................. 33

   B. Monetary Damages Are Not Irreparable ......................................... 34

V.    A Preliminary Injunction Would Cause the USDA Irreparable Harm and Would Not Serve the Public Interest ................................................................... 36

VI.    If the Court Issues a Preliminary Injunction, It Should Direct Plaintiffs to Post Security ........................................................................................................... 38

CONCLUSION ....................................................................................................................... 39

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Adams v. Freedom Forge Corp.*,
   204 F.3d 475 (3d Cir. 2000) ......................................................................... 33, 35

*Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*,
   357 F.3d 62 (D.C. Cir. 2004) ........................................................................ 13, 14

*Am. Library Ass'n v. Sonderling*,
   2025 WL 1615771 (D.D.C. June 6, 2025) ............................................................ 21

*Autobar Systems of New Jersey v. Berg Co., LLC*,
   No. 23-2541, 2024 WL 3859807 (3d Cir. 2024) .................................................. 35

*Bastek v. Fed. Crop Ins. Corp.*,
   145 F.3d 90 (2d Cir. 1998) ................................................................................... 28

*Boarhog LLC v. United States*,
   129 Fed. Cl. 130 (2016) ....................................................................................... 23

*Bowen v. Massachusetts*,
   487 U.S. 879 (1988) ............................................................................................. 23

*Campbell Soup Co. v. ConAgra, Inc.*,
   977 F.2d 86 (3d Cir. 1992) ................................................................................... 35

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*,
   38 F.4th 1099 (D.C. Cir. 2022) ........................................................ 13, 14, 18, 24

*DaimlerChrysler Corp. v. Cuno*,
   547 U.S. 332 (2006) ............................................................................................. 13

*Darby v. Cisneros*,
   509 U.S. 137 (1993) ............................................................................................. 29

*Dep't of Com. v. New York*,
   588 U.S. 752 (2019) ............................................................................................. 32

*Dep't of Educ. v. California*,
    604 U.S. ---, 145 S. Ct. 966 (2025)......................... 4, 12, 14, 19, 20, 22, 28, 37, 38

*Dice v. Clinicorp, Inc.*,
    887 F.Supp. 803 (W.D. Pa. 1995)........................................................34

*F.C.C. v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009).......................................................................... 31, 32

*Faculty Senate of Fla. Int'l Univ. v. Winn*,
    477 F. Supp. 2d 1198 (S.D. Fla. 2007)...............................................36

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992).............................................................................24

*Franklin-Mason v. Mabus*,
    742 F.3d 1051 (D.C. Cir. 2014)...........................................................13

*Gold Dollar Warehouse, Inc. v. Glickman*,
    211 F.3d 93 (4th Cir. 2000) ................................................................29

*Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002)................................................................... 12, 20, 22

*Gulf Grp. Gen. Enters. Co. W.L.L. v. United States*,
    114 Fed. Cl. 258 (2013) ......................................................................23

*Heckler v. Chaney*,
    470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985)................................ 26, 27

*Hein v. Freedom From Religion Found, Inc.*,
    551 U.S. 587 (2007).............................................................................25

*Hometown Connections v. Noem*,
    2025 WL 1103253 (D. Md. Apr. 14, 2025).........................................21

*Ingersoll-Rand Co. v. United States*,
    780 F.2d 74 (D.C. Cir. 1985)....................................................... 17, 19

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*,
   882 F.2d 797 (3d Cir. 1989) ..................................................................35

*Israel v. U.S. Dep't of Agric.*,
   282 F.3d 521 (7th Cir. 2002) ................................................................30

*Jenkins v. Howard Univ.*,
   123 F.4th 1343 (D.C. Cir. 2024) ...........................................................13

*Kidwell* v. *Dep't of Army, Bd. for Corr. of Mil.,
   Recs.*, 56 F.3d 279 (D.C. Cir. 1995) ....................................................24

*Koons v. Platkin*,
   673 F.Supp.3d 515 (D.N.J. 2023) .........................................................34

*Lincoln v. Vigil*,
   508 U.S. 182 (1993) ........................................................... 24, 25, 26, 27

*Mallet & Co. v. Lacayo*,
   16 F.4th 365 (3d Cir. 2021) ..................................................................11

*Mass. Fair Hous. Ctr. v. U.S. Dep't of Hous. & Urb. Dev.*,
   2025 WL 1225481 (D. Mass Apr. 14, 2025) ........................................21

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
   567 U.S. 209 (2012) ..............................................................................13

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997) ..............................................................................11

*Megapulse, Inc. v. Lewis*,
   672 F.2d 959 (D.C. Cir. 1982) .................................................. 4, 14, 24

*Munsell v. U.S. Dep't of Agric.*,
   509 F.3d 572 (D.C. Cir. 2007) ..............................................................28

*Ovanova, Inc. v. U.S. Dep't of Agric.*,
   2025 WL 343118 (D.D.C. Jan. 30, 2025) .............................................30

*P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*,
  428 F.3d 504 (3d Cir. 2005) ...................................................................12

*Perry Cap. LLC v. Mnuchin*,
  864 F.3d 591 (D.C. Cir. 2017)......................................................... 14, 23

*Reilly v. City of Harrisburg*,
  858 F.3d 173 (3d Cir. 2017) ...................................................................11

*Sampson v. Murray*,
  415 U.S. 61 (1974)........................................................................... 35, 36

*State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*,
  108 F.4th 194 (3d Cir. 2024) ..................................................................11

*Sustainability Inst. v. Trump*,
  2025 WL 1587100 (4th Cir. June 5, 2025)............................................20

*Toaz v. Lane*,
  2018 WL 1431020 (M.D. Pa. Mar. 22, 2018) .......................................34

*Town of Sandford v. United States*,
  140 F.3d 20 (1st Cir. 1998).....................................................................23

*Toyama v. Merit Sys. Protection Bd.*,
  481 F.3d 1361 (Fed. Cir. 2007) ..............................................................30

*Transcon. Gas Pipe Line Co., LLC v. Pa. Envtl. Hearing Bd.*,
  108 F.4th 144 (3d Cir. 2024) ..................................................................11

*Trump v. CASA, Inc.*,
  __ S. Ct. __, 2025 WL 1773631 (June 27, 2025)..................................22

*Turner v. Sec'y of U.S. Dep't of Hous. And Urban Dev.*,
  449 F.3d  (3d Cir. 2006) .........................................................................23

*U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*,
  2025 WL 763738 (D.D.C. Mar. 11, 2025) .............................. 18, 21, 24

*United Food and Commercial Workers Union Local 751 v. Brown Grp., Inc.*,
   116 S. Ct. 1529 (1996) ..........................................................................34

*Vera Inst. of Justice v. U.S. Dep't of Justice*,
   2025 WL 1865160 (D.D.C. July 7, 2025) ............................. 17, 18, 19, 20, 22, 26

<u>Statutes</u>

5 U.S.C. § 701 ................................................................................ 3, 22, 24
5 U.S.C. § 702 ..........................................................................................14
5 U.S.C. § 704 ................................................................................ 4, 22, 23
7 U.S.C. § 6912 ........................................................................................28
7 U.S.C. § 6991 ........................................................................................28
7 U.S.C. § 6992 ........................................................................................29
7 U.S.C. § 6999 ........................................................................................29
15 U.S.C. § 714 ................................................................................ 7, 8, 9, 25 26
28 U.S.C. § 1491 .............................................................................. 3, 12, 14
Pub. L. No. 117-2 .......................................................................................5

<u>Rules</u>

Fed. R. Civ. P. 65 .....................................................................................38

<u>Regulations</u>

2 C.F.R. § 200.340 ...................................................................................31
7 C.F.R. § 11.1 .........................................................................................28

# **INTRODUCTION**

Money is finite.  This means that all spending decisions – whether by single-family households or by federal agencies with nationwide mandates – are discretionary assessments of opportunity costs: a dollar spent here is a dollar unavailable there, making difficult tradeoffs often necessary.  Assessments like these prompted the United States Department of Agriculture ("USDA") to terminate a $13 million cooperative agreement with the Commonwealth of Pennsylvania, leading Plaintiffs to file instant lawsuit.  Resolution of this dispute ultimately comes down to a simple question: does the Judiciary have the power to oversee how a federal agency chooses to allocate its finite, discretionary resources?  As a matter of law, the answer to that question is no.

The USDA, through the Commodity Credit Corporation ("CCC"), has exclusive discretion to decide how much CCC money to spend, and for what purpose.  Here, the USDA exercised that discretion when terminating a program that would have directed CCC funds to the Commonwealth.  Plaintiffs seek an order that would insert the Court into the USDA's prerogative to make these nationwide, high-level, and inherently discretionary programmatic decisions.  Because there is no sovereign immunity waiver allowing district courts to second-guess these sorts of agency actions – and because the cooperative agreement at issue in this case

1

expressly allowed USDA to terminate it unilaterally – this Court should deny Plaintiffs' motion for a preliminary injunction.

## <u>NATURE OF THE CASE</u>

As part of a larger, nationwide pandemic-era program, the USDA entered into a cooperative agreement in December 2024 with the Pennsylvania Department of Agriculture ("PDA") called the "Local Food Purchase Assistance 2025 Cooperative Agreement" (the "LFPA25 Agreement" or "Agreement"). *See* Doc. 1-2; *see also* Declaration of Jack David Tuckwiller ("Tuckwiller Decl.") at ¶¶ 2, 6. The Agreement contemplated USDA reimbursing the Commonwealth up to $13 million for future food purchases from local farms and producers. Among the key contractual terms, however, the LFPA25 Agreement provided that it could be "terminated by either party upon 60-day notice in writing." Doc. 1-2, Statement of Responsibilities, II.C.5.

Applicable law expressly vests in USDA the discretion over how and whether to spend the money that would have funded the LFPA25 Agreement. In reviewing existing contracts, the new Administration concluded that it was no longer an agency priority to allocate additional discretionary assets to LFPA25. *See* Tuckwiller Decl. at ¶¶ 9, 12. As expressly permitted by the LFPA25 Agreement, therefore, on March 7, 2025, the USDA notified the PDA in writing that the Agreement "will be terminated 60 days from today's date" because the agency had since determined that

2

the Agreement "no longer effectuates agency priorities and that the termination of the award is appropriate." *See* Doc. 1-3. The notice of termination sent to PDA was one of 137 similar notices that USDA sent to other state and tribal government LFPA25 recipients throughout the country. *See* Tuckwiller Decl. at ¶ 10. Sixty days later, on May 7, 2025, USDA confirmed in writing that it had terminated the Agreement. *See* Doc. 1-6.

Governor Josh Shapiro, Secretary Russell Redding, and the Pennsylvania Department of Agriculture (collectively, "Plaintiffs"), filed this action challenging the USDA's termination of the Agreement under the Administrative Procedure Act ("APA") and the Due Process Clause of the United States Constitution, though the true substance of Plaintiffs' claims sound in breach of contract. That is, and despite the labels affixed in their Complaint, Plaintiffs' claims seek a Court order directing the specific performance of the Agreement attached as an exhibit to the Complaint. They also seek a preliminary injunction that would afford the same relief. *See generally* Doc. 7. The Tucker Act, however, provides that subject matter jurisdiction over "any claim against the United States found . . . upon any express or implied contact" lies exclusively in the Court of Federal Claims. *See* 28 U.S.C. §1491(a)(1).

Even if the Court did assess the claims under the APA, still Plaintiffs could not show a substantial likelihood of success on the merits because the APA expressly precludes judicial review of "agency action[s] committed to agency discretion by

3

law." 5 U.S.C. §701(a)(2).  The USDA's decision as to how best to allocate the funds that would have been used for Pennsylvania's contemplated cooperative agreement is one committed to its discretion "by law," thus excepting it from judicial review.  Plaintiffs' claims are unreviewable under the APA also because Plaintiffs have an alternative "adequate remedy in court[,]" 5 U.S.C. §704; namely, the Court of Federal Claims.

The Supreme Court's recent decision in *Dep't of Educ. v. California*, 604 U.S. ---, 145 S. Ct. 966 (2025) (per curiam), is highly persuasive, if not dispositive.  In a similar case challenging the government's termination of federal grants, the Supreme Court held that "the Government [was] likely to succeed in showing [that] the District Court lacked jurisdiction to order the payment of money under the APA" because the Tucker Act vests exclusive jurisdiction over such actions in the Court of Federal Claims.  *Id.* at 968.  The Supreme Court's holding was no innovation of law.  The D.C. Circuit – which has a uniquely robust body of jurisprudence over contractual claims against the United States – has long recognized that district courts have no jurisdiction over contractual claims against the United States, even where creative plaintiffs disguise those claims in constitutional, statutory, or regulatory garb.  *See, e.g.*, *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982).  Stated plainly, this Court has no subject matter jurisdiction over this dispute.

Because the Court has no jurisdiction and because – for the reasons stated below – Plaintiffs cannot satisfy the requirements for a preliminary injunction, the Court should deny Plaintiffs' motion.

## PROCEDURAL HISTORY

Plaintiffs filed their Complaint on June 4, 2025, nearly a month after USDA confirmed its termination of the Agreement.  The Complaint includes three counts under the APA and one count under the Due Process Clause of the United States Constitution.  Doc. 1 at 37.  On June 26, 2025 – more than three weeks later – Plaintiffs filed a motion for preliminary injunction, arguing that they are likely to succeed on the merits (only as to Count I alleging arbitrary and capricious agency action) and that they risk irreparable harm in the absence of immediate Court intervention.  *See* Doc. 5.  Plaintiffs waited an additional week to file their brief in support of their motion for preliminary injunction.  *See* Doc. 7.

## STATEMENT OF FACTS

### I.    Local Food Purchase Assistance

In April of 2021, Congress passed the American Rescue Plan Act ("ARPA").  In Section 1001 of that Act, titled "Food Supply Chain and Agricultural Pandemic Response," Congress made a lump-sum appropriation of $4 billion to USDA to use for various discretionary purposes, including, but not limited to, the making of "grants and provid[ing] other assistance to maintain and improve food and

agricultural supply chain resiliency." American Rescue Plan Act of 2021, Pub. L. No. 117-2, §1001(b)(4), 135 Stat. 4. The USDA dedicated $400 million of that appropriation to fund the initial iteration of the LFPA. Critically, the ARPA did not direct the creation of the LFPA program; to the contrary, the LFPA was a discretionary program conceived by USDA in response to the COVID-19 pandemic[1] using this discretionary congressional funding. *See id.*; *see also* Tuckwiller Decl. at ¶2.

USDA solicited applications from any state or tribal government seeking an LFPA award,[2] after which USDA entered into individual, bilateral cooperative agreements "based on need and the ability to meet the goals of the program."[3] The agency's goal with the LFPA was "to maintain and improve food and agricultural supply chain resiliency."[4] The USDA awarded the Commonwealth of Pennsylvania $15,200,000 in LFPA funds. *See* Doc. 1, ¶23.

---

[1] https://www.usda.gov/about-usda/news/press-releases/2024/12/10/usda-announces-availability-113-billion-local-food-programs (last visited June 26, 2025).

[2] https://www.usda.gov/about-usda/news/press-releases/2021/12/06/usda-establishes-food-purchase-program-transform-food-system-build-back-better-local-food-purchase (last visited June 25, 2025).

[3] *Id*.

[4] https://www.ams.usda.gov/selling-food-to-usda/lfpacap (last visited June 25, 2025).

## II.    LFPA Plus and the Commodity Credit Corporation

On or about September 14, 2022, the USDA announced an opportunity for renewed cooperative agreements, referred to as "LFPA Plus."[5]  As with the original LFPA, USDA required applications[6] demonstrating need and ability to meet program goals, after which it again obligated LFPA Plus funds through separate cooperative agreements with individual states and tribal governments.[7]  Unlike the original LFPA, however, USDA funded LFPA Plus not with congressionally-appropriated money, but with nearly $500 million raised directly by the Commodity Credit Corporation ("CCC").[8] *See* Tuckwiller Decl. ¶2.  The CCC is a wholly-owned government corporation formed and held by the USDA pursuant to the Commodity Credit Corporation Charter Act, 15 U.S.C. §§714, *et seq*. (the "Charter Act").[9] Because the CCC does not have any employees of its own, it uses USDA employees,

---

[5] https://www.usda.gov/about-usda/news/press-releases/2022/09/14/usda-invests-nearly-2-billion-leverages-american-agriculture-feed-kids-families (last visited June 25, 2025).

[6] https://www.ams.usda.gov/selling-food-to-usda/lfpacap/plus (last visited June 25, 2025).

[7] https://www.usda.gov/about-usda/news/press-releases/2022/09/14/usda-invests-nearly-2-billion-leverages-american-agriculture-feed-kids-families (last visited June 25, 2025).

[8] *Id*.

[9] https://www.usda.gov/farming-and-ranching/resources-small-and-mid-sized-farmers/commodity-credit-corporation (last visited June 25, 2025).

services, and facilities.[10] *See also* 15 U.S.C. §714i (authorizing the CCC to use USDA employees).

The Charter Act authorizes, but does not require, the CCC to "[p]rocure agricultural commodities . . . for sale to other Government agencies . . . and to meet domestic requirements." 15 U.S.C. §714c(c).  To fulfill that and other purposes, the Charter Act expressly permits the CCC not only to borrow up to $30 billion at any one time to fund USDA priorities,[11] *see* 15 U.S.C. §714b(i), but also to "determine the character of and the necessity for its obligations and expenditures and the manner in which they shall be incurred, allowed, and paid." *Id.* at §714b(j).  As summarized in a Congressional Research Service report, the CCC affords "the Secretary a level of discretion to carry out many broad operations in support of U.S. agriculture." *See* Stubbs, Megan (Jan. 14, 2021) The Commodity Credit Corporation (CCC), CRS Report R44606, https://www.congress.gov/crs-product/R44606  (last visited June 25, 2025).  Through the CCC, "Secretaries of Agriculture have continued to use their administrative discretion to authorize funding and food purchases in response to economic disruptions and administrative priorities." *Id.*

The USDA used the "LFPA Plus" moniker for the second iteration of the program to delineate the different funding sources as compared to the original LFPA.

---

[10] *Id.*

[11] https://www.usda.gov/farming-and-ranching/resources-small-and-mid-sized-farmers/commodity-credit-corporation (last visited June 25, 2025).

Tuckwiller Decl. ¶2. The Commonwealth of Pennsylvania applied for and was awarded $14,724,610 under the LFPA Plus program. Doc. 1, ¶26. Taken together, the USDA awarded Pennsylvania $29,924,610 pursuant to the LFPA and LFPA Plus programs, at least some of which remains available for reimbursement of food purchases.[12]

## III.    LFPA25

On October 1, 2024, the USDA announced an additional $500 million to fund a third iteration of the LFPA program, which later became known as "LFPA25."[13] Like LFPA Plus, LFPA25 funding did not come from a lump-sum congressional appropriation, but from the discretionary funds of the CCC.[14]

On or about December 27, 2024, USDA and PDA executed the LFPA25 Agreement at issue in this litigation, which was one of 137 similar agreements with other state and tribal governments under the LFPA25. *See* Tuckwiller Decl. ¶6. The LFPA25 Agreement relevant here contemplated an additional $13 million for Pennsylvania. *See* Doc. 1-2. The contract made plain the legal authority upon which USDA relied for entering into the cooperative agreement:

---

[12] https://www.ams.usda.gov/sites/default/files/media/LFPA_Impacts_States.pdf (last visited July 14, 2025).

[13] https://www.usda.gov/about-usda/news/press-releases/2024/10/01/usda-invests-17-billion-support-farmers-deliver-nutrition-assistance-and-bolster-rural-economies (last visited June 26, 2025).

[14] *Id.*

4. **Legal Authority**: Section 5(c) of the Commodity Credit Corporation Charter Act (15 USC 714c(c)).

The contract also included an exchange of promises, *see* Doc. 1-2, Section II ("Responsibilities"), and expressly incorporated various components of the Code of Federal Regulations into the terms of the contract:

2. All aspects of this agreement shall be executed according to all applicable parts of Title 2 of the Code of Federal Regulations (CFR), Parts 25, 170, 200, and 400 or as they may be later revised, and successive published regulations as appropriate, hereby incorporated by reference and made a part of this agreement. The State, Territory or Federally Recognized Tribal Agency confirms that it understands and is bound by the above regulations.

Finally, both parties reserved the right to terminate the agreement unilaterally so long as the terminating party provided the other party 60-days' notice in writing:

5. Subject to the necessary authority and funds, this agreement shall continue in force until **January 14, 2028**, unless amended or terminated by mutual consent of the parties in writing or terminated by either party upon 60-day notice in writing.

After the 2025 Presidential transition, the new Administration concluded that it was no longer an agency priority to allocate additional discretionary assets to LFPA25. The USDA, therefore, issued a formal written notice to PDA dated March 7, 2025, expressing its intent to terminate the LFPA Agreement, as permitted by the terms of the contract itself and by 2 C.F.R. §200.340(a)(4). *See* Doc. 1-3. The notice did not contend that USDA's termination was due to any material failure by PDA to comply with the award terms. To the contrary, the USDA stated simply that the LFPA25 "no longer effectuates agency priorities and that termination of the award is appropriate." *Id*. As the USDA later explained, the LFPA program had "created unsustainable programming expectations using the [CCC]." *See* Tuckwiller Decl. at

10

¶ 12, Attach. 1.  Similar notices went to 136 other state and tribal governments. Tuckwiller Decl. ¶10.  The notice confirmed that LFPA and LFPA Plus would remain in effect for the remainder of their periods of performance.  *See* Doc. 1-3.

Sixty days later, on May 7, 2025, USDA sent a follow-up letter stating that, in accordance with the March 7 notice of intent to terminate, USDA had terminated the LFPA25 Agreement.  *See* Doc. 1-6.  The May 7 letter confirmed that the termination left Pennsylvania "in good standing for future consideration of Federal assistance[,]" and indicated that USDA terminated the cooperative agreement pursuant to 2 C.F.R. §200.0340(a)(4) and the terms and conditions of the award.

## QUESTION PRESENTED

**Whether the Court should deny the motion for preliminary injunction?**

Suggested Answers: Affirmative

## LEGAL STANDARD

"A preliminary injunction 'is an extraordinary remedy[ ] [that] should be granted only in limited circumstances.'" *Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 200 (3d Cir. 2024) (quoting *Mallet & Co. v. Lacayo*, 16 F.4th 365, 391 (3d Cir. 2021)).  Because the remedy is "extraordinary and drastic," "the movant bears the burden of making '*a clear* showing.'" *Id*. at 202 (emphasis in original) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).

A party seeking a preliminary injunction must first show (1) a reasonable probability of success on the merits of the claim for which injunctive relief is sought; and (2) that the moving party would be irreparably harmed in the absence of an injunction. *Reilly v. City of Harrisburg*, 858 F.3d 173, 175 (3d Cir. 2017). Should the moving party successfully establish the first two considerations, the Court then must also consider (3) the possibility of harm than an injunction would cause other interested persons; and (4) the public interest. *Id.*; *see also Transcon. Gas Pipe Line Co., LLC v. Pa. Envtl. Hearing Bd.*, 108 F.4th 144, 150 (3d Cir. 2024) ("The first two considerations – a reasonable probability of ultimate success and some harm that cannot be remedied in either law or equity following resolution on the merits – operate both as essential elements and as factors that guide the exercise of equitable discretion . . . the failure of the moving party to make either of those threshold showings is fatal to the issuance of a preliminary injunction."). "The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate." *P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005).

## ARGUMENT

### I. The Court Lacks Jurisdiction to Compel the Government to Pay Money Under a Contract

Plaintiffs cannot show a substantial likelihood of success on the merits because, as the Supreme Court recently confirmed in another case involving an

award termination, district courts lack jurisdiction under the APA "to enforce . . . contractual obligation[s] to pay money" against the federal government. *Dep't of Educ.*, 145 S. Ct. at 968 (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)).  Rather, "the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" *Id.* at 968–69 (quoting 28 U.S.C. § 1491(a)(1)).  That jurisdictional principle applies with equal force to any obligations created by the terminated LFPA25 Agreement.

"[T]he party asserting federal jurisdiction . . . has the burden of establishing it." *Jenkins v. Howard Univ.*, 123 F.4th 1343, 1347 (D.C. Cir. 2024) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)).  For a plaintiff "bring[ing] a claim against the United States," carrying that jurisdictional burden requires "identify[ing] an unequivocal waiver of sovereign immunity." *Franklin-Mason v. Mabus*, 742 F.3d 1051, 1054 (D.C. Cir. 2014).  Plaintiffs assert claims under the APA, *see* Compl. ¶¶ 116–34, which "provide[s] a limited waiver of sovereign immunity for claims against the United States 'seeking relief other than money damages' for persons 'adversely affected or aggrieved by agency action.'" *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1105–06 (D.C. Cir. 2022) (quoting 5 U.S.C. § 702).

"But even for claims that are not for money damages, the APA confers no 'authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.'" *Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 67 (D.C. Cir. 2004) (quoting 5 U.S.C. § 702). This "important carveout" to the APA's sovereign immunity waiver "prevents plaintiffs from exploiting" that waiver "to evade limitations on suit contained in other statutes." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012).

Here, Plaintiffs' attempt to use the APA to compel the federal government to perform the terms of the LFPA25 Agreement is "impliedly forbid[den]," 5 U.S.C. § 702, by the Tucker Act, 28 U.S.C. § 1491(a)(1), which provides that jurisdiction over "any express or implied contract with the United States" lies with the Court of Federal Claims. *See Dep't of Educ.*, 145 S. Ct. at 968 (quoting 28 U.S.C. § 1491(a)(1)). As the D.C. Circuit has explained, "the Tucker Act . . . 'impliedly forbid[s]' contract claims against the government from being brought in district court under . . . the APA." *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 618–19 (D.C. Cir. 2017) (citing *Albrecht*, 357 F.3d at 67–68). Thus – regardless of how styled – a district court lacks jurisdiction over a claim against the United States if it "is in 'its essence' contractual." *Id.* at 619 (quoting *Megapulse*, 672 F.2d at 967).

Determining whether a claim "is 'at its essence' contractual" and falls outside of the APA's waiver of sovereign immunity "depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)." *Crowley*, 38 F.4th at 1106 (quoting *Megapulse*, 672 F.2d at 968).  As shown below, applying this two-pronged test here confirms that Plaintiffs' claims amount to the very sort of contractual claims for monetary relief against the federal government over which this Court lacks jurisdiction.   Plaintiffs, therefore, essentially bring a breach of contract case that belongs in the Court of Federal Claims.

## A.    The Source of Plaintiffs' Right to Funding Is the LFPA25 Agreement

The source of rights underlying Plaintiffs' claims is the LFPA25 Agreement with PDA.  That Agreement is a prototypical contract: it sets out obligations that PDA must accept and fulfill in exchange for consideration from the government.  *See* Doc 1-2 at, *e.g.*, ¶3 (conditioning the funds on Pennsylvania completing an "approved . . . plan" by April 30, 2025); *id*. at Statement of Responsibilities, II.C.3.k.(d) ("If the Government determines that the recipient is not in compliance with this award provision, it [w]ill prohibit the recipient's use of funds under this award . . . and [m]ay pursue other remedies available for the recipient's material failure to comply with award terms and conditions").

Plaintiffs appear to appreciate the contractual nature of their claims, as they describe plans to enter into further contracts to effectuate the program, they rely upon the contractual provisions in the LFPA25 Agreement, and they request that the Court give effect to their interpretation of those terms. *See*, *e.g.*, Doc. 1 at ¶24 (alleging that Pennsylvania "subcontracts with Feeding Pennsylvania" to administer the Commonwealth's LFPA Program); ¶¶30-36 (describing the various contractual terms of the cooperative agreement); Doc. 7 at p. 17[15] (requesting an order enjoining "USDA's May 2025 termination" of the cooperative agreement). And deciding whether – as Plaintiffs allege in Counts II and III – USDA violated Title 2 of the Code of Federal Regulations when terminating the Agreement points right back to the terms and conditions of the LFPA25 Agreement, as even Plaintiffs must concede that those provisions were incorporated into the same. Doc. 1 at ¶35;[16] *see also* Doc. 1-2, Statement of Responsibilities, II.C.2.

Plaintiffs' allegation – transparently meant to shoehorn this case into the APA – that the USDA's reliance on 2 C.F.R. §200.340 was "regulatory" rather than "contractual," Doc. 1 at ¶40, is as much misleading as it is incorrect. First, as noted

---

[15] Pinpoint citations are to the those in the header generated by the CM/ECF system.

[16] Plaintiffs' quotation of the LFPA Agreement in Paragraph 35 of the Complaint is misleadingly inaccurate, as the quoted sentence from the Agreement does not end where Plaintiffs' quotation suggests it does. To the contrary, the sentence in the Agreement continues with language stating that those regulations are "hereby incorporated by reference and made a part of this agreement." *See* Doc. 1-2, Statement of Responsibilities, II.C.2.

directly above, those same regulations were incorporated into the Agreement itself, essentially making those provisions contractual rather than regulatory. Second, and as recently described by another court when denying a preliminary injunction in a similar "APA" case challenging termination of a federal grant, "the court must be careful to guard against a disguised contract action that seeks to avoid the Tucker Act merely by alleging violations of regulatory or statutory provisions rather than breach of contract." *Vera Inst. of Justice v. U.S. Dep't of Justice*, 2025 WL 1865160, at *7 (D.D.C. July 7, 2025) (internal quotations and citations omitted). As the court in *Vera Inst.* explained, "[t]hat the termination [of a grant] also arguably violates certain other regulations does not transform the action into one based solely on those regulations. Nor does plaintiff's decision to allege only a violation of the regulations change the essential character of the action." 2025 WL 1865160 at *12 (internal quotations omitted).

At bottom, Plaintiffs' effort to bring contract claims masquerading as APA and constitutional claims fails because they have no statutory or constitutional right to the funding that pre-exists the execution of the LFPA25 Agreement. In this sense, this case is like *Ingersoll-Rand*, where the court held that plaintiffs could not avoid the Tucker Act's limitations by simply describing their contract claims in constitutional or statutory terms. *Ingersoll-Rand*, 780 F.2d at 77–79. The Court, therefore, should deny the motion for preliminary injunction.

17

## B.    Plaintiffs Seek a Remedy Which Sounds in Contract

The second prong – the relief Plaintiffs seek – also confirms that their claims are essentially contractual in nature.  *See Crowley*, 38 F.4th at 1110 ("We turn next to 'the type of relief sought.'").  Indeed, courts have found this factor "dispositive." *U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*, 2025 WL 763738, at *4–8 (D.D.C. Mar. 11, 2025), *dismissed*, 2025 WL 1350103 (D.C. Cir. May 2, 2025).  In *Catholic Bishops*, for example, it was determinative that "[t]he nature of the relief the Conference seeks" – an "order [that] the Government . . . stop withholding the money due under the Cooperative Agreements" – "'sounds in contract.'"  *Id.* at *5.  So too here.

 Plaintiffs would like the Court to "[d]eclare" that the USDA's termination of the LFPA25 Agreement was arbitrary and capricious, contrary to law, and violated due process, *see* Doc. 1 at Prayer for Relief, and to "enjoin USDA's May 2025 termination." *See* Doc. 7 at 17.  Plaintiffs further ask the Court to "vacate" the termination.  *See* Doc. 1 at Prayer for Relief.  All of these phrasings are mere paraphrases of asking for specific performance of the Agreement.

Plaintiffs in *Vera Inst.* requested essentially the same relief.  2025 WL 1865160 at *13 (requesting the court "[d]eclare . . . terminations . . . are unlawful . . ."  and "[p]reliminarily and permanently enjoying Defendants . . from terminating grants[.]").  As that court correctly observed, "that non-monetary relief has little, if

any, independent value from the future potential of monetary recovery." 2025 WL 1865160, at *13.   The same is true here: "because the source of the right" – the LFPA25 Agreement – "and the relief requested for Plaintiffs' . . . APA claim" – specific performance – "is 'at its essence' contractual, Plaintiffs have failed to establish this court's jurisdiction over this claim." *Id*. at *14.  A request for an order that the government "must perform" on its contract "must be resolved by the Claims Court." *Ingersoll-Rand*, 780 F.2d at 80.

### C.   Plaintiffs Cannot Evade *Dep't of Educ.*

The Supreme Court's recent order in *Dep't of Educ.* should remove any doubt as to this Court's lack of jurisdiction over Plaintiff's contract-based claims.  145 S. Ct. 966.  In that case a district court had concluded that the plaintiffs were likely to succeed on the merits of APA claims and issued a temporary restraining order ("TRO") "enjoining the Government from terminating various education-related grants" and "requir[ing] the Government to pay out past-due grant obligations and to continue paying obligations as they accrue." *Id.* at 968.  The Supreme Court stayed the district court's TRO after determining, among other things, that "the Government [was] likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA."  *Id.* at 968.  More specifically, the Supreme Court explained that "the APA's limited waiver of sovereign immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines

of what the District Court [had] ordered." *Id.* (quoting *Great-West*, 534 U.S. at 212). "Instead," according to the Supreme Court, "the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" *Id.*

    *Dep't of Educ.* confirms that this Court lacks jurisdiction over Plaintiffs' contract-based claims. Like the *Dep't of Educ.* plaintiffs, Plaintiffs here seek relief from the termination of federal funding. Also like the *Dep't of Educ.* plaintiffs, Plaintiffs here challenge the termination decision under the APA, including on the ground that the termination was arbitrary and capricious. And like the district court in *Dep't of Educ.*, this Court too "lack[s] jurisdiction . . . under the APA" to compel Defendants "to pay money" under the LFPA25 Agreement. *Dep't of Educ.*, 145 S. Ct. at 968.

    This Court should accordingly deny the motion for a preliminary injunction, just as several other courts have done in similar recent cases involving government grants or contracts. *See Vera Inst.*, 2025 WL 1865160, at *11 ("the Supreme Court's ruling in [*Dep't of Educ.*] forecloses the exercise of jurisdiction over Plaintiffs' arbitrary-and-capricious claim."); *Sustainability Inst. v. Trump,* 2025 WL 1587100, at *1 (4th Cir. June 5, 2025) (staying injunction based on *Dep't of Educ.* where the grants "were awarded by federal executive agencies to specific grantees from a generalized fund"); *Am. Library Ass'n v. Sonderling*, 2025 WL 1615771, at *5

(D.D.C. June 6, 2025) (after granting TRO, denying preliminary injunction where plaintiffs alleged grant terminations violated the APA and noting that *Dep't of Educ.* "cast[s] doubt on district courts' jurisdiction to hear cases involving grant terminations"); *Cath. Bishops*, 2025 WL 763738, at \*5 (concluding that the court lacked the authority to "order the Government to pay money due on a contract"); *Solutions in Hometown Connections v. Noem*, 2025 WL 1103253, at \*8–10 (D. Md. Apr. 14, 2025) (denying the plaintiffs' TRO motion challenging the termination of grants in light of *Dep't of Educ.* and concluding that the plaintiffs' APA claims were "in essence contract claims against the United States for which the . . . Court of Federal Claims has exclusive jurisdiction"); *Mass. Fair Hous. Ctr. v. U.S. Dep't of Hous. & Urb. Dev.*, 2025 WL 1225481 (D. Mass Apr. 14, 2025) (dissolving a TRO after acknowledging that *Dep't of Educ.* is an "unmistakable directive that, for jurisdictional purposes, the proper forum for this case is the Court of Federal Claims").

*          *          *

Plaintiffs bring a contract case masquerading as an APA dispute, but they cannot evade the exclusive jurisdiction of the Tucker Act through artful pleading. *Dep't of Educ.* controls this case. The Supreme Court's instruction that "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what" Plaintiffs request here fully

21

applies. 145 S. Ct. at 968 (quoting *Knudson*, 534 U.S. at 212). As explained in *Vera Inst.*, the Supreme Court "has spoken in a case substantially the same as this one." 2025 WL 1865160, at *11. "This court must listen[,]" *id.*, even if the holding in *Dep't of Educ.* was a decision "on the interim status of a major new executive action[.]" *Id.* (quoting *Trump v. CASA, Inc.*, __ S. Ct. __, 2025 WL 1773631, at *22 (June 27, 2025) (Kavanaugh, J., concurring)).

## II.    Two Statutory Exceptions to the APA's Sovereign Immunity Waiver Apply Here

The express statutory terms of the APA also preclude this Court's review of the USDA's actions because (1) Plaintiffs have "other adequate remed[ies]" available to them, 5 U.S.C. § 704, and (2) Defendants' decisions concerning the expenditure of its discretionary resources constitute unreviewable agency action "committed to agency discretion by law," *id.* § 701(a)(2).

### A.    Plaintiffs Have Other Adequate Remedies Available to Them

Notwithstanding the jurisdictional defects with Plaintiffs' contract-based APA claims, those claims fail for the independently sufficient reason that Plaintiffs have "other adequate remed[ies]" available to them to vindicate their asserted right to continued funding under the LFPA25 Agreement. *Id.* § 704.

APA review is limited to "final agency action for which there is no other adequate remedy in a court." *Id.* The APA's "adequate remedy" bar "makes it clear that Congress did not intend the general grant of review in the APA to duplicate

existing procedures for review of agency action." *Bowen v. Massachusetts*, 487 U.S. 879, 902–03 (1988). Moreover, the Third Circuit has endorsed the notion that "[a] legal remedy is not inadequate for purposes of the APA because it is procedurally inconvenient for a given plaintiff, or because plaintiffs have inadvertently deprived themselves of an opportunity to pursue that remedy." *Turner v. Sec'y of U.S. Dep't of Hous. And Urban Dev.*, 449 F.3d 586, 541 (3d Cir. 2006) (quoting *Town of Sandford v. United States*, 140 F.3d 20, 23 (1st Cir. 1998)). Thus, if there exists an alternative adequate remedy, a plaintiff lacks a cause of action under the APA. *See Perry Cap.*, 864 F.3d at 621.

Here, Plaintiffs fail to show why they lack an adequate remedy in the Court of Federal Claims, which routinely adjudicates similar challenges to the lawfulness of contract terminations. *See, e.g.*, *Boarhog LLC v. United States*, 129 Fed. Cl. 130, 134–35 (2016) ("[The plaintiff] has not shown or alleged that [the defendant] committed bad faith or abused its discretion in terminating the contract for convenience."); *Gulf Grp. Gen. Enters. Co. W.L.L. v. United States*, 114 Fed. Cl. 258, 370 (2013) ("The termination for convenience . . . was within the contracting officer's discretion and, therefore . . . was not a breach of contract.").

Plaintiffs cannot "bypass Tucker Act jurisdiction" simply by "converting" through artful pleading what are essentially claims for monetary relief into ones "requesting injunctive relief or declaratory actions." *Kidwell v. Dep't of Army, Bd.*

*for Corr. of Mil. Recs.*, 56 F.3d 279, 284 (D.C. Cir. 1995); *see Crowley*, 38 F.4th at 1107.  And, in any event, the injunctive relief that Plaintiffs demand – which is essentially equivalent to specific performance of the terminated LFPA25 Agreement – is not available in this Court, and it thus cannot serve as a basis for avoiding the APA's "adequate remedy" bar. *See Megapulse*, 672 F.2d at 971; *Cath. Bishops*, 2025 WL 763738, at *4 n.3.

## B.  CCC Funding Decisions Are Committed to Agency Discretion by Law

An agency's decision concerning how to allocate and expend federal funding is "committed to agency discretion by law" and is thus not subject to APA review.  5 U.S.C. § 701(a)(2).  In *Lincoln v. Vigil*, the Supreme Court underscored that the APA, by its own terms, "preclude[s] judicial review of certain categories of administrative decisions that courts traditionally have regarded as 'committed to agency discretion.'"  508 U.S. 182, 191 (1993) (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 817 (1992)).  *Lincoln* then held that an agency's "allocation of funds from a lump-sum appropriation" is one such "administrative decision traditionally regarded as committed to agency discretion," given that "the very point of a lump-sum appropriation," the Court explained, "is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way."  *Id.* at 192.

Here, the USDA funded the original LFPA through a lump-sum appropriation in the ARPA that did "not so much as mention the" LFPA. *Lincoln*, 508 U.S. at 194. The ARPA's general, lump-sum appropriation left USDA with broad discretion to decide when and how to obligate funds consistent with agency priorities. "These appropriations did not expressly authorize, direct, or even mention the expenditures of which [Plaintiffs] complain." *Hein v. Freedom From Religion Found, Inc.*, 551 U.S. 587, 605 (2007). Even under the original iteration of the LFPA program, therefore, the LFPA funding decisions would have been excepted from APA review because they would have "resulted from executive discretion, not congressional action." *Id*. at 605.

The LFPA25 Agreement is an even more concrete example of executive discretion – and even further removed from congressional action – because the USDA had planned to fund it not with ARPA lump-sum appropriations, but through its discretionary use of the CCC to borrow additional money for new cooperative agreements. *See* Tuckwiller Decl. ¶¶3-5. As noted above, the Charter Act authorizes, but does not require, the CCC to "[p]rocure agricultural commodities . . . for sale to other Government agencies . . . and to meet domestic requirements." 15 U.S.C. §714c(c). The Charter Act expressly permits the CCC to borrow money to fund USDA priorities, *see* 15 U.S.C. §714b(i), and to "determine the character of and the necessity for its obligations and expenditures and the manner in which they

shall be incurred, allowed, and paid." *Id.* at §714b(j).  In other words, the USDA was legally *permitted*, but not legally *obligated*, to enter the cooperative agreement.

An agency's "allocation of funds" to various programs and priorities "requires 'a complicated balance of a number of factors,'" including whether the agency's "'resources are best spent' on one program or another" and "whether a particular program 'best fits the agency's overall policies.'" 508 U.S. at 193 (quoting *Heckler*, 470 U.S. at 831).  Indeed, the "agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." *Id.* (quoting *Heckler*, 470 U.S. at 831-32).

As is its contractual and statutory prerogative, USDA ultimately concluded that a third round of LFPA funding no longer effectuated its priorities.  Whether Plaintiffs (or this Court) agree or disagree with that discretionary decision is beside the point – all that matters is that the APA prohibits judicial review of that act.  As the court in *Vera Inst.* opined:

> [D]ispleasure and sympathy are not enough in a court of law.  The court's powers are limited.  It cannot act without jurisdiction or in the absence of a valid cause of action.  That is the rub here.  The court cannot grant Plaintiffs relief because it lacks the power to hear their claims under the [APA].

2025 WL 1865160 at *1.

As to funds over which the agency has complete authority, any decisions regarding how much funding to allocate to a particular cause – or whether to enter

into a cooperative agreement at all – are committed entirely to agency discretion because an "agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." *Id.* (quoting *Heckler*, 470 U.S. at 831-32). That discretion includes the authority to terminate cooperative agreements that no longer advance agency priorities. So, in the absence of clear congressional expectations as to how an agency is to employ federal dollars, "§ 701(a)(2) gives the courts no leave to intrude." *Lincoln*, 508 U.S. at 193. "Thus, USDA's "decision to discontinue" LFPA25 funding is "accordingly unreviewable under § 701(a)(2)" of the APA. *Id.*

### III. Plaintiffs Cannot Show Likelihood of Success on the Merits Claims Even if the APA Is an Appropriate Recourse for Plaintiffs' Dispute

Even if the Court concludes that Plaintiffs claims are appropriately treated as arising under the APA, still Plaintiffs cannot show likelihood of success on the merits because they failed to exhaust administrative remedies and because the USDA's termination was not arbitrary and capricious.

#### A.     Plaintiffs Failed to Exhaust Administrative Remedies

Because Plaintiffs have not exhausted all available administrative remedies, they are unlikely to succeed on their APA claim(s).[17] Under 7 U.S.C. § 6912(e), "[n]otwithstanding any other provision of law, a person shall exhaust all

---

[17] In their brief in support of the preliminary injunction, Plaintiffs only argued success on the merits as to Count I.

administrative appeal procedures established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction against [USDA]." Although the Third Circuit has not directly ruled on the matter, this Court should treat Section 6912(e)'s exhaustion requirement as jurisdictional. *See Bastek v. Fed. Crop Ins. Corp.*, 145 F.3d 90, 94 (2d Cir. 1998) (as to 7 U.S.C. §6912(e), concluding that "[t]here can be little doubt that Congress's intent, in enacting this statute, was to require plaintiffs to exhaust all administrative remedies before bringing suit in federal court"). *But see*, *e.g.*, *Munsell v. U.S. Dep't of Agric.*, 509 F.3d 572, 581 (D.C. Cir. 2007) (holding that the exhaustion requirement is "mandatory, but not jurisdictional").

This mandatory exhaustion requirement applies here because an individual or entity subject to an "adverse decision" concerning the CCC's domestic programs may appeal to the National Appeals Division ("NAD"), 7 U.S.C. § 6991(2)(B) (including the CCC in the definition of an "agency"); 7 C.F.R. § 11.1 (same). Decisions issued by the NAD are subject to judicial review. 7 U.S.C. § 6999. Indeed, not until a plaintiff fully exhausts administrative remedies is an administrative record complete and an agency action "final" for purposes of judicial review under the APA. *See Darby v. Cisneros*, 509 U.S. 137, 146 (1993) (noting that, not until a party has exhausted administrative remedies, is an agency action "final" and subject to judicial review under the APA).

28

Here, Plaintiffs seek judicial review of USDA's decision to terminate the LFPA25 Agreement. Yet they have not alleged that they exhausted their administrative remedies by appealing their grant termination and receiving a final decision from the NAD.[18] Because none of their APA claims have been properly exhausted, Plaintiffs fail to state a viable APA claim.[19] *See Gold Dollar Warehouse, Inc. v. Glickman*, 211 F.3d 93, 98 (4th Cir. 2000) ("Parties are required by statute to exhaust available administrative remedies before they may bring an action against the USDA in federal court."); *Ovanova, Inc. v. U.S. Dep't of Agric.*, 2025 WL

---

[18] Should Plaintiffs endeavor to exhaust administrative remedies with NAD, that body may very well conclude that Plaintiffs' dispute raises a "matter of general applicability and thus [is] not subject to appeal." 7 U.S.C. §6992(d). In that scenario, "[t]he determination of the Director as to whether a decision is appealable shall be administratively final," *id.*, and the district courts then would have jurisdiction to review only the narrow issue of general applicability, subject to the limits of the APA, including the prohibition against review of discretionary agency decisions. *See* 7 U.S.C. §6999. Any broader judicial review over the merits of this case would still lie with the Court of Federal Claims under the Tucker Act. In all events, the statutory scheme requires Plaintiffs to appeal to NAD first. Among other purposes, this appeal would create a record as to whether NAD would hear their appeal on the merits in the first instance and clarify the nature of (and jurisdiction over) any further claims against USDA.

[19] Even if USDA failed to apprise Plaintiffs of their obligation to seek an internal appeal, that would not excuse their failure to complete that process. First, as noted above, the Court should treat the exhaustion requirement as jurisdictional, in which case there would be no discretion to excuse the failure to exhaust. But even if the exhaustion requirement is not jurisdictional, the USDA's alleged failure to provide notice of appeal rights merely "constitutes good cause for a late filing[,]" *Toyama v. Merit Sys. Protection Bd.*, 481 F.3d 1361, at 1366-67 (Fed. Cir. 2007), not good cause to forego filing at all.

343118, at *6 (D.D.C. Jan. 30, 2025) ("Plaintiffs' APA claims thus would topple on the merits for failure to exhaust.")

### B.    The Terminations Were Not Arbitrary and Capricious

Through its letters terminating the LFPA25 Agreement, the USDA acknowledged that it had engaged in a change in policy when explaining that the contemplated award "no longer effectuates agency priorities." *See* Doc. 1-3. While Plaintiffs might prefer additional explanation, the USDA's failure to elaborate does not render the termination arbitrary and capricious.

To begin, the express terms of the governing contract allowed either party to terminate unilaterally, the only condition being "60-day notice in writing." *See* Doc. 1-2, Statement of Responsibilities, II.C.5.   The contract did not require the terminating party to justify or rationalize the termination.   It defies commonsense to contend that an agency acts arbitrarily or capriciously when it objectively complies with the express contractual terms for which it bargained. *See Israel v. U.S. Dep't of Agric.*, 282 F.3d 521 (7th Cir. 2002) (plain language of contract supported finding that agency's action was not arbitrary and capricious).   If that were not enough, applicable regulations – expressly incorporated into the contract – allow for

termination "if an award no longer effectuates the program goals or agency priorities." *See* 2 C.F.R. §200.340(a)(4).[20]

"[A] court is not to substitute its judgment for that of the agency . . . and should uphold a discussion of less than ideal clarity if the agency's path may reasonably be discerned[.]" *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513-14 (2009) (internal quotations and citations omitted). In *Fox Television Stations*, the Supreme Court rejected the notion that a change in agency policy requires "a more substantial explanation" and held that such a change is not "subjected to a more searching review." *Id*. at 14. Further, an agency "need not demonstrate to a court's satisfaction that the reasons for the new policy are *better* than the reasons for the old one; it suffices that the new policy is permitted under the statute, that there are good reasons for it, and that the agency *believes* it to be better, which the conscious change of course adequately indicates." *Id*. at 515 (emphasis in original).

The APA's deferential standard of review, therefore, did not require USDA to offer any further explanation for the termination, especially since Plaintiffs cannot persuasively demonstrate that they had relied to their detriment on their expectation to receive LFPA25 funds. *See Fox Television Stations*, 556 U.S. at 515 (explaining that an agency may need to "provide a more detailed justification than would suffice

---

[20] Just like the contract, the regulations do not impose a requirement that the agency offer an elaborate justification for the priority shift.

for a new policy . . when its prior policy has engendered serious reliance interests[.]").  To be sure, Plaintiffs attempt to establish reliance, Doc. 7 at 3, but that attempt fails.  First, the express terms of the LFPA25 Agreement conditioned the award on the Commonwealth providing a "final approved State . . Plan" that had to "be completed by April 30, 2025." *See* Doc. 1-2 at ¶4.  The Commonwealth had not yet submitted a final approved plan by the time USDA terminated its award.  *See* Tuckwiller Decl. ¶¶ at 6, 9.  Given that unmet conditions remained at the time USDA terminated the LFPA25 Agreement, Plaintiffs cannot genuinely contend that they reasonably acted in reliance upon the anticipated receipt of the funds.  Second, while Plaintiffs describe "*preparations* to contract with Feeding Pennsylvania," Doc. 7 at 3 (emphasis added), they contend nowhere that they had taken formalized acts to their detriment in reasonable reliance on LFPA25 funds.

In the end, Plaintiffs have given no sound basis to second-guess USDA's decision to discontinue the LFPA25 program.  For this Court now to disregard USDA's reasonable rationale for the termination would "represent[] a substantial intrusion into the working of another branch of Government" that the Supreme Court has cautioned should normally be avoided.  *Dep't of Com. v. New York*, 588 U.S. 752, 781 (2019) (citation omitted).  Plaintiffs' arbitrary and capricious claim, therefore, lacks merit.

## IV.    Plaintiffs Cannot Demonstrate Irreparable Harm

Plaintiffs are unable to satisfy the second requirement for injunctive relief because they cannot show irreparable harm in the absence of an injunction.

### A.    Plaintiffs Rely Exclusively on Supposed Irreparable Harm of Non-Parties

The germane inquiry for a court when deciding whether to issue a preliminary injunction is whether "a plaintiff demonstrates a significant risk that *he* or *she* will experience harm that cannot adequately be compensated after the fact by monetary damages." *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484-85 (3d Cir. 2000) (emphasis added); *see also id*. at 484 (courts must consider whether Plaintiffs have shown that "*they* are likely to experience irreparable harm without an injunction"). Here, Plaintiffs' attempt to establish irreparable harm fails for a simple and fundamental reason: it focuses exclusively on the alleged harms to those who are not parties to this case.

While Plaintiffs speculate that the USDA's termination of a $13 million award will cause statewide irreparable harm to food banks and food producers, Doc. 7 at 12-16, Plaintiffs do not contend that *they* will suffer any form of irreparable injury. This is a facially fatal flaw to their request that this Court enter preliminary injunctive relief.  Stated simply: because Plaintiffs have not even endeavored to demonstrate irreparable harm ***to them***, the Court should not enter a preliminary injunction.  *See Toaz v. Lane*, 2018 WL 1431020, at *3 (M.D. Pa. Mar. 22, 2018)

("Clearly, the potential harm to a non-party does not establish irreparable harm to [the plaintiff]"). [21], [22]

## B.    Monetary Damages Are Not Irreparable

Regardless of whether it is Plaintiffs or non-parties who would allegedly suffer harm, the essence of the harm described by Plaintiffs remains the same: monetary.  In order to secure a preliminary injunction, however, a plaintiff must "demonstrate[] a significant risk that he or she will experience harm that cannot adequately be compensated after the fact by monetary damages. This is not an easy

---

[21] The Court should disregard Plaintiffs' hyperbolic and speculative contention that people will go hungry because of the termination. When assessing alleged future harm, the movant "must establish that the future injury is imminent—that is, the injury is certainly impending since allegations of possible future injury are not sufficient." *Koons v. Platkin*, 673 F.Supp.3d 515, 557 (D.N.J. 2023) (internal quotations and citations omitted); *see also Dice v. Clinicorp, Inc.*, 887 F.Supp. 803, 809 (W.D. Pa. 1995) (In order to secure a preliminary injunction, "the claimed injury cannot merely be possible, speculative or remote.").

[22] Although they have not yet done so, Plaintiffs may argue that the doctrine of associational standing allows them to seek injunctive relief on behalf of non-parties. Any such argument, to the extent Plaintiffs choose to make it, must fail.  As a preliminary matter, the named Plaintiffs are not "associations" to which any of the allegedly harmed non-parties are members.  *See United Food and Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 116 S. Ct. 1529, 1534 (1996) (associational standing justified because "the association and its members are in every practical sense identical.") (internal quotes and citations omitted).  Even if at least one Plaintiff here qualified as an "association," still associational standing would fail because "the claim asserted" and "the relief requested requires the participation" of the non-parties.  *Id.* at 1534.  That is, the non-parties identified by Plaintiffs as likely to suffer irreparable harm would have to participate in this case to show their entitlement to injunctive relief, especially if this Court follows the proper practice of limiting any injunction to those who have demonstrated their own irreparable harm.

burden." *See Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484-85 (3d Cir. 2000).

As the Third Circuit has explained:

> In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial. The preliminary injunction must be the *only* way of protecting the plaintiff from harm.

*Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992) (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989)) (emphasis in original). It is clear, here, that Plaintiffs have an alternative avenue of relief in a different forum that does not involve this Court issuing a preliminary injunction.

Plaintiffs contend if the Court does not enjoin USDA's termination of the contract, certain non-parties will have to reduce the amounts they spend in fulfilling their missions. *See* Doc. 7 at 18-19. It is well settled, however, that monetary damages, "however substantial," do not constitute irreparable harm. *Sampson v. Murray*, 415 U.S. 61, 90 (1974); *see Instant Air Freight*, 882 F.2d at 797 (reversing imposition of a preliminary injunction where plaintiff claimed it would lose 80% of its revenue, but did not provide financial statements or projections to show it could not readily obtain more business); *Autobar Systems of New Jersey v. Berg Co., LLC*, No. 23-2541, 2024 WL 3859807 (3d Cir. 2024) (reversed and remanded for consideration of whether non-compete agreement coupled with financial harm met standard for irreparable harm).

If Plaintiffs ultimately prove successful in this litigation, the relief they hope to get is the delayed receipt of money they expected to get sooner. But the inconvenience of delayed financial recovery is an inexorable reality in any litigation alleging economic damages and is a quintessential example of what never counts as irreparable injury. *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury.").

Indeed, USDA's termination of the LFPA25 Agreement has not prohibited or made it unlawful for Plaintiffs to continue their food purchases from local farmers and producers; USDA has merely exercised its lawful discretion not to allocate its *own* resources to that endeavor. *See e.g.*, *Faculty Senate of Fla. Int'l Univ. v. Winn*, 477 F. Supp. 2d 1198, 1208 (S.D. Fla. 2007) ("There is no irreparable harm here because the plaintiffs can fund the desired travel themselves and then, if they prevail in this suit, obtain reimbursement. In other words, the harm is financial."). If Plaintiffs ultimately prevail on the merits of their claims – either here or in a different forum – monetary damages are adequate to make them whole.

## V.    A Preliminary Injunction Would Cause the USDA Irreparable Harm and Would Not Serve the Public Interest

By contrast, USDA would suffer irreparable harm if the Court requires it to continue to fund a program that it has determined no longer reflects its own priorities. As noted above, the CCC has statutory limits to the amount of money that it can borrow and dedicate to its discretionary priorities. Should the Court force USDA to

allocate a substantial amount of that money to the LFPA25 Agreement, it would impose an unfair opportunity cost on USDA that prevents it from fully pursuing its current priorities that lie elsewhere.

Moreover, should the Court enter a preliminary injunction that would require the USDA to release millions of dollars, Plaintiffs would begin to disburse those funds to various food banks and other unaffiliated operations. Conspicuously, Plaintiffs have not "promised to return [those] funds" if this Court, after entering a preliminary injunction, ultimately determines that the USDA legally terminated the LFPA25 Agreement in the first place. *Dep't of Educ..*, 145 S. Ct. 969; *see also id.* ("respondents have not refuted the Government's representation that it is unlikely to recover the grant funds once they are disbursed."). The prospect of having to release funds with no guaranty of recovery at a later stage if it prevails is a manifest injury to the USDA and contrary to the public interest.

Finally, by statute, Congress has vested the USDA not only with discretion over whether, and to what extent, to borrow money through the CCC, but also over how to allocate those funds. The public interest is best served by USDA having the ability to allocate those funds to the programs and causes that, in its judgment, better serve the American People. By contrast, it would be counter to the public interest for the Judiciary to usurp the clear authority vested in the USDA or to meddle in the complicated and nuanced topics ordinarily left to the federal agencies that have the

requisite expertise in these specialized areas. Stated plainly, the public has an interest in the Judiciary respecting the Executive Branch's lawful ability to direct agency spending decisions, especially in the absence of specific congressional appropriations for a specific purpose.

*     *     *

Plaintiffs have failed to meet the criteria necessary for a preliminary injunction. Because Plaintiffs have not demonstrated that any factors, let alone all four, favor the grant of a preliminary injunction, the Court should deny the motion.

## VI. If the Court Issues a Preliminary Injunction, It Should Direct Plaintiffs to Post Security

Should the Court grant the motion, it should also order security with any preliminary injunction. Under Federal Rule of Civil Procedure 65(c), the Court may issue a preliminary injunction "*only* if the movant gives security" for "costs and damages sustained" by Defendants if they are later found to "have been wrongfully enjoined." Fed. R. Civ. P. 65(c) (emphasis added). Should the Court issue an injunction at this preliminary stage requiring USDA to continue to pay Plaintiffs millions of dollars, Defendants request that Plaintiffs post a bond in the amount of the unobligated award funds that they expect to obtain under the LFPA25 Agreement prior to final judgment in this case. *See Dep't of Educ.*, 145 S. Ct. at 969 (discussing the harm the government would face from the continued disbursement of terminated grant funds and noting that "the District Court declined to impose bond").

38

# CONCLUSION

The Court should deny Plaintiffs' motion for a preliminary injunction.


Respectfully submitted,

JOHN C. GURGANUS
Acting United States Attorney


s/Richard D. Euliss
RICHARD D. EULISS
Assistant U.S. Attorney
DC999166
U.S. Attorney's Office for the
Middle District of Pennsylvania
1501 N. 6th Street, Box 202
Harrisburg, PA 17102
Phone: (717) 221-4482
Richard.D.Euliss@usdoj.gov

Dated: July 17, 2025

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GOVERNOR JOSH SHAPIRO, *et al.*, | Case No.  1:25-CV-00998 |
| Plaintiffs, | |
| v. | Hon. Joseph F. Saporito, Jr., United States District Judge |
| U.S. DEPARTMENT OF AGRICULTURE, *et al.*, | |
| Defendants. | |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.  That on July 17, 2025, she filed the:

## BRIEF IN OPPOSITION TO PLAINTIFFS'
## MOTION FOR PRELIMINARY INJUNCTION

via the Court's CM/ECF system, which will automatically generate notice upon all counsel of record.

<u>s/ Amanda J. Albert</u>
AMANDA J. ALBERT
Legal Administrative Specialist