## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GOVERNOR JOSH SHAPIRO, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF<br>AGRICULTURE, *et al.*,<br><br>Defendants. | Case No.  1:25-CV-00998<br><br><br>Hon. Joseph F. Saporito, Jr.,<br>United States District Judge |

## <u>BRIEF IN SUPPORT OF MOTION TO DISMISS</u>

JOHN C. GURGANUS
Acting United States Attorney


Richard D. Euliss
Assistant U.S. Attorney
DC 999166
1501 N. 6th Street, Box 202
Harrisburg, PA 17102
Phone: (717) 221-4482

## <u>TABLE OF CONTENTS</u>

INTRODUCTION .................................................................................................1

NATURE OF THE CASE .....................................................................................2

PROCEDURAL HISTORY....................................................................................5

STATEMENT OF FACTS .....................................................................................6

    I.    Local Food Purchase Assistance .........................................................6

    II.   LFPA Plus and the Commodity Credit Corporation .................................7

    III.  LFPA25 ..............................................................................................9

QUESTION PRESENTED...................................................................................11

LEGAL STANDARD..........................................................................................11

    I.    Rule 12(b)(1)....................................................................................11

    II.   Rule 12(b)(6) ....................................................................................13

ARGUMENT .....................................................................................................13

    I.    The Court Lacks Jurisdiction to Compel the Government to Pay Money Under a Contract....................................................................................13

          A. The Source of Plaintiffs' Right to Funding Is the LFPA25 Agreement ......................................................................................16

          B. Plaintiffs Seek a Remedy Which Sounds in Contract..........................19

          C. Plaintiffs Cannot Evade *Dep't of Educ* .................................20

    II.   Two Statutory Exceptions to the APA's Sovereign Immunity Waiver Apply Here.........................................................................................23

          A. Plaintiffs Have Other Adequate Remedies Available to Them............23

B. CCC Funding Decisions Are Committed to Agency Discretion by Law ........................................................................................................ 25

III.   Plaintiffs Fail to State an Actionable APA Claim ............................................ 28

A. The Termination Was Not Arbitrary and Capricious (Count I) ............ 28

B. The Termination Was Not an Unlawful Agency Action (Count II) .... 31

C. The Termination Was Not Contrary to Law (Count III) ........................ 33

IV.   Plaintiffs Failed to Exhaust Administrative Remedies ................................... 35

V.    Plaintiffs Fail to State a Procedural Due Process Claim ............................... 38

CONCLUSION ................................................................................................................ 40

# TABLE OF AUTHORITIES

Page(s)

Cases

*Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*,
    357 F.3d 62 (D.C. Cir. 2004) ........................................................................ 14, 15

*Am. Library Ass'n v. Sonderling*,
    2025 WL 1615771 (D.D.C. June 6, 2025) ............................................................ 21

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
    526 U.S. 40 (1999) ................................................................................................ 38

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................................. 13

*Bastek v. Fed. Crop Ins. Corp.*,
    145 F.3d 90 (2d Cir. 1998) ................................................................................... 36

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .............................................................................................. 13

*Boarhog LLC v. United States*,
    129 Fed. Cl. 130 (2016) ........................................................................................ 24

*Bowen v. Massachusetts*,
    487 U.S. 879 (1988) .............................................................................................. 24

*CNA v. United States*,
    535 F.3d 132 (3d Cir. 2008) ................................................................................. 12

*Constitution Party of Pennsylvania v. Aichele*,
    757 F.3d 347 (3d Cir. 2014) ................................................................................. 12

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*,
    38 F.4th 1099 (D.C. Cir. 2022) ....................................................... 14, 15, 19, 25

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) .............................................................................................. 14

*Darby v. Cisneros*,
    509 U.S. 137 (1993)............................................................36

*Dep't of Com. v. New York*,
    588 U.S. 752 (2019)............................................................31

*Dep't of Educ. v. California*,
    604 U.S. ---, 145 S. Ct. 966 (2025)................................... 4, 13, 15, 21

*F.C.C. v. Fox Television Stations, Inc.*,
    556 U.S. 502 (2009)..................................................... 29, 30

*Franklin v. Massachusetts*,
    505 U.S. 788 (1992)............................................................25

*Franklin-Mason v. Mabus*,
    742 F.3d 1051 (D.C. Cir. 2014)...........................................14

*Gold Dollar Warehouse, Inc. v. Glickman*,
    211 F.3d 93 (4th Cir. 2000) ................................................37

*Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002)..................................................... 13, 21

*Gulf Grp. Gen. Enters. Co. W.L.L. v. United States*,
    114 Fed. Cl. 258 (2013) .....................................................24

*Heckler v. Chaney*,
    470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985)...................... 27, 28

*Hein v. Freedom From Religion Found, Inc.*,
    551 U.S. 587 (2007)............................................................26

*Hometown Connections v. Noem*,
    2025 WL 1103253 (D. Md. Apr. 14, 2025).................................22

*In re Schering Plough Corp. Intron*,
    678 F,3d 235 (3d Cir. 2012) ...............................................12

*Ingersoll-Rand Co. v. United States*,
    780 F.2d 74 (D.C. Cir. 1985) ................................................................ 18, 20

*Israel v. U.S. Dep't of Agric.*,
    282 F.3d 521 (7th Cir. 2002) .........................................................................29

*Jenkins v. Howard Univ.*,
    123 F.4th 1343 (D.C. Cir. 2024) ....................................................................14

*Kidwell* v. *Dep't of Army, Bd. for Corr. of Mil.*,
    *Recs.*, 56 F.3d 279 (D.C. Cir. 1995) ...............................................................25

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) .......................................................................................12

*Labalokie v. Capital Area Intermediate Unit*,
    926 F. Supp. 503 (M.D. Pa. 1996) ...........................................................38, 39

*Lincoln v. Vigil*,
    508 U.S. 182 (1993) ...................................................................25, 26, 27, 28

*Mass. Fair Hous. Ctr. v. U.S. Dep't of Hous. & Urb. Dev.*,
    2025 WL 1225481 (D. Mass Apr. 14, 2025) ...................................................22

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
    567 U.S. 209 (2012) .......................................................................................14

*Megapulse, Inc. v. Lewis*,
    672 F.2d 959 (D.C. Cir. 1982) ............................................................ 4, 15, 25

*Munsell v. U.S. Dep't of Agric.*,
    509 F.3d 572 (D.C. Cir. 2007) .......................................................................36

*Nat'l Urban League v. Trump*,
    2025 WL 1275613 (D.D.C. May 2, 2025) .......................................................39

*New Vision Photography Program, Inc. v. District of Columbia*,
    54 F. Supp. 3d 12 (D.D.C. 2014) ...................................................................38

*Ovanova, Inc. v. U.S. Dep't of Agric.*,
    2025 WL 343118 (D.D.C. Jan. 30, 2025)......................................................37, 38

*Perez v. Mortg. Bankers Ass'n*,
    575 U.S. 92 (2015)...............................................................................32

*Perry Cap. LLC v. Mnuchin*,
    864 F.3d 591 (D.C. Cir. 2017).......................................................... 15, 24

*Reich v. Barry*,
    883 F.2d 239 (3d Cir. 1989) .......................................................... 38, 39

*Sustainability Inst. v. Trump*,
    2025 WL 1587100 (4th Cir. June 5, 2025)........................................21

*Town of Sandford v. United States*,
    140 F.3d 20 (1st Cir. 1998)................................................................24

*Toyama v. Merit Sys. Protection Bd.*,
    481 F.3d 1361 (Fed. Cir. 2007) .......................................................37

*Trump v. CASA, Inc.*,
    __ S. Ct. __, 2025 WL 1773631 (June 27, 2025)..............................23

*Turner v. Sec'y of U.S. Dep't of Hous. And Urban Dev.*,
    449 F.3d 536 (3d Cir. 2006) ..............................................................24

*U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*,
    2025 WL 763738 (D.D.C. Mar. 11, 2025) .......................... 19, 22, 25

*Vera Inst. of Justice v. U.S. Dep't of Justice*,
    2025 WL 1865160 (D.D.C. July 7, 2025) ............ 18, 19, 20, 21, 23, 27, 28, 38

Statutes

5 U.S.C. § 701 .................................................................. 3, 23, 25
5 U.S.C. § 704 ....................................................................... 4, 23
5 U.S.C. § 702 ..................................................................... 14, 15
7 U.S.C. § 6912 .................................................................... 35, 36
7 U.S.C. § 6991 ........................................................................... 36
7 U.S.C. § 6992 ........................................................................... 37
7 U.S.C. § 6999 .................................................................... 36, 37
15 U.S.C. § 714 ............................................................................. 8
15 U.S.C. § 714b ........................................................... 8, 26, 27
15 U.S.C. § 714c ..................................................................... 8, 26
15 U.S.C. § 714i ........................................................................... 8
28 U.S.C. § 1491 ........................................................... 3, 13, 15
31 U.S.C. § 6307 ......................................................................... 32
Pub. L. No. 117-2 ......................................................................... 6

Rules

Fed. R. Civ. P. 12(b)(1) ............................................................ 11

Regulations

2 C.F.R. 1.105 ............................................................................. 32
2 C.F.R. § 200.339 ..................................................................... 34
2 C.F.R. § 200.340 .......................................... 29, 31, 33, 34
2 C.F.R. § 200.341 ..................................................................... 33
2 C.F.R. § 200.342 ............................................................... 34, 35
7 C.F.R. § 11.1 ........................................................................... 36
89 Fed. Reg. 30046-01 ............................................................. 32

## **INTRODUCTION**

Money is finite.  This means that all spending decisions – whether by single-family households or by federal agencies with nationwide mandates – are discretionary assessments of opportunity costs: a dollar spent here is a dollar unavailable there, making difficult tradeoffs often necessary.  Assessments like these prompted the United States Department of Agriculture ("USDA") to terminate a $13 million cooperative agreement with the Commonwealth of Pennsylvania, leading Plaintiffs to file instant lawsuit.  Resolution of this dispute ultimately comes down to a simple question: does the Judiciary have the power to oversee how a federal agency chooses to allocate its finite, discretionary resources?  As a matter of law, the answer to that question is no.

The USDA, through the Commodity Credit Corporation ("CCC"), has exclusive discretion to decide how much CCC money to spend, and for what purpose.  Here, the USDA exercised that discretion when terminating a program that would have directed CCC funds to the Commonwealth.  Plaintiffs would have the Court usurp the USDA's prerogative to make these nationwide, high-level, and inherently discretionary programmatic decisions.  Because there is no sovereign immunity waiver allowing district courts to second-guess these sorts of agency actions – and because the cooperative agreement at issue in this case expressly allowed USDA to terminate it unilaterally – this Court should dismiss this case.

1

## NATURE OF THE CASE

As part of a larger, nationwide pandemic-era program, the USDA entered into a cooperative agreement in December 2024 with the Pennsylvania Department of Agriculture ("PDA") called the "Local Food Purchase Assistance 2025 Cooperative Agreement" (the "LFPA25 Agreement" or "Agreement"). *See* Doc. 1-2; *see also* Declaration of Jack David Tuckwiller ("Tuckwiller Decl.") at ¶¶ 2, 6. The Agreement contemplated USDA reimbursing the Commonwealth up to $13 million for future food purchases from local farms and producers. Among the key contractual terms, however, the LFPA25 Agreement provided that it could be "terminated by either party upon 60-day notice in writing." Doc. 1-2, Statement of Responsibilities, II.C.5.

Applicable law expressly vests in USDA the discretion over how and whether to spend the money that would have funded the LFPA25 Agreement. In reviewing existing contracts, the new Administration concluded that it was no longer an agency priority to allocate additional discretionary assets to LFPA25. *See* Tuckwiller Decl. at ¶¶ 9, 12. As expressly permitted by the LFPA25 Agreement, therefore, on March 7, 2025, the USDA notified the PDA in writing that the Agreement "will be terminated 60 days from today's date" because the agency had since determined that the Agreement "no longer effectuates agency priorities and that the termination of the award is appropriate." *See* Doc. 1-3. The notice of termination sent to PDA was

one of 137 similar notices that USDA sent to other state and tribal government LFPA25 recipients throughout the country.  *See* Tuckwiller Decl. at ¶ 10.  Sixty days later, on May 7, 2025, USDA confirmed in writing that it had terminated the Agreement.  *See* Doc. 1-6.

Governor Josh Shapiro, Secretary Russell Redding, and the Pennsylvania Department of Agriculture (collectively, "Plaintiffs"), filed this action challenging the USDA's termination of the Agreement under the Administrative Procedure Act ("APA") and the Due Process Clause of the United States Constitution, though the true substance of Plaintiffs' claims sound in breach of contract.  That is, and despite the labels affixed in their Complaint, Plaintiffs' claims seek a Court order directing the specific performance of the Agreement attached as an exibbit to the Complaint. The Tucker Act, however, provides that subject matter jurisdiction over "any claim against the United States found . . . upon any express or implied contact" lies exclusively in the Court of Federal Claims.  *See* 28 U.S.C. §1491(a)(1).

Even if the Court did assess the claims under the APA, it still should dismiss the Complaint because the APA expressly precludes judicial review of "agency action[s] committed to agency discretion by law."  5 U.S.C. §701(a)(2).  The USDA's decision as to how best to allocate the funds that would have been used for Pennsylvania's contemplated cooperative agreement is one committed to its discretion "by law," thus excepting it from judicial review.  Plaintiffs' claims are

unreviewable under the APA also because Plaintiffs have an alternative "adequate remedy in court[,]" 5 U.S.C. §704; namely, the Court of Federal Claims.

The Supreme Court's recent decision in *Dep't of Educ. v. California*, 604 U.S. ---, 145 S. Ct. 966 (2025) (per curiam), is highly persuasive, if not dispositive. In a similar case challenging the government's termination of federal grants, the Supreme Court held that "the Government [was] likely to succeed in showing [that] the District Court lacked jurisdiction to order the payment of money under the APA" because the Tucker Act vests exclusive jurisdiction over such actions in the Court of Federal Claims. *Id.* at 968. The Supreme Court's holding was no innovation of law. The D.C. Circuit – which has a uniquely robust body of jurisprudence over contractual claims against the United States – has long recognized that district courts have no jurisdiction over contractual claims against the United States, even where creative plaintiffs disguise those claims in constitutional, statutory, or regulatory garb. *See, e.g.*, *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982). Stated plainly, this Court has no subject matter jurisdiction over this dispute.

Because the Court has no jurisdiction and because – for the reasons stated below – Plaintiffs have otherwise failed to state a claim, the Court should dismiss this matter.

4

## <u>PROCEDURAL HISTORY</u>

Plaintiffs filed their Complaint on June 4, 2025, which includes three counts under the APA and one count under the Due Process Clause of the United States Constitution.   Doc. 1 at 37.   More specifically, Plaintiffs allege that USDA's termination decision (1) was arbitrary and capricious (Count I); (2) was an unlawful agency action because it exceeded agency authority under 2 C.F.R. § 200.340 (Count II); failed to give notice of the agency's rationale and denied them an opportunity to object (Count III); and violated procedural due process protections because USDA failed to provide an opportunity for a hearing prior to depriving Plaintiffs of their purported property interest (Count IV).

On June 26, 2025, Plaintiffs filed a motion for preliminary injunction, arguing that they are likely to succeed on the merits (only as to Count I alleging arbitrary and capricious agency action) and that they risk irreparable harm in the absence of immediate Court intervention.  *See* Docs. 5-7.  Defendants filed a brief in opposition on July 17, 2025.  *See* Doc.  9. The Court should dismiss all four Counts because the Court has no subject matter jurisdiction over them and/or because Plaintiffs fail to state a claim.

## STATEMENT OF FACTS

I.    **Local Food Purchase Assistance**

In April of 2021, Congress passed the American Rescue Plan Act ("ARPA"). In Section 1001 of that Act, titled "Food Supply Chain and Agricultural Pandemic Response," Congress made a lump-sum appropriation of $4 billion to USDA to use for various discretionary purposes, including, but not limited to, the making of "grants and provid[ing] other assistance to maintain and improve food and agricultural supply chain resiliency." American Rescue Plan Act of 2021, Pub. L. No. 117-2, §1001(b)(4), 135 Stat. 4. The USDA dedicated $400 million of that appropriation to fund the initial iteration of the LFPA. Critically, the ARPA did not direct the creation of the LFPA program; to the contrary, the LFPA was a discretionary program conceived by USDA in response to the COVID-19 pandemic[1] using this discretionary congressional funding. *See id.*; *see also* Tuckwiller Decl. at ¶2.

USDA solicited applications from any state or tribal government seeking an LFPA award,[2] after which USDA entered into individual, bilateral cooperative

---

[1] https://www.usda.gov/about-usda/news/press-releases/2024/12/10/usda-announces-availability-113-billion-local-food-programs (last visited June 26, 2025).

[2] https://www.usda.gov/about-usda/news/press-releases/2021/12/06/usda-establishes-food-purchase-program-transform-food-system-build-back-better-local-food-purchase (last visited June 25, 2025).

agreements "based on need and the ability to meet the goals of the program."[3]  The agency's goal with the LFPA was "to maintain and improve food and agricultural supply chain resiliency."[4]  The USDA awarded the Commonwealth of Pennsylvania $15,200,000 in LFPA funds.  *See* Doc. 1, ¶23.

## II.    LFPA Plus and the Commodity Credit Corporation

On or about September 14, 2022, the USDA announced an opportunity for renewed cooperative agreements, referred to as "LFPA Plus."[5]  As with the original LFPA, USDA required applications[6] demonstrating need and ability to meet program goals, after which it again obligated LFPA Plus funds through separate cooperative agreements with individual states and tribal governments.[7]  Unlike the original LFPA, however, USDA funded LFPA Plus not with congressionally-appropriated money, but with nearly $500 million raised directly by the Commodity Credit Corporation ("CCC").[8] *See* Tuckwiller Decl. ¶2.  The CCC is a wholly-owned

---

[3] *Id.*

[4] https://www.ams.usda.gov/selling-food-to-usda/lfpacap (last visited June 25, 2025).

[5] https://www.usda.gov/about-usda/news/press-releases/2022/09/14/usda-invests-nearly-2-billion-leverages-american-agriculture-feed-kids-families (last visited June 25, 2025).

[6] https://www.ams.usda.gov/selling-food-to-usda/lfpacap/plus (last visited June 25, 2025).

[7] https://www.usda.gov/about-usda/news/press-releases/2022/09/14/usda-invests-nearly-2-billion-leverages-american-agriculture-feed-kids-families (last visited June 25, 2025).

[8] *Id.*

government corporation formed and held by the USDA pursuant to the Commodity Credit Corporation Charter Act, 15 U.S.C. §§714, *et seq*. (the "Charter Act").[9] Because the CCC does not have any employees of its own, it uses USDA employees, services, and facilities.[10] *See also* 15 U.S.C. §714i (authorizing the CCC to use USDA employees).

The Charter Act authorizes, but does not require, the CCC to "[p]rocure agricultural commodities . . . for sale to other Government agencies . . . and to meet domestic requirements." 15 U.S.C. §714c(c).  To fulfill that and other purposes, the Charter Act expressly permits the CCC not only to borrow up to $30 billion at any one time to fund USDA priorities,[11] *see* 15 U.S.C. §714b(i), but also to "determine the character of and the necessity for its obligations and expenditures and the manner in which they shall be incurred, allowed, and paid." *Id.* at §714b(j).  As summarized in a Congressional Research Service report, the CCC affords "the Secretary a level of discretion to carry out many broad operations in support of U.S. agriculture." *See* Stubbs, Megan (Jan. 14, 2021) The Commodity Credit Corporation (CCC), CRS Report R44606, https://www.congress.gov/crs-product/R44606  (last visited June 25, 2025).  Through the CCC, "Secretaries of Agriculture have continued to use their

---

[9] https://www.usda.gov/farming-and-ranching/resources-small-and-mid-sized-farmers/commodity-credit-corporation (last visited June 25, 2025).
[10] *Id*.
[11] https://www.usda.gov/farming-and-ranching/resources-small-and-mid-sized-farmers/commodity-credit-corporation (last visited June 25, 2025).

administrative discretion to authorize funding and food purchases in response to economic disruptions and administrative priorities." *Id.*

The USDA used the "LFPA Plus" moniker for the second iteration of the program to delineate the different funding sources as compared to the original LFPA. Tuckwiller Decl. ¶2. The Commonwealth of Pennsylvania applied for and was awarded $14,724,610 under the LFPA Plus program. Doc. 1, ¶26. Taken together, the USDA awarded Pennsylvania $29,924,610 pursuant to the LFPA and LFPA Plus programs.

## III. LFPA25

On October 1, 2024, the USDA announced an additional $500 million to fund a third iteration of the LFPA program, which later became known as "LFPA25."[12] Like LFPA Plus, LFPA25 funding did not come from a lump-sum congressional appropriation, but from the discretionary funds of the CCC.[13]

On or about December 27, 2024, USDA and PDA executed the LFPA25 Agreement at issue in this litigation, which was one of 137 similar agreements with other state and tribal governments under the LFPA25. *See* Tuckwiller Decl. ¶6. The LFPA25 Agreement relevant here contemplated an additional $13 million for

---

[12] https://www.usda.gov/about-usda/news/press-releases/2024/10/01/usda-invests-17-billion-support-farmers-deliver-nutrition-assistance-and-bolster-rural-economies (last visited June 26, 2025).

[13] *Id.*

Pennsylvania. *See* Doc. 1-2. The contract made plain the legal authority upon which

USDA relied for entering into the cooperative agreement:

> **4. Legal Authority**: Section 5(c) of the Commodity Credit Corporation Charter Act (15 USC 714c(e)).

The contract also included an exchange of promises, *see* Doc. 1-2, Section II

("Responsibilities"), and expressly incorporated various components of the Code of

Federal Regulations into the terms of the contract:

> 2. All aspects of this agreement shall be executed according to all applicable parts of Title 2 of the Code of Federal Regulations (CFR), Parts 25, 170, 200, and 400 or as they may be later revised, and successive published regulations as appropriate, hereby incorporated by reference and made a part of this agreement. The State, Territory or Federally Recognized Tribal Agency confirms that it understands and is bound by the above regulations.

Finally, both parties reserved the right to terminate the agreement unilaterally so

long as the terminating party provided the other party 60-days' notice in writing:

> 5. Subject to the necessary authority and funds, this agreement shall continue in force until **January 14, 2028**, unless amended or terminated by mutual consent of the parties in writing or terminated by either party upon 60-day notice in writing.

After the 2025 Presidential transition, the new Administration concluded that

it was no longer an agency priority to allocate additional discretionary assets to

LFPA25. The USDA, therefore, issued a formal written notice to PDA dated March

7, 2025, expressing its intent to terminate the LFPA Agreement, as permitted by the

terms of the contract itself and by 2 C.F.R. §200.340(a)(4). *See* Doc. 1-3. The notice

did not contend that USDA's termination was due to any material failure by PDA to

comply with the award terms. To the contrary, the USDA stated simply that the

LFPA25 "no longer effectuates agency priorities and that termination of the award

is appropriate." *Id.* As the USDA later explained, the LFPA program had "created unsustainable programming expectations using the [CCC]." *See* Tuckwiller Decl. at ¶ 12, Attach. 1. Similar notices went to 136 other state and tribal governments. Tuckwiller Decl. ¶10. The notice confirmed that LFPA and LFPA Plus would remain in effect for the remainder of their periods of performance. *See* Doc. 1-3.

Sixty days later, on May 7, 2025, USDA sent a follow-up letter stating that, in accordance with the March 7 notice of intent to terminate, USDA had terminated the LFPA25 Agreement. *See* Doc. 1-6. The May 7 letter confirmed that the termination left Pennsylvania "in good standing for future consideration of Federal assistance[,]" and indicated that USDA terminated the cooperative agreement pursuant to 2 C.F.R. §200.0340(a)(4) and the terms and conditions of the award.

## QUESTION PRESENTED

1. **Whether the Court should dismiss the Complaint for lack of subject matter jurisdiction?**

2. **Whether the Court should dismiss the Complaint for failure to state a claim?**

Suggested Answers: Affirmative

## LEGAL STANDARD

### I.    Rule 12(b)(1)

Motions filed under Rule 12(b)(1) allow a party to challenge the subject matter jurisdiction of the district court to hear a case. Fed. R. Civ. P. 12(b)(1). "Federal

courts are courts of limited jurisdiction," only possessing the power authorized by the Constitution and statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A motion to dismiss for lack of subject matter jurisdiction may be either facial or factual. *See Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). A facial challenge presumes that the complaint contains insufficient allegations to invoke federal jurisdiction. *Id.* at 358. A factual challenge is "an argument that there is no subject matter jurisdiction because the facts of the case… do not support the asserted jurisdiction." *Id.* Under the latter theory, the district court must not accept the facts in the complaint as true and may consider extrinsic evidence. *Id.*

"In sum, a facial attack 'contests the sufficiency of the pleadings,' 'whereas a factual attack concerns the actual failure of a [plaintiff's] claims to comport [factually] with the jurisdictional prerequisites.'" *Id.* (*quoting In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012) and *CNA v. United States,* 535 F.3d 132, 139 (3d Cir. 2008), respectively). Here, Defendants present both a facial and a factual challenge, the latter of which they support with a Declaration from Anita Graves, M.D. *See* Exhibit 1, Declaration of Jack David Tuckwiller ("Tuckwiller Decl.").

## II.    Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient facts, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under this standard, the complaint must do more than plead facts that are "'merely consistent with' a defendant's liability." *Id.* (quoting *Twombly*, 550 U.S. at 557). To avoid dismissal, the complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## ARGUMENT

## I.    The Court Lacks Jurisdiction to Compel the Government to Pay Money Under a Contract

The Court should dismiss the case in its entirety, as the Supreme Court recently confirmed in another case involving an award termination that district courts lack jurisdiction under the APA "to enforce . . . contractual obligation[s] to pay money" against the federal government. *Dep't of Educ.*, 145 S. Ct. at 968 (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). Rather, "the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" *Id.* at 968–69 (quoting 28 U.S.C. § 1491(a)(1)).  That jurisdictional principle applies with equal force to any obligations created by the terminated LFPA25 Agreement.

13

"[T]he party asserting federal jurisdiction . . . has the burden of establishing it." *Jenkins v. Howard Univ.*, 123 F.4th 1343, 1347 (D.C. Cir. 2024) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)). For a plaintiff "bring[ing] a claim against the United States," carrying that jurisdictional burden requires "identify[ing] an unequivocal waiver of sovereign immunity." *Franklin-Mason v. Mabus*, 742 F.3d 1051, 1054 (D.C. Cir. 2014). Plaintiffs assert claims under the APA, *see* Compl. ¶¶ 116–34, which "provide[s] a limited waiver of sovereign immunity for claims against the United States 'seeking relief other than money damages' for persons 'adversely affected or aggrieved by agency action.'" *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1105–06 (D.C. Cir. 2022) (quoting 5 U.S.C. § 702).

"But even for claims that are not for money damages, the APA confers no 'authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.'" *Albrecht v. Comm. on Emp. Benefits of the Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 67 (D.C. Cir. 2004) (quoting 5 U.S.C. § 702). This "important carveout" to the APA's sovereign immunity waiver "prevents plaintiffs from exploiting" that waiver "to evade limitations on suit contained in other statutes." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012).

14

Here, Plaintiffs' attempt to use the APA to compel the federal government to perform the terms of the LFPA25 Agreement is "impliedly forbid[den]," 5 U.S.C. § 702, by the Tucker Act, 28 U.S.C. § 1491(a)(1), which provides that jurisdiction over "any express or implied contract with the United States" lies with the Court of Federal Claims. *See Dep't of Educ.*, 145 S. Ct. at 968 (quoting 28 U.S.C. § 1491(a)(1)). As the D.C. Circuit has explained, "the Tucker Act . . . 'impliedly forbid[s]' contract claims against the government from being brought in district court under . . . the APA." *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 618–19 (D.C. Cir. 2017) (citing *Albrecht*, 357 F.3d at 67–68). Thus – regardless of how styled – a district court lacks jurisdiction over a claim against the United States if it "is in 'its essence' contractual." *Id.* at 619 (quoting *Megapulse*, 672 F.2d at 967).

Determining whether a claim "is 'at its essence' contractual" and falls outside of the APA's waiver of sovereign immunity "depends both on the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)." *Crowley*, 38 F.4th at 1106 (quoting *Megapulse*, 672 F.2d at 968). As shown below, applying this two-pronged test here confirms that Plaintiffs' claims amount to the very sort of contractual claims for monetary relief against the federal government over which this Court lacks jurisdiction. Plaintiffs, therefore, essentially bring a breach of contract case that belongs in the Court of Federal Claims.

## A.    The Source of Plaintiffs' Right to Funding Is the LFPA25 Agreement

The source of rights underlying Plaintiffs' claims is the LFPA25 Agreement with PDA.  That Agreement is a prototypical contract: it sets out obligations that PDA must accept and fulfill in exchange for consideration from the government.  *See* Doc 1-2 at, *e.g.*, ¶3 (conditioning the funds on Pennsylvania completing an "approved . . . plan" by April 30, 2025); *id*. at Statement of Responsibilities, II.C.3.k.(d) ("If the Government determines that the recipient is not in compliance with this award provision, it [w]ill prohibit the recipient's use of funds under this award . . . and [m]ay pursue other remedies available for the recipient's material failure to comply with award terms and conditions").  The contract also expressly contemplates its termination and spells out the sort of notice required.  *See* Doc 1-2, Statement of Responsibilities, II.C.5.

Plaintiffs appear to appreciate the contractual nature of their claims, as they describe plans to enter further contracts to effectuate the program, they rely upon the contractual provisions in the LFPA25 Agreement, and they request that the Court give effect to their interpretation of those terms.  *See*, *e.g.*, Doc. 1 at ¶24 (alleging that Pennsylvania "subcontracts with Feeding Pennsylvania" to administer the Commonwealth's LFPA Program); ¶¶30-36 (describing the various contractual

terms of the cooperative agreement); Doc. 7 at p. 17[14] (requesting an order enjoining "USDA's May 2025 termination" of the cooperative agreement).  And deciding whether – as Plaintiffs allege in Count I – the agency's termination was arbitrary and capricious or whether the agency was obligated to provide Plaintiffs additional process points right back to the terms and conditions governing the LFPA25 Agreement's termination.  *See* Doc 1-2, Statement of Responsibilities, II.C.5.  The same is true for Counts II and III, which allege that USDA violated Title 2 of the Code of Federal Regulations when terminating the Agreement, since even Plaintiffs must concede that those provisions were incorporated into the LFPA25 Agreement, which essentially made them additional contractual terms.  Doc. 1 at ¶35;[15] *see also* Doc. 1-2, Statement of Responsibilities, II.C.2.

Plaintiffs' allegation – transparently meant to shoehorn this case into the APA – that the USDA's reliance on 2 C.F.R. §200.340 was "regulatory" rather than "contractual," Doc. 1 at ¶40, is as much misleading as it is incorrect.  First, as noted directly above, those same regulations were incorporated into the Agreement itself, essentially making those provisions contractual rather than regulatory.  Second, and

---

[14] Pinpoint citations are to the those in the header generated by the CM/ECF system.

[15] Plaintiffs' quotation of the LFPA Agreement in Paragraph 35 of the Complaint is misleadingly inaccurate, as the quoted sentence from the Agreement does not end where Plaintiffs' quotation suggests it does.  To the contrary, the sentence in the Agreement continues with language stating that those regulations are "hereby incorporated by reference and made a part of this agreement." *See* Doc. 1-2, Statement of Responsibilities, II.C.2.

as recently described by another court when denying a preliminary injunction in a similar "APA" case challenging termination of a federal grant, "the court must be careful to guard against a disguised contract action that seeks to avoid the Tucker Act merely by alleging violations of regulatory or statutory provisions rather than breach of contract." *Vera Inst. of Justice v. U.S. Dep't of Justice*, 2025 WL 1865160, at *7 (D.D.C. July 7, 2025) (internal quotations and citations omitted). As the court in *Vera Inst.* explained, "[t]hat the termination [of a grant] also arguably violates certain other regulations does not transform the action into one based solely on those regulations. Nor does plaintiff's decision to allege only a violation of the regulations change the essential character of the action." 2025 WL 1865160 at *12 (internal quotations omitted).

At bottom, Plaintiffs' effort to bring contract claims masquerading as APA and constitutional claims fails because they have no statutory or constitutional right to the funding that pre-exists the execution of the LFPA25 Agreement. In this sense, this case is like *Ingersoll-Rand*, where the court held that plaintiffs could not avoid the Tucker Act's limitations by simply describing their contract claims in constitutional or statutory terms. *Ingersoll-Rand*, 780 F.2d at 77–79. The Court, therefore, should deny the motion for preliminary injunction.

## B.    Plaintiffs Seek a Remedy Which Sounds in Contract

The second prong – the relief Plaintiffs seek – also confirms that their claims are essentially contractual in nature.  *See Crowley*, 38 F.4th at 1110 ("We turn next to 'the type of relief sought.'").  Indeed, courts have found this factor "dispositive." *U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*, 2025 WL 763738, at *4–8 (D.D.C. Mar. 11, 2025), *dismissed*, 2025 WL 1350103 (D.C. Cir. May 2, 2025).  In *Catholic Bishops*, for example, it was determinative that "[t]he nature of the relief the Conference seeks" – an "order [that] the Government . . . stop withholding the money due under the Cooperative Agreements" – "'sounds in contract.'"  *Id.* at *5.  So too here.

Plaintiffs would like the Court to "[d]eclare" that the USDA's termination of the LFPA25 Agreement was arbitrary and capricious, contrary to law, and violated due process, *see* Doc. 1 at Prayer for Relief, and to "enjoin USDA's May 2025 termination." *See* Doc. 7 at 17.  Plaintiffs further ask the Court to "vacate" the termination.  *See* Doc. 1 at Prayer for Relief.  These are all mere paraphrases of asking for specific performance of the Agreement.

Plaintiffs in *Vera Inst.* requested essentially the same relief.  2025 WL 1865160 at *13 (requesting the court "[d]eclare . . . terminations . . . are unlawful . . ."  and "[p]reliminarily and permanently enjoying Defendants . . from terminating grants[.]").  As that court correctly observed, "that non-monetary relief has little, if

any, independent value from the future potential of monetary recovery." 2025 WL 1865160, at *13.   The same is true here: "because the source of the right" – the LFPA25 Agreement – "and the relief requested for Plaintiffs' . . . APA claim" – specific performance – "is 'at its essence' contractual, Plaintiffs have failed to establish this court's jurisdiction over this claim." Id. at *14.  A request for an order that the government "must perform" on its contract "must be resolved by the Claims Court." Ingersoll-Rand, 780 F.2d at 80.

### C.    Plaintiffs Cannot Evade *Dep't of Educ.*

The Supreme Court's recent order in *Dep't of Educ.* should remove any doubt as to this Court's lack of jurisdiction over Plaintiff's contract-based claims.  145 S. Ct. 966.  In that case a district court had concluded that the plaintiffs were likely to succeed on the merits of APA claims and issued a temporary restraining order ("TRO") "enjoining the Government from terminating various education-related grants" and "requir[ing] the Government to pay out past-due grant obligations and to continue paying obligations as they accrue." *Id.* at 968.  The Supreme Court stayed the district court's TRO after determining, among other things, that "the Government [was] likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA." *Id.* at 968.  More specifically, the Supreme Court explained that "the APA's limited waiver of sovereign immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the

lines of what the District Court [had] ordered." *Id.* (quoting *Great-West*, 534 U.S. at 212). "Instead," according to the Supreme Court, "the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" *Id.*

*Dep't of Educ.* confirms that this Court lacks jurisdiction over Plaintiffs' contract-based claims. Like the *Dep't of Educ.* plaintiffs, Plaintiffs here seek relief from the termination of federal funding. Also like the *Dep't of Educ.* plaintiffs, Plaintiffs here challenge the termination decision under the APA, including on the ground that the termination was arbitrary and capricious. And like the district court in *Dep't of Educ.*, this Court too "lack[s] jurisdiction . . . under the APA" to compel Defendants "to pay money" under the LFPA25 Agreement. *Dep't of Educ.*, 145 S. Ct. at 968.

Accordingly, this Court should deny the motion for a preliminary injunction, just as several other courts have done in similar recent cases involving government grants or contracts. *See Vera Inst.*, 2025 WL 1865160, at *11 ("the Supreme Court's ruling in [*Dep't of Educ.*] forecloses the exercise of jurisdiction over Plaintiffs' arbitrary-and-capricious claim."); *Sustainability Inst. v. Trump,* 2025 WL 1587100, at *1 (4th Cir. June 5, 2025) (staying injunction based on *Dep't of Educ.* where the grants "were awarded by federal executive agencies to specific grantees from a generalized fund"); *Am. Library Ass'n v. Sonderling*, 2025 WL 1615771, at *5

21

(D.D.C. June 6, 2025) (after granting TRO, denying preliminary injunction where plaintiffs alleged grant terminations violated the APA and noting that *Dep't of Educ.* "cast[s] doubt on district courts' jurisdiction to hear cases involving grant terminations"); *Cath. Bishops*, 2025 WL 763738, at *5 (concluding that the court lacked the authority to "order the Government to pay money due on a contract"); *Solutions in Hometown Connections v. Noem*, 2025 WL 1103253, at *8–10 (D. Md. Apr. 14, 2025) (denying the plaintiffs' TRO motion challenging the termination of grants in light of *Dep't of Educ.* and concluding that the plaintiffs' APA claims were "in essence contract claims against the United States for which the . . . Court of Federal Claims has exclusive jurisdiction"); *Mass. Fair Hous. Ctr. v. U.S. Dep't of Hous. & Urb. Dev.*, 2025 WL 1225481 (D. Mass Apr. 14, 2025) (dissolving a TRO after acknowledging that *Dep't of Educ.* is an "unmistakable directive that, for jurisdictional purposes, the proper forum for this case is the Court of Federal Claims").

*      *      *

Plaintiffs bring a contract case masquerading as an APA dispute, but they cannot evade the exclusive jurisdiction of the Tucker Act through artful pleading. *Dep't of Educ.* controls this case. The Supreme Court's instruction that "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what" Plaintiffs request here fully

22

applies. 145 S. Ct. at 968 (quoting *Knudson*, 534 U.S. at 212). As explained in *Vera Inst.*, the Supreme Court "has spoken in a case substantially the same as this one." 2025 WL 1865160, at *11. "This court must listen[,]" *id.*, even if the holding in *Dep't of Educ.* was a decision "on the interim status of a major new executive action[.]" *Id.* (quoting *Trump v. CASA, Inc.*, __ S. Ct. __, 2025 WL 1773631, at *22 (June 27, 2025) (Kavanaugh, J., concurring)).

## II.    Two Statutory Exceptions to the APA's Sovereign Immunity Waiver Apply Here

The express statutory terms of the APA also preclude this Court's review of the USDA's actions because (1) Plaintiffs have "other adequate remed[ies]" available to them, 5 U.S.C. § 704, and (2) Defendants' decisions concerning the expenditure of its discretionary resources constitute unreviewable agency action "committed to agency discretion by law," *id.* § 701(a)(2). The Court, therefore, should dismiss the APA claims.

### A.    Plaintiffs Have Other Adequate Remedies Available to Them

Notwithstanding the jurisdictional defects with Plaintiffs' contract-based APA claims, those claims fail for the independently sufficient reason that Plaintiffs have "other adequate remed[ies]" available to them to vindicate their asserted right to continued funding under the LFPA25 Agreement. *Id.* § 704.

APA review is limited to "final agency action for which there is no other adequate remedy in a court." *Id.* The APA's "adequate remedy" bar "makes it clear

that Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action." *Bowen v. Massachusetts*, 487 U.S. 879, 902–03 (1988). Moreover, the Third Circuit has endorsed the notion that "[a] legal remedy is not inadequate for purposes of the APA because it is procedurally inconvenient for a given plaintiff, or because plaintiffs have inadvertently deprived themselves of an opportunity to pursue that remedy." *Turner v. Sec'y of U.S. Dep't of Hous. And Urban Dev.*, 449 F.3d 536, 541 (3d Cir. 2006) (quoting *Town of Sandford v. United States*, 140 F.3d 20, 23 (1st Cir. 1998)). Thus, if there exists an alternative adequate remedy, a plaintiff lacks a cause of action under the APA. *See Perry Cap.*, 864 F.3d at 621.

Here, Plaintiffs fail to show why they lack an adequate remedy in the Court of Federal Claims, which routinely adjudicates similar challenges to the lawfulness of contract terminations. *See, e.g.*, *Boarhog LLC v. United States*, 129 Fed. Cl. 130, 134–35 (2016) ("[The plaintiff] has not shown or alleged that [the defendant] committed bad faith or abused its discretion in terminating the contract for convenience."); *Gulf Grp. Gen. Enters. Co. W.L.L. v. United States*, 114 Fed. Cl. 258, 370 (2013) ("The termination for convenience . . . was within the contracting officer's discretion and, therefore . . . was not a breach of contract.").

Plaintiffs cannot "bypass Tucker Act jurisdiction" simply by "converting" through artful pleading what are essentially claims for monetary relief into ones

"requesting injunctive relief or declaratory actions." *Kidwell* v. *Dep't of Army, Bd. for Corr. of Mil. Recs.*, 56 F.3d 279, 284 (D.C. Cir. 1995); *see Crowley*, 38 F.4th at 1107. And, in any event, the injunctive relief that Plaintiffs demand – which is essentially equivalent to specific performance of the terminated LFPA25 Agreement – is not available in this Court, and it thus cannot serve as a basis for avoiding the APA's "adequate remedy" bar. *See Megapulse*, 672 F.2d at 971; *Cath. Bishops*, 2025 WL 763738, at *4 n.3.

## B.    CCC Funding Decisions Are Committed to Agency Discretion by Law

An agency's decision concerning how to allocate and expend federal funding is "committed to agency discretion by law" and is thus not subject to APA review. 5 U.S.C. § 701(a)(2). In *Lincoln v. Vigil*, the Supreme Court underscored that the APA, by its own terms, "preclude[s] judicial review of certain categories of administrative decisions that courts traditionally have regarded as 'committed to agency discretion.'" 508 U.S. 182, 191 (1993) (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 817 (1992)). *Lincoln* then held that an agency's "allocation of funds from a lump-sum appropriation" is one such "administrative decision traditionally regarded as committed to agency discretion," given that "the very point of a lump-sum appropriation," the Court explained, "is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." *Id.* at 192.

Here, the USDA funded the original LFPA through a lump-sum appropriation in the ARPA that did "not so much as mention the" LFPA. *Lincoln*, 508 U.S. at 194. The ARPA's general, lump-sum appropriation left USDA with broad discretion to decide when and how to obligate funds consistent with agency priorities. "These appropriations did not expressly authorize, direct, or even mention the expenditures of which [Plaintiffs] complain." *Hein v. Freedom From Religion Found, Inc.*, 551 U.S. 587, 605 (2007). Even under the original iteration of the LFPA program, therefore, the LFPA funding decisions would have been excepted from APA review because they would have "resulted from executive discretion, not congressional action." *Id*. at 605.

The LFPA25 Agreement is an even more concrete example of executive discretion – and even further removed from congressional action – because the USDA had planned to fund it not with ARPA lump-sum appropriations, but through its discretionary use of the CCC to borrow additional money for new cooperative agreements. *See* Tuckwiller Decl. ¶¶3-5. As noted above, the Charter Act authorizes, but does not require, the CCC to "[p]rocure agricultural commodities . . . for sale to other Government agencies . . . and to meet domestic requirements." 15 U.S.C. §714c(c). The Charter Act expressly permits the CCC to borrow money to fund USDA priorities, *see* 15 U.S.C. §714b(i), and to "determine the character of and the necessity for its obligations and expenditures and the manner in which they

shall be incurred, allowed, and paid." *Id.* at §714b(j).  In other words, the USDA was legally *permitted*, but not legally *obligated*, to enter the cooperative agreement.

An agency's "allocation of funds" to various programs and priorities "requires 'a complicated balance of a number of factors,'" including whether the agency's "'resources are best spent' on one program or another" and "whether a particular program 'best fits the agency's overall policies.'" 508 U.S. at 193 (quoting *Heckler*, 470 U.S. at 831).  Indeed, the "agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." *Id.* (quoting *Heckler*, 470 U.S. at 831-32).

As is its contractual and statutory prerogative, USDA ultimately concluded that a third round of LFPA funding no longer effectuated its priorities.  Whether Plaintiffs (or this Court) agree or disagree with that discretionary decision is beside the point – all that matters is that the APA prohibits judicial review of that act.  As the court in *Vera Inst.* opined:

> [D]ispleasure and sympathy are not enough in a court of law.  The court's powers are limited.  It cannot act without jurisdiction or in the absence of a valid cause of action.  That is the rub here.  The court cannot grant Plaintiffs relief because it lacks the power to hear their claims under the [APA].

2025 WL 1865160 at *1.

As to funds over which the agency has complete authority, any decisions regarding how much funding to allocate to a particular cause – or whether to enter

into a cooperative agreement at all – are committed entirely to agency discretion because an "agency is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." *Id.* (quoting *Heckler*, 470 U.S. at 831-32). That discretion includes the authority to terminate cooperative agreements that no longer advance agency priorities. So, in the absence of clear congressional expectations as to how an agency is to employ federal dollars, "§ 701(a)(2) gives the courts no leave to intrude." *Lincoln*, 508 U.S. at 193. "Thus, USDA's "decision to discontinue" LFPA25 funding is "accordingly unreviewable under § 701(a)(2)" of the APA. *Id.*

## III. Plaintiffs Fail to State an Actionable APA Claim

Even if the Court concludes that Plaintiffs claims are appropriately treated as arising under the APA, still Plaintiffs have not stated actionable APA claims because the USDA's termination was not arbitrary and capricious, an unlawful agency action, or a violation of relevant regulatory guidance.

### A.    The Termination Was Not Arbitrary and Capricious (Count I)

Through its letters terminating the LFPA25 Agreement, the USDA acknowledged that it had engaged in a change in policy when explaining that the contemplated award "no longer effectuates agency priorities." *See* Doc. 1-3. While Plaintiffs might prefer additional explanation, the USDA's failure to elaborate does not render the termination arbitrary and capricious.

To begin, the express terms of the governing contract allowed either party to terminate unilaterally, the only condition being "60-day notice in writing." *See* Doc. 1-2, Statement of Responsibilities, II.C.5.   The contract did not require the terminating party to justify or rationalize the termination.   It defies commonsense to contend that an agency acts arbitrarily or capriciously when it objectively complies with the express contractual terms for which it bargained.  *See Israel v. U.S. Dep't of Agric.*, 282 F.3d 521 (7th Cir. 2002) (plain language of contract supported finding that agency's action was not arbitrary and capricious).   If that were not enough, applicable regulations – expressly incorporated into the contract – allow for termination "if an award no longer effectuates the program goals or agency priorities." *See* 2 C.F.R. §200.340(a)(4).[16]

"[A] court is not to substitute its judgment for that of the agency . . . and should uphold a discussion of less than ideal clarity if the agency's path may reasonably be discerned[.]" *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 513-14 (2009) (internal quotations and citations omitted).  In *Fox Television Stations*, the Supreme Court rejected the notion that a change in agency policy requires "a more substantial explanation" and held that such a change is not "subjected to a more searching review." *Id.* at 14.  Further, an agency "need not demonstrate to a court's satisfaction

---

[16] Just like the contract, the regulations do not impose a requirement that the agency offer an elaborate justification for the priority shift.

that the reasons for the new policy are *better* than the reasons for the old one; it suffices that the new policy is permitted under the statute, that there are good reasons for it, and that the agency *believes* it to be better, which the conscious change of course adequately indicates." *Id*. at 515 (emphasis in original).

The APA's deferential standard of review, therefore, did not require USDA to offer any further explanation for the termination, especially since Plaintiffs cannot persuasively demonstrate that they had relied to their detriment on their expectation to receive LFPA25 funds. *See Fox Television Stations*, 556 U.S. at 515 (explaining that an agency may need to "provide a more detailed justification than would suffice for a new policy . . when its prior policy has engendered serious reliance interests[.]"). To be sure, Plaintiffs attempt to establish reliance, Doc. 7 at 3, but that attempt fails. First, the express terms of the LFPA25 Agreement conditioned the award on the Commonwealth providing a "final approved State . . Plan" that had to "be completed by April 30, 2025." *See* Doc. 1-2 at ¶4. The Commonwealth had not yet submitted a final approved plan by the time USDA terminated its award. *See* Tuckwiller Decl. ¶¶ at 6, 9. Given that unmet conditions remained at the time USDA terminated the LFPA25 Agreement, Plaintiffs cannot genuinely contend that they reasonably acted in reliance upon the anticipated receipt of the funds. Second, while Plaintiffs describe "*preparations* to contract with Feeding Pennsylvania," Doc. 7 at

3 (emphasis added), they contend nowhere that they had taken formalized acts to their detriment in reasonable reliance on LFPA25 funds.

In the end, Plaintiffs have given no sound basis to second-guess USDA's decision to discontinue the LFPA25 program.  For this Court now to disregard USDA's reasonable rationale for the termination would "represent[] a substantial intrusion into the working of another branch of Government" that the Supreme Court has cautioned should normally be avoided.  *Dep't of Com. v. New York*, 588 U.S. 752, 781 (2019) (citation omitted).  Plaintiffs' arbitrary and capricious claim, therefore, lacks merit.

### B. The Termination Was Not an Unlawful Agency Action (Count II)

Plaintiffs concede, as they must, that 2 C.F.R. § 200.340(a)(4)[17] permits an agency to terminate "pursuant to the terms and conditions of the Federal award, including, to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities." *See* Compl. at ¶ 79.  Count II nevertheless alleges that USDA's termination was "in violation of the law," Compl. ¶ 86, because the LFPA25 Agreement did not "clearly and unambiguously specify all termination provisions in the terms and conditions of the Federal award." *See* Compl. ¶ 80 (quoting 2 C.F.R. § 200.340(b)).  Plaintiffs contend that USDA was free to terminate

---

[17] This is one of the regulatory provisions expressly incorporated into the LFPA25 Agreement. *See* Doc. 1-2, Statement of Responsibilities, II.C.2.

the Agreement only if "the language [wa]s included in the terms and condition (sic) of the award.'" Compl. ¶ 82 (quoting 89 Fed. Reg. 30046-01, 30089 (April 22, 2024)).  Because, according to Plaintiffs, the LFPA25 Agreement did "not specify any circumstances under which the agreement c[ould] be terminated[,]" Compl. ¶ 83, they contend that the USDA's termination was "in violation of the law." *Id.* ¶ 86.

As a preliminary matter, however, Plaintiffs' argument rests not on regulations governing USDA's conduct, but on guidance issued by the Office of Management and Budget ("OMB").  *See* Compl. ¶ ¶ 81-82.  OMB offered that guidance pursuant to 31 U.S.C. 6307(1), which permits OMB to issue "interpretative guidelines to promote consistent and efficient use of procurement contracts, grant agreements, and cooperative agreements[.]" Critically, however, "[p]ublication of the OMB guidance in the CFR does not change its nature – it is guidance, not regulation." 2 C.F.R. 1.105(b); *see also Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 97 (2015) ("[i]nterpretive rules do not have the force and effect of law and are not accorded that weight in the adjudicatory process") (internal quotations omitted).  Because OMB guidance is not "law," actions that allegedly conflict with that guidance are not *ipso facto* "unlawful" for purposes of Section 706(2)(A) of the APA.

Regardless, Plaintiffs' claim is implausible on its face because the LFPA25 Agreement *did* specify the circumstances under which it could be terminated.  That

is, in unequivocal language, the LFPA25 Agreement indicated that it could be "terminated by either party upon 60-day notice in writing." *See* Doc. 1-2, Statement of Responsibilities, II.C.5. Therefore, the Court should dismiss Plaintiffs' claim in Count II that the USDA acted unlawfully by omitting the requisite language in the LFPA25 Agreement.[18]

### C.    The Termination Was Not Contrary to Law (Count III)

The Court should also dismiss Count III because USDA complied with all regulatory requirements when notifying Plaintiffs of the termination.  First, USDA provided Plaintiffs with a written notification of its intent to terminate with sixty days' advance notice.  *See* Doc. 1-3. That notice not only complied with 2 C.F.R. § 200.341(a) – which does not even require that much advance notice – but with the terms and conditions of the LFPA25 Agreement itself.  Moreover, the notice included "the reasons for termination" as required by 2 C.F.R. § 200.341(a) when it explained that the award "no longer effectuates agency priorities." *See* Doc. 1-3.  Plaintiffs'

---

[18] To the extent Plaintiffs contend that the LFPA25 Agreement was inadequate because it did not include the specific language that USDA could terminate if the award "no longer effectuates the program goals or agency priorities," they ignore that the contract expressly incorporated into its terms the very regulation setting out that exact language. *See* Doc. 1-2, Statement of Responsibilities, II.C.2 (including 2 C.F.R. § 200.340 among the regulations that were "incorporated by reference and made a part of this agreement").  Indeed, in signing the LFPA25 Agreement, each party "underst[ood]" that they were "bound by [those] regulations." *Id.*

allegations in Count III, therefore, are implausible that the termination notice somehow failed to meet regulatory requirements.[19]  *See* Compl. ¶ 88.

Plaintiffs separately allege that USDA failed to provide them "with an opportunity to object and provide information challenging the action," as required in 2 C.F.R. § 200.342.  Compl. ¶ 89.  But Plaintiffs are incorrect that 2 C.F.R. § 200.342 even applied to the termination here.  To the contrary, that regulation applies only to terminations for a recipient's "noncompliance." *See id.* ("Upon initiating a remedy for *noncompliance* (for example, disallowed costs, a corrective action plan, or termination), the Federal agency must provide the recipient with an opportunity to object and to provide information challenging the action") (emphasis added).  The regulations describe "noncompliance" as a failure "to comply with the U.S. Constitution, Federal statutes, regulations, or terms and conditions of the Federal award." 2 C.F.R. § 200.339.  Because USDA did not terminate the LFPA25 Agreement because of any noncompliance by Pennsylvania, it means that 2 C.F.R. § 200.342 has no application to this case.

---

[19] As an aside, the regulations do provide mechanisms for federal agencies to terminate awards for cause, *see* 2 C.F.R. 200.340(a)(1), in which case one might reasonably expect the termination notice to provide a more elaborate explanation of what the recipient did or failed to do to prompt the termination.  But where, as here, an agency terminates an award not because of a recipient's material failure to comply with contractual terms and conditions, but because of a shift in agency priorities, the explanation offered by the termination notice here is more than adequate to comply with regulatory requirements.

But even if § 200.342 *did* apply, still Plaintiffs do not plausibly allege that USDA denied them the "opportunity" to object, only that USDA purportedly denied them "notice" of that opportunity. *See* Compl. ¶¶ 47-48. This is a critical distinction because 2 C.F.R. § 200.342 does not require USDA to provide notice of any internal appeal procedures, so even taken as true, the allegations in Count III do not establish a regulatory violation. To be sure, Plaintiffs appear to conflate the USDA's purported failure to notify them of internal appeal options with the USDA denying them an "opportunity" to challenge the termination. *See* Compl. ¶¶ 89-90. But notice and opportunity are distinct concepts. Plaintiffs are sophisticated parties that had the wherewithal to avail themselves of any available internal agency processes if they truly wished to do so, and nowhere do Plaintiffs allege that they undertook such efforts but were denied access by USDA. The Court, therefore, should grant the motion to dismiss Count III for failure to state a claim because Plaintiffs have not plausibly alleged that USDA's termination was "contrary to law."

## IV.    Plaintiffs Failed to Exhaust Administrative Remedies

Because Plaintiffs have not exhausted all available administrative remedies, they are unlikely to succeed on their APA claim(s).[20] Under 7 U.S.C. § 6912(e), "[n]otwithstanding any other provision of law, a person shall exhaust all

---

[20] In their brief in support of the preliminary injunction, Plaintiffs only argued success on the merits as to Count I.

administrative appeal procedures established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction against [USDA]." Although the Third Circuit has not directly ruled on the matter, this Court should treat Section 6912(e)'s exhaustion requirement as jurisdictional. *See Bastek v. Fed. Crop Ins. Corp.*, 145 F.3d 90, 94 (2d Cir. 1998) (as to 7 U.S.C. §6912(e), concluding that "[t]here can be little doubt that Congress's intent, in enacting this statute, was to require plaintiffs to exhaust all administrative remedies before bringing suit in federal court").  *But see*, *e.g.*, *Munsell v. U.S. Dep't of Agric.*, 509 F.3d 572, 581 (D.C. Cir. 2007) (holding that the exhaustion requirement is "mandatory, but not jurisdictional").

This mandatory exhaustion requirement applies here because an individual or entity subject to an "adverse decision" concerning the CCC's domestic programs may appeal to the National Appeals Division ("NAD"), 7 U.S.C. § 6991(2)(B) (including the CCC in the definition of an "agency"); 7 C.F.R. § 11.1 (same). Decisions issued by the NAD are subject to judicial review.  7 U.S.C. § 6999. Indeed, not until a plaintiff fully exhausts administrative remedies is an administrative record complete and an agency action "final" for purposes of judicial review under the APA.  *See Darby v. Cisneros*, 509 U.S. 137, 146 (1993) (noting that, not until a party has exhausted administrative remedies, is an agency action "final" and subject to judicial review under the APA).

Here, Plaintiffs seek judicial review of USDA's decision to terminate the LFPA25 Agreement. Yet they have not alleged that they exhausted their administrative remedies by appealing their grant termination and receiving a final decision from the NAD.[21] Because none of their APA claims have been properly exhausted, Plaintiffs fail to state a viable APA claim.[22] *See Gold Dollar Warehouse, Inc. v. Glickman*, 211 F.3d 93, 98 (4th Cir. 2000) ("Parties are required by statute to exhaust available administrative remedies before they may bring an action against the USDA in federal court."); *Ovanova, Inc. v. U.S. Dep't of Agric.*, 2025 WL

---

[21] Should Plaintiffs endeavor to exhaust administrative remedies with NAD, that body may very well conclude that Plaintiffs' dispute raises a "matter of general applicability and thus [is] not subject to appeal." 7 U.S.C. §6992(d). In that scenario, "[t]he determination of the Director as to whether a decision is appealable shall be administratively final," *id.*, and the district courts then would have jurisdiction to review only the narrow issue of general applicability, subject to the limits of the APA, including the prohibition against review of discretionary agency decisions. *See* 7 U.S.C. §6999. Any broader judicial review over the merits of this case would still lie with the Court of Federal Claims under the Tucker Act. In all events, the statutory scheme requires Plaintiffs to appeal to NAD first. Among other purposes, this appeal would create a record as to whether NAD would hear their appeal on the merits in the first instance and clarify the nature of (and jurisdiction over) any further claims against USDA.

[22] Even if USDA failed to apprise Plaintiffs of their obligation to seek an internal appeal, that would not excuse their failure to complete that process. First, as noted above, the Court should treat the exhaustion requirement as jurisdictional, in which case there would be no discretion to excuse the failure to exhaust. But even if the exhaustion requirement is not jurisdictional, the USDA's alleged failure to provide notice of appeal rights merely "constitutes good cause for a late filing[,]" *Toyama v. Merit Sys. Protection Bd.*, 481 F.3d 1361, at 1366-67 (Fed. Cir. 2007), not good cause to forego filing at all.

343118, at *6 (D.D.C. Jan. 30, 2025) ("Plaintiffs' APA claims thus would topple on the merits for failure to exhaust.")

## V.    Plaintiffs Fail to State a Procedural Due Process Claim

The Court should dismiss the due process claim because Plaintiffs did not have a constitutionally protected property interest in the LFPA25 Agreement. "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). As the court in *Vera Inst.* concluded when dismissing a similar claim in an analogous circumstances, "'[o]utside of the employment context, courts have resisted application of due-process principles to government contracts because with scores of millions of government contracts in effect at any point in time, it is unimaginable that all government agencies would be required to provide a hearing before they take any action that is arguably inconsistent with a contract.'" 2025 WL 1865160, at *15 (quoting *New Vision Photography Program, Inc. v. District of Columbia*, 54 F. Supp. 3d 12, 29 (D.D.C. 2014)).

The Third Circuit has similarly observed that "if every breach of contract by someone acting under color of state law constituted a deprivation of property for procedural due process purposes, the federal courts would be called upon to pass judgment on procedural fairness of the processing of a myriad of contractual claims against public entities." *Reich v. Barry*, 883 F.2d 239, 242 (3d Cir. 1989); *see also*

*Labalokie v. Capital Area Intermediate Unit*, 926 F. Supp. 503, 508 (M.D. Pa. 1996)

("It is settled law that there can be no property interest in obtaining future

government contracts[.]").

Because, as set out above, the LFPA25 Agreement is a contract with the

government, Plaintiffs do not have a constitutionally protected interest in the same.

Of course, the presence of a contract also means that Plaintiffs are not without

recourse. Quite the opposite, in fact. "If [plaintiff's] contract gives him a property

interest protectible by due process . . ., we perceive . . . no reason why [plaintiff] will

not receive constitutionally adequate process to protect that property interest when

he asserts his breach of contract claim[.]" *Reich*, 883 F.2d at 241 (emphasis added).

Requiring Plaintiffs to seek recourse through a breach of contract claim makes even

more sense given that the LFPA25 Agreement had express language concerning the

termination process. It would seem, then, that a dispute over what amount of process

Plaintiffs were entitled to would lie in the text of the arms'-length LFPA25

Agreement, not in the United States Constitution.

As another court recently ruled concerning a due process claim arising from a

grant termination, "Plaintiffs offer[ed] no reason to think their contracts and grants .

. . are different from the 'millions of government contracts in effect at any point in

time' to which courts seldom apply due-process principles.'" *Nat'l Urban League v.*

*Trump*, __ F. Supp. 3d __, 2025 WL 1275613, at *18 (D.D.C. May 2, 2025). Because

Plaintiffs have no property interest in the LFPA25 Agreement, the Court should dismiss their procedural due process claim.

## CONCLUSION

The Court should dismiss the Complaint with prejudice.


Respectfully submitted,

JOHN C. GURGANUS
Acting United States Attorney


s/Richard D. Euliss
RICHARD D. EULISS
Assistant U.S. Attorney
DC999166
U.S. Attorney's Office for the
Middle District of Pennsylvania
1501 N. 6th Street, Box 202
Harrisburg, PA 17102
Phone: (717) 221-4482
Richard.D.Euliss@usdoj.gov

Dated: July 30, 2025

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

GOVERNOR JOSH SHAPIRO, *et al.*,

Plaintiffs,

v.

U.S. DEPARTMENT OF
AGRICULTURE, *et al.*,

Defendants.

Case No.  1:25-CV-00998

Hon. Joseph F. Saporito, Jr.,
United States District Judge

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.  That on July 30, 2025, she filed the:

### BRIEF IN SUPPORT OF MOTION TO DISMISS

via the Court's CM/ECF system, which will automatically generate notice upon all counsel of record.

s/ Amanda J. Albert
AMANDA J. ALBERT
Legal Administrative Specialist