UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| GOVERNOR JOSH SHAPIRO, *et al*.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF AGRICULTURE, *et al*.,<br><br>Defendants. | No. 25-cv-998<br>Judge Joseph F. Saporito, Jr. |

**BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

Table of Authorities ........................................................................................ ii

Introduction .................................................................................................... 1

Background ..................................................................................................... 2

Argument ......................................................................................................... 4

I.    This Court has jurisdiction. ................................................................. 4

II.   There is no other bar to judicial review. ......................................... 10

     A.    No further exhaustion of administrative review was
          required. ....................................................................................... 10

     B.    The termination is a reviewable decision. ............................... 13

III.  Each of PDA's claims is plausible. ................................................... 15

     A.    USDA's termination was arbitrary and capricious. ............... 15

     B.    USDA's termination was contrary to law. ............................. 18

     C.    Both PDA's procedural claims are plausible. ........................ 21

Conclusion .................................................................................................... 22

# TABLE OF AUTHORITIES

## Cases

*Am. Pub. Health Ass'n v. NIH*, No. 25-1611, 2025 WL 2017106 (1st Cir. July 18, 2025) ...................................................................... 5, 6, 8

*American Center for Int'l Labor Solidarity v. Chvavez-DeRemer*, No. 25-cv-1128, 2025 WL 1795090 (D.D.C. June 30, 2025) .................................... 9

*Atterbury v. U.S. Marshals Service*, 805 F.3d 398 (2d Cir. 2015) ........................... 7

*Bartlett v. USDA*, 716 F.3d 464 (8th Cir. 2013) .................................... 12

*Bastek v. Fed. Corp. Ins. Corp.*, 145 F.3d 90 (2d Cir. 1998) ................................. 11

*Bowen v. Massachusetts*, 487 U.S. 895 (1988) ................................................. 5, 6, 7

*California v. U.S. Dep't of Educ.*, 132 F.4th 92 (1st Cir. 2025) ......................... 8, 14

*Chailla v. Comm'r of Soc. Sec. Admin.*, 838 F. App'x 653 (3d Cir. 2020) ................................................................... 12

*Cmty. Legal Servs. in E. Palo Alto v. HHS*, 137 F.4th 932 (9th Cir. 2025) ................................................................... 5, 9

*Coinbase, Inc., v. SEC*, 126 F.4th 175 (3d Cir. 2025) .................................... 16, 17

*Colorado v. HHS*, No. 25-cv-121, 2025 WL 1426226 (D.R.I. May 16, 2025) ................................................................... 5, 6

*Davis Enters. v. EPA*, 877 F.2d 1181 (3d Cir. 1989) ............................................. 13

*Dawson Farms, LLC v. Farm Service Agency*, 504 F.3d 592 (5th Cir. 2007) ................................................................... 12

*Dep't of Education v. California*, 145 S. Ct. 966 (2025) ................................... 7, 8, 9

*DHS v. Regents of Univ. of California*, 591 U.S. 1 (2020) ......................... 13, 15, 16

*Dymeck v. NBTY, Inc.*, No. 05-cv-2314, 2006 WL 898170 (M.D. Pa. Apr. 4, 2006) ................................................................... 13

*Encino Motorcars, LLC v. Navarro*, 579 U.S. 211 (2016) .............................. 16, 17

ii

*FDA v. Wages & White Lion Investments, L.L.C.*, 145 S.Ct. 898 (2025) .............................................................................................16

*Forest Guardians v. U.S. Forest Serv.*, 641 F.3d 423 (10th Cir. 2011) .................11

*Lincoln v. Vigil*, 508 U.S. 182 (1993) ............................................................... 13, 14

*Maine v. USDA*, No. 25-cv-131, 2025 WL 1088946 (D. Me. Apr. 11, 2025) .............................................................................................................6

*Maryland v. Corp. for Nat'l and Comm. Serv.*, No. 25-cv-1363, 2025 WL 1585051 (D. Md. June 5, 2025).................................................................5, 9

*McBride Cotton and Cattle Corp. v. Veneman*, 290 F.3d 973 (9th Cir. 2002) .......................................................................................................12

*Megapulse, Inc. v. Lewis*, 672 F.3d 959 (D.C. Cir. 1982) .........................................4

*Metro. Transp. Auth. v. Duffy*, No. 25-cv-1413, 2025 WL 1513369 (S.D.N.Y. May 28, 2025)..................................................................................20

*Munsell v. USDA*, 509 F.3d 572 (D.C. Cir. 2007) .......................................... 11, 12

*Nat'l Job Corps Ass'n v. DOL*, No. 25-cv-4641, 2025 WL 1752414 (S.D.N.Y. June 25, 2025)................................................................................6, 9

*Nielsen v. Preap*, 586 U.S. 392 (2019) ....................................................................18

*Normandy Apartments, Ltd. v. HUD*, 554 F.3d 1290 (10th Cir. 2009) ....................7

*Ohio v. EPA*, 603 U.S. 279 (2024).........................................................................15

*Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1 (1981)...........................21

*Policy Research, LLC v. HHS*, 313 F.Supp.3d 62 (D.D.C. 2018) ..........................14

*Republic Indus., Inc. v. Cent. Pennsylvania Teamsters Pension Fund*, 693 F.2d 290 (3d Cir. 1982) .............................................................................13

*Vera Institute of Justice v. DOJ*, No. 25-cv-1643, 2025 WL 1865160 (D.D.C. July 7, 2025)..........................................................................................9

**Statutes**

28 U.S.C. § 1491 ..........................................................................................................4

5 U.S.C. § 706 ...........................................................................................................15

5 U.S.C. § 714c .........................................................................................................14

7 U.S.C. § 6912 .........................................................................................................11

7 U.S.C. § 6994 .........................................................................................................12

7 U.S.C. §§ 6991-7002 .............................................................................................11

**Regulations**

2 C.F.R. § 200.202 ....................................................................................................19

2 C.F.R. § 200.204 ....................................................................................................19

2 C.F.R. § 200.340 ............................................................................................. passim

2 C.F.R. § 200.341 ....................................................................................................21

2 C.F.R. § 200.342 ............................................................................................. 11, 22

78 Fed. Reg. 78,673 (Dec. 26, 2013) .......................................................................19

85 Fed. Reg. 49,507 (Aug. 13, 2020).................................................................. 19, 20

## INTRODUCTION

The U.S. Department of Agriculture (USDA) ended a program that allowed the Pennsylvania Department of Agriculture (PDA) to facilitate the purchase of millions of pounds of food from local farmers to then be used in millions of healthy meals for Pennsylvanians experiencing hunger. USDA claimed the program no longer effectuated its priorities, but that conclusion bears none of the hallmarks of reasoned decision making. In fact, USDA failed to provide ***any*** explanation for its decision. For these reasons, the termination violated the Administrative Procedure Act (APA). Further, the termination exceeded USDA's regulatory authority and was executed without providing necessary process.

USDA's defense largely is that this Court cannot review its unlawful action. Yet this Court can do so because USDA violated—and PDA's claims arise under— the APA and U.S. Constitution. And PDA, which repeatedly told USDA it was challenging the termination before filing this action, did all that was required to exhaust administrative remedies.

At bottom, USDA's termination will deprive Pennsylvanians most in need of food assistance of over 12 million meals and deprive farmers of a market that they had been relying on. There was no reasoned or lawful basis for doing so and this Court should deny USDA's motion to dismiss.

## BACKGROUND

Since 2022, PDA has administered a food-assistance program—called the Local Food Purchase Assistance (LFPA) Program—through which funding received from USDA is used to purchase food from Pennsylvania farmers to then be distributed through Pennsylvania's charitable food network. Compl. ¶¶ 19-28 (ECF No. 1).

PDA received nearly $30 million through two initial rounds of LFPA funding, which it used for food banks' purchase of about 30 million pounds of healthy food from local farmers. Compl. ¶¶ 27-28. The initial funding sustained LFPA through July 2025.

Late last year, USDA extended LFPA, awarding PDA $13 million to continue the LFPA program beyond July 2025. Compl. ¶¶ 30-33. Those funds would allow for the purchase of approximately 14.9 million pounds of food from local Pennsylvania farmers to then be distributed to approximately 3.2 million low-income Pennsylvania households. Compl. ¶ 59. PDA executed an agreement for that funding (referred to as the LFPA25 agreement), completed the state plan that USDA required as a predicate to using the funding, and began work on a contract with Feeding Pennsylvania—an association of food banks—to administer the $13 million for Pennsylvania food banks. Compl. ¶ 57.

In March 2025, USDA notified PDA that, "pursuant to 2 C.F.R. § 200.341," it intended to terminate LFPA25 "in accordance with 2 C.F.R. § 200.340(a)(4) and

2

the terms and conditions of the award." Compl. ¶¶ 37, 39 & Compl. Ex. 2. Quoting § 200.340(a)(4), USDA asserted the agreement "no longer effectuates agency priorities" and thus that "termination of the award is appropriate." Compl. ¶ 38. USDA did not provide any reason for why or how it determined the program no longer effectuated its priorities. Compl. ¶ 42.

Soon receiving the termination notification, PDA informed USDA that it "objects to and challenges this decision." Compl. ¶¶ 44-47 and Compl. Ex. 3. PDA also asked USDA to provide the written appeal procedures it was required to maintain or advise PDA that an agency review process was unavailable. Compl. ¶ 47.

USDA did not respond. Compl. ¶ 48.

In a subsequent letter, Secretary Redding reminded USDA that he "sent a letter to the USDA on March 25, 2025, requesting that USDA reconsider its decision of this termination based on our signed cooperative agreement and appealing the USDA's unlawful cancellation, but have not yet received a response." Compl. ¶¶ 50-51 & Compl. Ex. 4.

USDA did not respond to the second request either. Compl. ¶ 52. Instead, it sent a final termination letter stating that "the agreement was terminated in accordance with 2 CFR § 200.340(a)(4) and the terms and conditions of the award." Compl. ¶ 53 & Compl. Ex. 5. No specific term or condition was cited.

3

Even after the final termination decision, Secretary Redding met with USDA senior representatives who told him they would not provide any further process for challenging the termination decision and would not revisit it. Compl. ¶ 55.

With all alternatives exhausted, Plaintiffs—Governor Josh Shapiro, Secretary Redding, and PDA—filed this action.[1] The complaint includes four counts: The termination decision (1) was arbitrary and capricious; (2) exceeded USDA's authority under 2 C.F.R. § 200.340; (3) failed to comply with 2 C.F.R. § 200.341's procedural requirements; and (4) failed to provide due process.

## ARGUMENT

### I.     This Court has jurisdiction.

The Tucker Act does not divest this court of jurisdiction. *Contra* USDA Br. at 13-22 (ECF No. 14). That statute assigns jurisdiction over contract claims against the United Stated to the Court of Federal Claims, 28 U.S.C. § 1491(a)(1), but this case is about violations of administrative and constitutional law.

The Tucker Act applies where a plaintiff (1) asserts a right and (2) seeks relief that each suggests the claim is "at its essence a contract claim." *Megapulse, Inc. v. Lewis*, 672 F.3d 959, 967-68 (D.C. Cir. 1982). When "rights and remedies are *statutorily* or *constitutionally* based, then district courts have jurisdiction; if rights and remedies are *contractually* based then only the Court of Federal Claims does." *Cmty.*

---

[1] This brief refers to all plaintiffs as PDA and all defendants as USDA.

*Legal Servs. in E. Palo Alto v. HHS*, 137 F.4th 932, 938 (9th Cir. 2025) (emphasis in original). Here, neither the asserted right nor the requested relief is contractual.

1.    PDA claims that USDA termination of the LFPA program was arbitrary and capricious, beyond the agency's regulatory authority, procedurally improper, and unconstitutional. The rights asserted derive from the APA and the Constitution, which are squarely within Article III courts' jurisdiction. *See Am. Pub. Health Ass'n v. NIH*, No. 25-1611, 2025 WL 2017106, at *6-7 (1st Cir. July 18, 2025); *see also Maryland v. Corp. for Nat'l and Comm. Serv.*, No. 25-cv-1363, 2025 WL 1585051, at *23 (D. Md. June 5, 2025) (exercising jurisdiction because "[t]he source of the rights for the States' notice-and-comment claims is [the APA], not the grants."); *Colorado v. HHS*, No. 25-cv-121, 2025 WL 1426226, at *8 (D.R.I. May 16, 2025) (exercising jurisdiction because "the source of the States' claims do not arise in any contract, but the APA—particularly its provisions forbidding arbitrary and capricious action … ."). PDA's claims do not depend on the terms of the LFPA25 agreement and therefore are not contractual in nature. *Am. Pub. Health Ass'n*, 2025 WL 2017106, at *7.

2.    PDA's requested relief reinforces that this is not a contract dispute. The typical contractual remedy is money damages, which provides compensation for a past loss. *Bowen v. Massachusetts*, 487 U.S. 895, 910 (1988). There is a difference between compensatory money damages and "an equitable action for specific

relief…either directing or restraining the defendant officer's actions" even if that equitable order "may require one party to pay money to another." *Id.* at 893.

The requested relief here—enjoining the unlawful termination of funding—is a forward-looking restraint and quintessentially equitable. Many recent decisions have held that federal courts have jurisdiction to issue the sort of relief requested here. *E.g.*, *Am. Pub. Health Ass'n*, 2025 WL 2017106, at *7 (holding that courts may enjoin federal actors from terminating grants for unlawful reasons); *Nat'l Job Corps Ass'n v. DOL*, No. 25-cv-4641, 2025 WL 1752414, at *5 (S.D.N.Y. June 25, 2025) (same); *Colorado*, 2025 WL 1426226, at *8 (same); *Rhode Island*, 2025 WL 1303868, at *6 (same); *Maine v. USDA*, 778 F. Supp. 3d 200, 224-25 (D. Me. 2025) (same).[2]

**3.**    USDA conflates the nature of the right (for example, the APA's protection against arbitrary agency action) with the object of USDA's arbitrary action (the LFPA25 Agreement). Arbitrary and unlawful action is not immune from APA review merely because it "implicate[s] a contractual relationship" or because a plaintiff could have advanced a contract claim. *Normandy Apartments, Ltd. v. HUD*, 554

---

[2] Review is not precluded here because PDA has "other adequate remedies" available in the Court of Federal Claims. *Contra* USDA Br. at 23-25. This suggestion is just USDA's jurisdictional argument re-packaged. For the same reason this court has jurisdiction, the Court of Federal Claims would not. *See Am. Pub. Health Ass'n*, 2025 WL 2017106, at *5 (citing *Bowen*'s holding that the Court of Federal Claim does not possess equitable powers\).

F.3d 1290, 1299-300 (10th Cir. 2009); *see also Atterbury v. U.S. Marshals Service*, 805 F.3d 398, 406-07 (2d Cir. 2015) (holding that disputes between contracting parties is not contractual unless it depends on contract terms).

Additionally, USDA makes no meaningful argument that PDA seeks compensation for past injuries, the standard contract remedy. Rather, USDA essentially repeats the position that the Supreme Court rejected in *Bowen*: that equitable relief somehow becomes contractual because it could lead to payment. *See Bowen*, 487 U.S. at 893, 910. That is not the case.

4.    Finally, USDA draws the wrong conclusion from the Supreme Court's decision in *Department of Education v. California*, 145 S. Ct. 966 (2025). The Supreme Court did not hold that the APA is unavailable to challenge federal agencies' unlawful or arbitrary decisions to terminate funding awards memorialized in an agreement. *Contra* USDA Br. at 20-22. Nor did it rule that any case that might result in the spending of federal funds belongs in the Court of Federal Claims. *Contra id.* at 20-21. On the latter point, the Supreme Court reaffirmed that Article III jurisdiction exists to issue orders enjoining unlawful agency action under the APA even if that "may result in the disbursement of funds." *California*, 145 S. Ct. at 968 (quoting *Bowen*, 487 U.S. at 910).

Critically, the district court order stayed in *California* exceeded the limits of Article III jurisdiction because it specifically required "the Government to pay out

past-due grant obligations and to continue paying obligations as they accrue." *Id.* at 968. The Supreme Court acted because of the relief issued "along the lines of what the District Court ordered here." *Id.* Even more, as the First Circuit wrote before the stay application reached the Supreme Court, "the terms and conditions of each individual grant award are at issue." *California v. U.S. Dep't of Educ.*, 132 F.4th 92, 97-98 (1st Cir. 2025).

Circuit courts evaluating *California* have properly concluded that it does not preclude APA actions against arbitrary or unlawful action merely because the action results in contract terminations.

Most instructive, in *American Public Health Association*, the First Circuit denied a request to stay an order enjoining NIH's termination of research grants. 2025 WL 2017106, at *1. Grant recipients argued their termination was arbitrary and capricious under the APA. *Id.* An order enjoining the termination was permissible, the First Circuit ruled, because (1) the order "did not award 'past due sums,' but rather provided declaratory relief that is unavailable in the Court of Federal Claims" and (2) neither the APA claims nor the order resolving them "depend[ed] on the terms or conditions of any contract." *Id.* at *6. The First Circuit had "no difficulty distinguishing" the order before it and one, as in *California*, to "pay out past-due grant obligations." *Id.* at *7 (quoting *California*, 145 S. Ct. at 968).

8

Likewise, the Ninth Circuit has noted that *California* was premised on the fact that the district court had issued an order to "enforce a contractual obligation to pay money." *Cmty. Legal Services*, 137 F.4th at 939 (quoting *California*, 145 S. Ct. at 968).

Numerous district courts have similarly understood that *California* addresses orders affirmatively directing the payment of funds. *See, e.g.*, *American Center for Int'l Labor Solidarity v. Chvavez-DeRemer*, No. 25-cv-1128, 2025 WL 1795090, at *19 (D.D.C. June 30, 2025) (noting Supreme Court described the district court's order as affirmatively requiring payments under terminated grant); *Nat'l Job Corps Ass'n*, 2025 WL 1752414, at *5 n.5 (same); *Thakur v. Trump*, No. 25-cv-4737, 2025 WL 1734471, at *20 (N.D. Cal. June 23, 2025) (same); *Maryland*, 2025 WL 1585051, at *27 (same).

USDA's description of *California* relies principally on a district court decision that engages in facially flawed reasoning that should not be followed. *See* USDA Br. at 17-18 (citing *Vera Institute of Justice v. DOJ*, No. 25-cv-1643, 2025 WL 1865160 (D.D.C. July 7, 2025)). In *Vera*, the district court concluded *California* did not preclude the exercise of jurisdiction over constitutional challenges to DOJ's decision to terminate cooperative agreements. 2025 WL 1865160, at *6-14. But that court concluded that *California* foreclosed jurisdiction over APA claims. *Id.* at *10-

12. The distinction between constitutional and statutory claims is untenable. In each instance, the right asserted is not contractual.

*    *    *    *    *

This Court has jurisdiction because the right PDA asserts and the remedy it seeks are not contractual.

## II.    There is no other bar to judicial review.

### A.    No further exhaustion of administrative review was required.

Although USDA stonewalled PDA's multiple requests for administrative review of the termination decision, it now claims PDA failed to exhaust administrative remedies. PDA's repeated attempts to obtain agency review of the termination decision satisfy—or at least excuse compliance with—any exhaustion requirement.

As described above, PDA twice wrote USDA notifying the federal agency that it was challenging the termination and specifically asking that USDA identify the procedures it was required to maintain under the regulations it invoked to terminate LFPA25. *Supra* at 3-4. USDA did not respond to either request or identify those procedures. *Id.* Even after the final termination, Secretary Redding met with USDA officials about LFPA who told him they would not provide any further process for challenging the termination decision and would not revisit it. *Id.* at 4.

USDA does not explain why it now insists that PDA should return to the agency when USDA already twice ignored PDA's requests and then affirmatively told Secretary Redding that they would not provide administrative review.

Indeed, plaintiffs need exhaust only available administrative remedies. *E.g.*, *Forest Guardians v. U.S. Forest Serv.*, 641 F.3d 423, 430 (10th Cir. 2011) ("Plaintiffs must exhaust available administrative remedies before the USFS prior to bringing their grievances to federal court."). To do so, a party "generally must structure their participation so that it alerts the agency to the parties' position and contentions, in order to allow the agency to give the issue meaningful consideration." *Id.*

In its initial termination notice, USDA cited 2 C.F.R. § 200.340 for its termination. *See supra* at 3. Agencies that act under that regulation "must maintain written procedures for processing objections, hearing, and appeals." 2 C.F.R. § 200.342. USDA does not assert that it maintains such procedures. Before this Court, USDA contends this suit is subject to 7 U.S.C. § 6912(e) and therefore exhaustion procedures before USDA's National Appeals Division. *See generally* 7 U.S.C. §§ 6991-7002 (describing those procedures).[3] The first obligation under those procedures is

---

[3] No court has held that § 6912 creates a jurisdictional bar. *Contra* USDA Br. at 35-36 (citing *Bastek v. Fed. Corp. Ins. Corp.*, 145 F.3d 90 (2d Cir. 1998)). *Bastek* does not address, let alone decide that issue. As the D.C. Circuit noted, "*Bastek* … merely held that § 6912(e) was sufficiently explicit to make the exhaustion requirement mandatory." *Munsell v. USDA*, 509 F.3d 572, 581 (D.C. Cir. 2007). Further, the D.C. Circuit observed that, "every other circuit that has directly

that USDA identify them in writing for anyone subject to an adverse decision. 7 U.S.C. § 6994. PDA did not receive that notice and USDA does not claim it was ever provided.

Whether the seemingly non-existent regulatory process or the statutory process that USDA failed to identify applies, there was nothing more PDA needed to do before bringing this action. PDA made its position clear before USDA. USDA simply refused to act.

Even if PDA's repeated attempts to engage USDA did not exhaust administrative requirements, they were sufficient to show that the futility exception to exhaustion applies. *Bartlett v. USDA*, 716 F.3d 464, 472-74 (8th Cir. 2013) (discussing application of futility exception to exhaustion under § 6912); *Munsell*, 509 F.3d at 592 (same); *Dawson Farms, LLC v. Farm Service Agency*, 504 F.3d 592, 606 (5th Cir. 2007) (same); *McBride Cotton and Cattle Corp. v. Veneman*, 290 F.3d 973, 982 (9th Cir. 2002) (same).

The futility exception embraces the sensible point that a party need not continue to pursue administrative remedies if doing so would be "clearly useless." *Chailla v. Comm'r of Soc. Sec. Admin.*, 838 F. App'x 653, 656 (3d Cir. 2020); *accord*

---

considered whether the 1994 Reorganization Act creates a jurisdictional exhaustion provision has found that 7 U.S.C. § 6912(e) is nonjurisdictional." *Id.* at 580-81.

*Dymeck v. NBTY, Inc.*, No. 05-cv-2314, 2006 WL 898170, at *1 (M.D. Pa. Apr. 4, 2006). That is because "[t]he law should never command a litigant to perform a useless action." *Republic Indus., Inc. v. Cent. Pennsylvania Teamsters Pension Fund*, 693 F.2d 290, 296 (3d Cir. 1982).

USDA's silence in the face of multiple requests, and then its affirmative declaration that review was unavailable, show that there was nothing more for PDA to do before coming to this Court.

**B.    The termination is a reviewable decision.**

The APA creates a presumption that judicial review is available for adverse agency action. *DHS v. Regents of Univ. of California*, 591 U.S. 1, 16-17 (2020). The narrow exception to that presumption for actions committed to an agency's discretion does not apply here. *Contra* USDA Br. at 25-28.

APA review is unavailable for discretionary decisions only where there is "no meaningful standard against which to the judge agency's exercise of discretion." *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993). The Third Circuit has "held that when agency regulations or internal policies provide sufficient guidance to make possible federal review under an abuse of discretion standard, agency decisions are not unreviewable, even absent express statutory limits on agency discretion." *Davis Enters. v. EPA*, 877 F.2d 1181, 1185 (3d Cir. 1989).

13

Here, USDA acted under 2 C.F.R. § 200.340, a regulation that "cabin[s] the Departments discretion as to when it can terminate existing grants." *California*, 132 F.4th at 92 (citing 2 C.F.R. § 200.340(a))[4]; *see also Policy Research, LLC v. HHS*, 313 F.Supp.3d 62, 76-77 (D.D.C. 2018) (K.B. Jackson, J.) (holding that regulations that limit when an agency may terminate a grant create a standard of review). Moreover, the funding for LFPA25 comes from the Credit Commodity Corporation (CCC). Congress has defined the permissible priorities for CCC funding, which include procuring agricultural commodities for domestic relief agencies and meeting domestic requirements. 5 U.S.C. § 714c(c). So, there are both regulatory and statutory standards against which this Court can evaluate the termination decision.

USDA relies on *Lincoln v. Vigil*, but that case does not address comparable facts because PDA does not seek to dictate USDA's "allocation of funds from a lump-sum appropriation." 508 U.S. at 192. USDA itself decided to allocate $13 million to PDA's LFPA program. PDA makes no claim that USDA must provide any funding to LFPA beyond what USDA itself decided to allocate. In *Lincoln*, the Supreme Court was not considering agency action that arbitrarily reversed the agency's own explicit and particular funding decision, as here, but instead a decision to discontinue a program by reallocating further funding elsewhere. *Id.* at 193-94.

---

[4] The Supreme Court's grant of a stay in this case did not contradict the First Circuit on this point.

And whether USDA had any obligation to commit funding to LFPA25 in the first instance is irrelevant. *Contra* USDA Br. at 25-27. An agency's decision to change course—especially in the face of reliance interests like those alleged here, *see* Compl. ¶¶ 57-61—must not be arbitrary and capricious; that holds even if the initial decision may not have been legal. *DHS*, 591 U.S. at 25, 29-33 (deciding rescission of DACA program was arbitrary and capricious without deciding whether program itself was permissible).

*    *    *    *    *

At bottom, each reason that USDA furnishes for why this Court should not evaluate USDA's decision to end a program that allows PDA to help feed hungry Pennsylvanians and aid Pennsylvania farmers fails.

## III.  Each of PDA's claims is plausible.

### A.  USDA's termination was arbitrary and capricious.

Agency action runs afoul of the APA, and thus must be set aside, if it is "arbitrary" or "capricious." 5 U.S.C. § 706(2)(A). Action is arbitrary or capricious if it "is not reasonable and reasonably explained." *Ohio v. EPA*, 603 U.S. 279, 292 (2024) (internal quotation marks omitted). Courts look to whether "the agency has offered a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *Id.* (cleaned up). An agency's explanation of its decision must give courts a "discernable path" for following the agency's

15

rationale. *Coinbase, Inc., v. SEC*, 126 F.4th 175, 198 (3d Cir. 2025); *see also Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016).

Agencies must meet certain benchmarks to satisfy that standard. An agency that changes its position must give "a reasoned explanation for the change," *FDA v. Wages & White Lion Investments, L.L.C.*, 145 S.Ct. 898, 916 (2025), in which it at least shows "awareness that it is changing position and show that there are good reasons for the new policy." *Encino*, 579 U.S. at 221 (cleaned up). Additionally, it is arbitrary and capricious to depart from prior practice without accounting for legitimate reliance interests the prior practice engendered. *DHS*, 591 U.S. at 30.

USDA's termination decision did not fulfill requirements for reasoned decision making. Crucially, USDA repeatedly failed to offer ***any*** explanation for its action, let alone one that provides a path to discern its rationale.[5] USDA did not say, for example, what agency priorities had been served by the LFPA25 Agreement, which of those priorities had changed, why those priorities had changed, what the new priorities are, or why any change in priorities justified terminating the agreement.

---

[5] USDA implies it (somewhat) contemporaneously explained its termination decision. USDA Br. at 11 (citing a letter attached to Deputy Administrator Tuckwiller's declaration). The cited letter was ***backdated*** to June 6, but was actually sent on July 6—a week and a half after PDA moved for a preliminary injunction. Even the date written on the letter was a month after the actual termination decision.

Instead, the initial and final termination letters parroted the supposed regulatory authority, asserting that the LFPA25 Agreement "no longer effectuates agency priorities," but said nothing else. Compl. ¶¶ 37-42. Such conclusory assertions do not satisfy the APA's demand for reasoned decision making. *Coinbase*, 126 F.4th at 199.

USDA's decision to extend the program in December 2024 but terminate it in March 2025, without explanation, further exemplifies arbitrary and capricious action. It is precisely the type of "[u]nexplained inconsistency" in agency action that the Supreme Court has held violates the APA. *See Encino*, 579 U.S. at 222.

Moreover, if a food assistance program that benefits both Pennsylvania farmers and Pennsylvanians without reliable access to food somehow no longer effectuates USDA's priorities, that is a change from the agency's position only a few months earlier. Yet USDA has not acknowledged the change, even further reason their termination was arbitrary and capricious.

Nor did the termination give any consideration to the reasonable reliance in the LFPA25 Agreement. PDA, farmers, and food banks all anticipated the availability of funding through LFPA25 and had made plans based on it being available. Compl. ¶¶ 57-61. Reversing course without so much as acknowledging these interests was arbitrary and capricious.

17

Finally, USDA offers alternative reasons it might have terminated the LFPA25 agreement. *See* USDA Br. at 29. Those, however, conflict with the "foundational principle" of administrative law that agency action is judged on the contemporaneous reasons the agency gave for acting. *DHS*, 591 U.S. at 20. Anything else USDA might have or could have done is immaterial to this Court's review of what USDA actually did.

### B.    USDA's termination was contrary to law.

Whatever authority 2 C.F.R. § 200.340(a)(4) provides federal agencies to terminate federal awards has at least two limitations that ensure federal agencies cannot terminate agreements on a whim. Because USDA's termination did not adhere to either, it was contrary to law.

First, an agency's regulatory authority to terminate an agreement for no longer effectuating agency priorities exists only for priorities explicitly identified at the time the agreement was reached. This result follows from the § 200.340(a)(4)'s text and is confirmed by its rulemaking history.

Section 200.340(a)(4) contemplates termination when the award "no longer effectuates ***the*** program goals or agency priorities." 2 C.F.R. § 200.340(a)(4) (emphasis added). Using "the" signals that the nouns that follow are "definite or [have] been previously specified by context." *Nielsen v. Preap*, 586 U.S. 392, 408 (2019).

So "the" goals and priorities does not mean *any* goals or priorities; it means a defined set of program goals.

Elsewhere, the regulations answer where to look for the defined goals. When the Office of Management and Budget (OMB) created the regulations governing grant programs, it instructed agencies to identify the program's "priorities" at the time of announcing a funding opportunity. 78 Fed. Reg. 78,673 (Dec. 26, 2013). OMB later affirmed that a program's "goals" and "objectives" need to be established "before the applications are solicited." 85 Fed. Reg. 49,507 (Aug. 13, 2020). Current regulations reiterate that notices of funding opportunities must state the programs "clear goals and objectives." 2 C.F.R. § 200.202; *see also id.* § 200.204(8) (requiring agencies' notices of funding opportunities to include "goals and objectives of the program").

As further textual support, the termination regulation applies only when "an award ***no longer*** effectuates" the program priorities. 2 C.F.R. § 200.340(a)(4) (emphasis added). "No longer" denotes that the award must have once effectuated the priorities but ceased doing so. For that to make sense, the priorities must have previously existed. It cannot be the case that an award "no longer" effectuates newly identified agency priorities.

Consistent with the understanding that a program's goals would exist—and be clearly identified—at the time of award, OMB's rulemaking discussion of

19

§ 200.340 explained that the provision would apply when additional evidence reveals that the award no longer achieves the identified program goals. 85 Fed. Reg. 49,407-08. When creating § 200.340, OMB firmly rejected that the regulation could be used in the way USDA has employed it here, stating that its proper application was when "additional evidence reveals that a specific award objective is ineffective at achieving program goals" or where "additional evidence may cause the Federal awarding agency to significantly question the feasibility of the intended objective of the award." *Id.* at 49,507-08.

Second, § 200.340(a)(4) can be used only if "clearly and unambiguously" specified in the federal award. 2 C.F.R. § 200.340(b). This plainly worded condition means agencies must "state upfront in an award that it may terminate the award based on change in priority or goals, if it wishes to have the ability to exercise that termination in the absence of consent." *Metro. Transp. Auth. v. Duffy*, No. 25-cv-1413, 2025 WL 1513369, at *28 (S.D.N.Y. May 28, 2025).

USDA did not abide by either limit. USDA's termination is not premised on LFPA25 no longer advancing goals clearly identified at the program's inception, and USDA certainly does not rely on any newly discovered evidence. Nor was § 200.340(a)(4) clearly specified in the LFPA25 Agreement as a basis for termination. *Contra* USDA Br. at 33 n.18. Rather, the agreement broadly incorporated "all applicable parts of Title 2 of the Code of Federal Regulations (CFR), Parts 25, 170,

20

200, and 400." ECF No. 1-2. That general language is a far cry from the clear and unambiguous statement that was required. Even worse, the agreement incorporated only "applicable" parts without attempting to identify what parts are applicable.[6]

Ignoring either limit on § 200.340(a)(4) would introduce constitutional problems. Conditions governing federal funding must be stated unambiguously so that states can exercise their choice to receive federal money "knowingly, cognizant of the consequences of their participation." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). The federal government cannot surprise states with "post acceptance or 'retroactive' conditions." *Id.* at 25. Tolerating USDA's termination here would fundamentally destabilize the cooperative relationship between states and the federal government.

### C.    Both PDA's procedural claims are plausible.

USDA's failures to follow their regulatory and constitutional procedural obligations also are actionable.

Under the regulations it invoked to terminate LFPA25, USDA was required to identify the "reasons for termination." 2 C.F.R. § 200.341(a). USDA believes it complied not because it identified the reasons for the termination, but because it quoted the supposed authority for termination. But just as stating a grant is

---

[6] USDA's note that alternative termination options were stated explicitly in the agreement remains irrelevant. *Supra* at 18.

21

terminated for non-compliance without stating what non-compliance occurred does not provide the *reasons* for termination, stating a grant is terminated for failing to effectuate agency priorities without stating, at least, what priorities the agency is referencing and why the award fails to effectuate them, does not provide the reasons for termination.

The obligation under § 200.341 to explain what priorities the agency is referencing and what has changed is consistent with the proper interpretation of § 200.340(a)(4), as described above (and an agency's obligations under the APA). Additionally, giving the reasons for a decision is necessary for an injured party to make use of any administrative review process, including the one that USDA must be maintained (without limitation) under the first sentence of § 200.342.

Finally, USDA argues PDA has no protected interest in the LFPA25 Agreement, USDA Br. at 38, but the protected interest here is not the contract itself. The protected interest is continued operation of the food assistance program that PDA has been running since 2022. Compl. ¶ 93.

## CONCLUSION

For the reasons above, the Court should deny USDA's motion to dismiss.

August 13, 2025                          Respectfully submitted,

John H. Howard (Pa. 84002)               Jennifer C. Selber
Chief Counsel                            General Counsel
Pennsylvania Department of Agriculture
2301 N. Cameron Street                   Michael J. Fischer (Pa. No. 322311)
Harrisburg, PA 17110                     Executive Deputy General Counsel

                                         s/ *Jacob B. Boyer*
                                         Jacob B. Boyer (Pa. No. 324396)
                                         Stephen R. Kovatis (Pa. No. 209495)
                                         Deputy General Counsel
                                         Office of General Counsel
                                         30 North Street, Suite 200
                                         Harrisburg, PA 17101
                                         jacobboyer@pa.gov
                                         (717) 460-6786


                              *Counsel for Plaintiffs*

## CERTIFICATES

I hereby certify that a copy of this brief has been served on all counsel of record using the Court's CM/ECF system.

I further certify, as required under Local Rule 7.8(b)(2), that this brief is 4,960 words long as determined by Word's word count feature.

/s/ *Jacob B. Boyer*

Jacob B. Boyer

August 13, 2025
