UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GOVERNOR JOSH SHAPIRO, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF AGRICULTURE, *et al.*, <br><br> Defendants. | Case No. 1:25-CV-00998 <br><br> Hon. Joseph F. Saporito, Jr., <br> United States District Judge |

### REPLY IN SUPPORT OF MOTION TO DISMISS

JOHN C. GURGANUS
Acting United States Attorney


Richard D. Euliss
Assistant U.S. Attorney
DC 999166
1501 N. 6th Street, Box 202
Harrisburg, PA 17102
Phone: (717) 221-4482

I.  **Plaintiffs Bring Contractual Claims that Belong in the Court of Federal Claims**

In their opposition to the motion to dismiss, Doc. 16, Plaintiffs do not dispute that jurisdiction would lie exclusively in the Court of Federal Claims *if* their claims are contractual. Determining whether a claim "is 'at its essence' contractual" and falls outside of the APA's waiver of sovereign immunity depends on two factors: "the source of the rights upon which the plaintiff bases its claims," and "the type of relief sought (or appropriate)." *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1105–06 (D.C. Cir. 2022) (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982)).

Regarding the source of the rights upon which Plaintiffs base their claims, the following is uncontested. There is no legislation that funds, requires, or even contemplates the LFPA25[1] program. It was solely through USDA's unilateral discretion that LFPA25 – which would have been the third iteration of the original LFPA program – was even contemplated. Because there was no specific or general congressional appropriation, USDA planned to borrow money through the intra-agency CCC to fund the cooperative agreements, including the one with the Commonwealth of Pennsylvania. The LFPA25 Agreement at issue here explicitly stated that USDA relied upon the Commodity Credit Corporation Charter Act as

---

[1] This reply incorporates the definitions of all capitalized terms and acronyms in Defendants' opening brief. *See* Doc. 14.

legal authority to enter the Agreement. *See* Doc. 1-2, ¶ 4 ("Legal Authority"). That same contract included not only an exchange of promises and a description of the parties' responsibilities to one another – *id.*, Statement of Responsibilities, Section II – but also unequivocal language that allowed either party to cancel the agreement unilaterally with sixty days' advance notice. *Id.*, Statement of Responsibilities, II.C.5.

In the absence of the LFPA25 Agreement between USDA and PDA, therefore, what possible basis would Plaintiffs have to claim entitlement to additional funding? The answer is none. Because the LFPA25 Agreement is the *only* legal instrument that contemplates an additional federal award to the Commonwealth, it is – quite literally – the *only* source of potential rights upon which Plaintiffs could base their claims. This should lead inexorably to the related conclusions that Plaintiffs' claims are contractual and that the Court has no subject matter jurisdiction. *See*, *e.g.*, *Vera Inst. of Justice v. U.S. Dep't of Justice*, 2025 WL 1865160, at *7 (D.D.C. July 7, 2025) ("the court must be careful to guard against a disguised contract action that seeks to avoid the Tucker Act merely by alleging violations of regulatory or statutory provisions rather than breach of contract") (internal quotations and citations omitted).

Twice the Supreme Court recently (and correctly) indicated that district courts do not have subject matter jurisdiction over similar contract claims against the

2

United States because the Tucker Act vests that authority solely in the Court of Federal Claims. *See Dep't of Educ. v. California*, 604 U.S. ---, 145 S. Ct. 966 (2025) (per curiam); *Nat'l Institutes of Health v. Am. Pub. Health Ass'n*, 606 U.S. ---, 2025 WL 2415669, at *1 (Aug. 21, 2025). Several other federal courts faced with similar controversies naturally followed the Supreme Court's guidance. *See* Doc. 14 at 21-22. True, Plaintiffs have identified some cases that sidestepped *Dep't of Educ.*, but most of those contexts are dispositively distinguishable from this case.

In *Nat'l Job Corps Ass'n v. DOL*, for example, there was legislation *requiring* the agency to maintain the program at issue. 2025 WL 1752414, at *1 (S.D.N.Y June 25, 2025). Because of that, the court held that "Plaintiffs' rights stem from the statute, not the [contracts] with the government." *Id.* at *5. Here, there is no statute that requires USDA to operate the LFPA program. Similarly, in *Colorado v. U.S. Dep't of Health and Human Services*, there were specific congressional appropriations underlying the disputed grants. 2025 WL 1426226, at *2 (D.R.I. June 17, 2025). The court in *Colorado* reasoned, therefore, that the source of the plaintiffs' claims was not the contracts, but the APA and "the Constitution's Spending Clause and underlying separation of powers principles." *Id.* at *8. Plaintiffs here do not dispute that there was no congressional appropriation or other legislation that pertains in any way to the LFPA25 program.

3

Plaintiffs also rely on *Am. Pub. Health Ass'n v. Nat'l Institutes of Health*, where the court concluded that the controversy could proceed under the APA in part because none of the claims "depended on the terms and conditions" of the contracts. 145 F. 4th 39, 52 (1st Cir. 2025). That is decidedly untrue here, as the LFPA25 Agreement includes a specific provision defining the parties' rights to terminate. More importantly, about a week ago, the Supreme Court disagreed with the First Circuit and held that the "Administrative Procedure Act's 'limited waiver of [sovereign] immunity' does not provide the District Court with jurisdiction to adjudicate claims 'based on'. . . grants or to order relief designed to enforce any 'obligation to pay money' pursuant to those grants." *Nat'l Institutes of Health*, 2025 WL 2415669, at *1 (quoting *Dep't of Educ.*).

Finally in *Maryland v. Corp. for Nat'l and Comm. Serv.*, the court observed that federal legislation was the source of the plaintiffs' rights because the agency allegedly did not comply with a statutory notice-and-comment rulemaking equirement. 2025 WL 1585051, at 23 (D. Md. June 5, 2025). Plaintiffs point to no such statutory violation here.[2]

---

[2] While Plaintiffs do allege that USDA violated various regulations, the LFPA Agreement incorporated all those regulatory provisions directly into the contract and "made [them] a part of this agreement." *See* Doc. 1-2, Statement of Responsibilities, II.C.2. Because those regulatory provisions were actual contractual terms, any allegations that USDA violated them are tantamount to allegations that USDA violated terms of the contract.

4

The relief Plaintiffs request is also, at its essence, contractual. Plaintiffs ask the Court to "[d]eclare" that the USDA's termination of the LFPA25 Agreement was arbitrary and capricious, contrary to law, and violated due process," *see* Doc. 1 at Prayer for Relief, and to "enjoin USDA's May 2025 termination." *See* Doc. 7 at 17. Plaintiffs further ask the Court to "vacate" the termination. *See* Doc. 1 at Prayer for Relief. Plaintiffs in *Vera Inst.* requested essentially the same relief. 2025 WL 1865160, at *13 (requesting the court "[d]eclare . . . terminations . . . are unlawful . . ." and "[p]reliminarily and permanently enjoining Defendants . . from terminating grants[.]"). As that court correctly observed, "that non-monetary relief has little, if any, independent value from the future potential of monetary recovery." 2025 WL 1865160, at *13.

Plaintiffs argue that because their requests for relief are forward-looking and do not seek recovery of past-due payments, their claims cannot be contractual. *See* Doc. 16 at 7-9. This argument ignores that some of Plaintiffs' requested relief *is* retrospective (*e.g.*, asking the Court to "vacate" USDA's prior termination). Regardless, it is widely understood that specific performance is a prospective contractual remedy. "[S]pecific performance is a *remedy* for breach of contract, a cause of action which requires proof the contract was breached." *Macom Tech. Solutions Holdings, Inc. v. Infineon Tech. AG*, 881 F.3d 1323, 1332 (Fed. Cir. 2018) (emphasis in original) (citations omitted); *see also Lary v. U.S. Postal Serv.*, 472 F.3d

5

1363, 1369 (Fed. Cir. 2006) ("Enforcement by specific performance is intended to have the same effect that the performance due under a contract would have produced") (internal quotations and citations omitted). Thus, while true that Plaintiffs request some prospective relief, that same relief is functionally indistinguishable from the contractual remedy of specific performance.

Plaintiffs also rely on this retrospective/prospective relief distinction in a failed attempt to reconcile *Dep't of Educ*. Doc. 16 at 7-8. But the district court order at issue in *Dep't of Educ.* directed the Government not only to pay past-due obligations, but also "to continue paying obligations as they accrue." 145 S. Ct. at 968; *see also California v. Dep't of Educ.*, 769 F. Supp.3d 72, 80 (D. Mass. 2025) (issuing an order that, among other things, Defendants were "temporarily enjoined from implementing, giving effect to, maintaining, or reinstating under a different name the termination of any previously awarded" grant). This is prospective relief. The Supreme Court did not distinguish between the retrospective and prospective components of the lower court's order when explaining that "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the District Court ordered here." *Id*. (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)).

Plaintiffs also rely on *Am. Pub. Health Ass'n.* for the supposed significance of forward-looking relief and inaccurately describe that case as standing for the

6

proposition "that courts may *enjoin* federal actors from terminating grants for unlawful reasons." Doc. 16 at 6 (emphasis added). But the holding in *Am. Pub. Health Ass'n.* did no such thing, as the lower court there had "specifically declined to enter an injunction and instead limited its judgments to declaratory relief." 145 F.4th at 47.³ More important, the Supreme Court recently disagreed with the First Circuit's analysis and stayed the district court order, ruling that the APA did not empower district courts to entertain suits analogous to the one at bar. *See Nat'l Institutes of Health*, 2025 WL 2415669, at *1.

## II. The APA Does Not Permit Plaintiffs or the Judiciary to Meddle in Discretionary Agency Decisions

The agency "action" that Plaintiffs challenge is USDA's termination of the LFPA25 program, a decision that had nationwide scope and was not particular to the Commonwealth. The Charter Act expressly permits the CCC to borrow money to fund USDA priorities, *see* 15 U.S.C. §714b(i), and vests USDA with discretion to "determine the character of and the necessity for its obligations and expenditures and the manner in which they shall be incurred, allowed, and paid." *Id.* at §714b(j). In other words, the USDA was legally *permitted*, but not legally *obligated*, to raise

---

³ While Plaintiffs' mischaracterization surely was unintentional, the distinction matters, as Plaintiffs here have specifically requested a preliminary injunction that would impose relief that is tantamount to the contractual remedy of specific performance. In short, this dispute is contractual whether Plaintiffs' requested relief is retrospective or prospective.

7

the funds necessary for the LFPA25 program.  If Plaintiffs can seek judicial review in this context, it would mean that the APA empowers the Court to order USDA to borrow money to fund the continued operation of the LFPA program.  This cannot possibly be so.

While Plaintiffs concede that USDA had no "obligation to commit funding to LFPA25 in the first instance[,]" Doc. 16 at 15, they argue that once USDA made that initial commitment, any decision to reverse course "must not be arbitrary and capricious[.]" *Id*. According to Plaintiffs, this required USDA to "offer[] a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *Id*.  But one must ask, to what end should USDA have offered the Commonwealth a more elaborate explanation for its change in policy?  That is, even if USDA articulated a belief that it was fiscally irresponsible to borrow millions of dollars to continue funding a COVID-era program, it is not as though Plaintiffs – then armed with that explanation – could have challenged that internal agency rationale.  How to spend un-earmarked money – indeed, deciding whether to borrow money *at all* – is at the core of decisions within the exclusive authority of the agency.  This is precisely why the APA specifically excludes from its sovereign immunity waiver "agency action [that] is committed to agency discretion by law."  5 U.S.C. § 701(a)(2).

In their opening brief, Defendants relied upon *Lincoln v. Vigil*, 508 U.S. 182 (1993) when arguing that USDA's decision to terminate the LFPA25 is unreviewable under the APA as an action committed to agency discretion under 5 U.S.C. § 701(a)(2). In *Lincoln*, the Indian Health Service terminated a medical treatment program that had been funded through lump-sum appropriations from Congress. 508 U.S. at 186. A group of plaintiffs challenged the agency's termination under the APA. The Supreme Court held that "[t[he Service's decision to discontinue the Program is . . . unreviewable under § 701(a)(2)[,]" *id.* at 193, because "a lump-sum appropriation reflects a congressional recognition that an agency must be allowed flexibility to shift . . . funds within a particular . . . appropriation account so that the agency can make necessary adjustments for unforeseen developments and changing requirements." *Id.* (internal quotations omitted). That reasoning has equal application to this case.

Plaintiffs find significant that *Lincoln* involved a lump-sum congressional appropriation, which is not present here. But the fact that USDA had *no* congressional appropriation from which to fund LFPA25 and would have had to exercise its statutory authority under the Charter Act – authority that is expressly discretionary – to *borrow* money for that purpose only serves to make the present context an even more concrete example of an agency action "committed to agency discretion by law," 5 U.S.C. § 701(a)(2), and outside of APA review. Just as the

9

Supreme Court explained in *Lincoln* regarding the agency's use of the lump-sum appropriation, the USDA's decision whether to borrow money

> requires a complicated balancing of a number of factors which are peculiarly within its expertise: whether its resources are best spent on one program or another; whether it is likely to succeed in fulfilling its statutory mandate; whether a particular program best fits the agency's overall policies; and indeed, whether the agency has enough resources to fund the program at all.

508 U.S. at 193 (internal quotations omitted). Here, USDA "is far better equipped than the courts to deal with the many variables involved in the proper ordering of its priorities." *Id*. At bottom, USDA's decision to terminate LFPA25 is not reviewable under the APA, so the agency's actions are not subject to the arbitrary and capricious standard.[4]

### III. None of Plaintiffs' Remaining Arguments Save Their Case

Plaintiffs make a textualist argument concerning the language in 2 C.F.R. § 200.340(a)(4) that allows agencies to terminate a federal award if it "no longer effectuates the program goals or agency priorities." *See* Doc. 16 at 18-20. Plaintiffs' point appears to be that the regulation's reference to "the" program goals is to a static, definite set of program goals that cannot change. *Id*. As a preliminary matter, this alleged "violation of law" is not identified in Plaintiffs' complaint, and it is black letter law that litigants cannot amend their pleading in briefing to oppose a motion

---

[4] Of course, Defendants do not concede that USDA's termination was arbitrary and capricious even if that standard applied. *See* Doc. 14 at 28-31.

10

to dismiss. *See Reed v. Chambersburg Area Sch. Dist.*, 951 F.Supp.2d 706, 720 (M.D. Pa. 2013). Regardless, and without conceding Plaintiffs' point, it suffices to note that the regulation uses a disjunctive "or." So, the agency has authority to terminate an award if it no longer effectuates the program goals *or* agency priorities. Of course, agency priorities are not static and can/should change, as they did here. Plaintiffs ignore the "agency priorities" alternative described in the regulation.

Otherwise, Defendants have already responded to Plaintiffs' reiterated argument that Section 200.40(a)(4) required the LFPA25 Agreement to state upfront that the award could be terminated if it no longer effectuated program goals or agency priorities. *See* Docs. 14 at 31-33; 16 at 20-21. The same is true for the argument that USDA failed to give an adequate explanation of the reasons for its termination. *See* Docs. 14 at 33-34; 16 at 21-22.

Finally, Defendants argued in their opening brief that the Court should dismiss the procedural due process claim because Plaintiffs do not have a constitutionally protected interest in the LFPA25 Agreement. *See* Doc. 14 at 38-40. Plaintiffs offered a mere two sentence, conclusory rebuttal insisting that they do have a protected interested. *See* Doc. 16 at 22. But saying it is so does not make it so. Plaintiffs' failure to cite any supporting authority or to elaborate on their reasoning speaks for itself.

## CONCLUSION

The Court should dismiss the Complaint with prejudice.

Respectfully submitted,

JOHN C. GURGANUS
Acting United States Attorney

s/Richard D. Euliss
RICHARD D. EULISS
Assistant U.S. Attorney
DC999166
U.S. Attorney's Office for the
Middle District of Pennsylvania
1501 N. 6th Street, Box 202
Harrisburg, PA 17102
Phone: (717) 221-4482
Richard.D.Euliss@usdoj.gov

Dated: August 26, 2025

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GOVERNOR JOSH SHAPIRO, *et al.*, | Case No. 1:25-CV-00998 |
| Plaintiffs, | |
| v. | Hon. Joseph F. Saporito, Jr., United States District Judge |
| U.S. DEPARTMENT OF AGRICULTURE, *et al.*, | |
| Defendants. | |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers. That on August 26, 2025, she filed the:

**REPLY IN SUPPORT OF MOTION TO DISMISS**

via the Court's CM/ECF system, which will automatically generate notice upon all counsel of record.

s/ Amanda J. Albert
AMANDA J. ALBERT
Legal Administrative Specialist