## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

GOVERNOR JOSH SHAPIRO,
et al.,

          Plaintiffs,

          v.

U.S. DEPARTMENT OF
AGRICULTURE, et al.,

          Defendants.

CIVIL ACTION NO. 1:25-cv-00998

(SAPORITO, J.)

## MEMORANDUM

In this action, the plaintiffs—Josh Shapiro, Governor of Pennsylvania; the Pennsylvania Department of Agriculture ("PDA"); and Russell Redding, Secretary of PDA—challenge the decision by the defendants—the United States Department of Agriculture ("USDA"); Brooke Rollins, Secretary of USDA; and the Agricultural Marketing Service ("AMS"), a federal agency within USDA—in which the defendants terminated the Local Food Purchase Assistance 2025 Cooperative Agreement (the "LFPA25 Agreement") entered into between AMS and PDA in December 2024.

The plaintiffs contend that the federal agency's termination of the LFPA25 Agreement was in violation of a provision of the Administrative

Procedures Act ("APA"), 5 U.S.C. § 706(2)(A), which permits a federal district court to set aside an agency action that is arbitrary, capricious, or otherwise not in accordance with law. The plaintiffs further contend that the federal agency's termination of the LFPA25 Agreement was unlawful because it violated their Fifth Amendment rights to procedural due process.

The plaintiffs have filed a motion for a preliminary injunction, seeking an order enjoining the defendants from implementing the agency's May 7, 2025, termination decision pending judicial review of the challenged agency action. Doc. 5. The plaintiffs' motion is fully briefed and ripe for decision. Doc. 7; Doc. 10; Doc. 15; Doc. 18; Doc. 22.

The defendants have filed a motion to dismiss the plaintiffs' APA claims for lack of subject matter jurisdiction, and to dismiss the plaintiffs' due process claim for failure to state a claim upon which relief can be granted. Doc. 11. The defendants' motion is fully briefed and ripe for decision. Doc. 14; Doc. 16; Doc. 17; Doc. 18; Doc. 22.

## I.  BACKGROUND

The LFPA25 Agreement did not create a new program. Instead, it supplied a third round of funding to Pennsylvania under USDA's Local

Food Purchase Assistance ("LFPA") program. Through the LFPA, USDA awards funding to states and other government entities to purchase foods produced either within the state or within 400 miles of the delivery destination to help support local, regional, and underserved producers. The purpose of the program is to maintain and improve food and agricultural supply chain resiliency by helping states to procure and distribute local and regional foods and beverages that are healthy, nutritious, or unique to their geographic areas and that meet the needs of the population. Food purchased under the LFPA serves feeding programs, including food banks and organizations that reach underserved communities.

Funding for LFPA initially came from the America Rescue Plan Act of 2021, Pub. L. No. 117-2, § 1001, 135 Stat. 4, 10 (2021), which appropriated $4 billion to purchase and distribute food and agricultural commodities to individuals in need. Pennsylvania was awarded $15,200,000 in this initial round of funding for LFPA programs. Pennsylvania subcontracted with Feeding Pennsylvania, a statewide organization of approximately one dozen regional food banks that purchase food from local farmers, which is then distributed to a network

of thousands of local food pantries and soup kitchens across Pennsylvania, which in turn serve individuals and communities with limited access to food.

In November 2022, USDA announced that it was expanding the LFPA program with an additional $464 million in funding from the Commodity Credit Corporation ("CCC"), a government-owned corporation under the supervision and direction of the U.S. Secretary of Agriculture. The CCC has been authorized by Congress to procure agricultural commodities for sale to other government agencies, foreign governments, and domestic, foreign, or international relief or rehabilitation agencies, and to meet domestic requirements. *See* 15 U.S.C. § 714c(c). This second round of funding for the LFPA program was called "LFPA Plus." Pennsylvania was awarded an additional $14,724,610 in this second round of funding for LFPA programs.

In October 2024, USDA announced its commitment to a third round of funding for the LFPA program, referred to as "LFPA25," with an additional $500 million in funding from the CCC. Pennsylvania was awarded an additional $13,003,131 in this third round of funding for LFPA programs. On or about December 19, 2024, a designated

representative of USDA signed the LFPA25 Agreement for Pennsylvania. Compl. Ex. 1, at 3, Doc. 1-2. On December 27, 2024, Secretary Redding countersigned the LFPA Agreement on behalf of PDA. *Id.* at 2. The LFPA25 Agreement was intended to provide funding for Pennsylvania's LFPA program after the LFPA Plus funds were exhausted. At the time, Pennsylvania had exhausted its initial, congressionally appropriated round of funding under the LFPA, but a balance of funds remained available under LFPA Plus, which was not exhausted until after May 2025.[1] The LFPA25 Agreement expressly provided that it was to be executed "according to all applicable parts of Title 2 of the Code of Federal Regulations (CFR), Parts 25, 170, 200, and 400 or as they may be later revised, and successive published regulations as appropriate." *Id.* at 4. It further provided that the agreement would continue in force until January 14, 2028, unless "amended or terminated by mutual consent of the parties in writing or *terminated by either party upon 60-day notice in writing.*" *Id.* at 5 (emphasis added).

---

[1] The complaint alleges that PDA had less than $30,000 in LFPA Plus funds remaining by the end of May 2025. Compl. ¶ 28. It is our understanding that the remaining balance was exhausted shortly thereafter. *See* Russell C. Redding Decl. ¶ 12, Doc. 7-2; Jack David Tuckwiller Decl. ¶¶ 12–13, Doc. 10-1.

On March 7, 2025, the deputy administrator of AMS, Jack Tuckwiller, sent a letter to PDA notifying the state agency that the LFPA25 Agreement would be terminated in 60 days "in accordance with 2 CFR § 200.340(a)(4) and the terms and conditions of the award." Compl. Ex. 2, Doc. 1-3. Echoing the text of § 200.340, the letter stated that the agency had determined that the LFPA25 Agreement "no longer effectuates agency priorities" and, thus, "termination of the award is appropriate." *Id.* The notice further indicated that it was being sent "[p]ursuant to 2 CFR § 200.341." *Id.* The letter did not provide any further explanation of why or how the LFPA25 Agreement no longer effectuated USDA priorities.[2]

On March 25, 2025, Secretary Redding wrote Deputy Administrator

---

[2] The Office of Management and Budget has promulgated a set of regulations, the Uniform Grant Guidance, 2 C.F.R. part 200. These regulations "appl[y] to federal agencies that make federal awards to non-federal and other entities. These regulations lay out a host of requirements for federal [awards], including the procedural steps an agency must take before it can suspend or terminate [an award]." *Climate United Fund v. Citibank, N.A.*, 778 F. Supp. 3d 90, 101 (D.D.C. 2025); *see also* 2 C.F.R. § 200.1 (defining the terms "Federal award" to include grant agreements and cooperative agreements, which are also defined therein); *id.* § 200.340 (termination of Federal awards); *id.* § 200.341 (notice of termination); *id.* § 200.342 (objections, hearings, and appeals).

Tuckwiller to urge the agency to rescind its termination notice and, if it would not, to provide PDA with the factual and legal basis for its determination that the LFPA25 Agreement no longer effectuated agency priorities. Compl. Ex. 3, Doc. 1-4. Redding also asked that USDA provide its written procedures for processing objections, hearings, and appeals, as required under 2 C.F.R. § 200.342, or to inform PDA that no such procedures existed. *Id.*

USDA never responded to Redding's letter.

On May 7, 2025, Deputy Administrator Tuckwiller sent a letter formally terminating the LFPA25 Agreement. Compl. Ex. 5, Doc. 1-6. The termination letter stated that "the agreement was terminated in accordance with 2 CFR § 200.340(a)(4) and the terms and conditions of the award." *Id.*

## II.  LEGAL STANDARDS

### A. Rule 12(b)(1) Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of establishing the existence of subject matter jurisdiction when challenged under Rule

12(b)(1). *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). A defendant may challenge the existence of subject matter jurisdiction in one of two fashions: it may attack the complaint on its face or it may attack the existence of subject matter jurisdiction in fact, relying on evidence beyond the pleadings. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Where a defendant attacks a complaint as deficient on its face, "the court must consider the allegations of the complaint as true." *Mortensen*, 549 F.2d at 891. "In deciding a Rule 12(b)(1) facial attack, the court may only consider the allegations contained in the complaint and the exhibits attached to the complaint; matters of public record such as court records, letter decisions of government agencies and published reports of administrative bodies; and 'undisputably authentic' documents which the plaintiff has identified as a basis of his claims and which the defendant has attached as exhibits to his motion to dismiss." *Medici v. Pocono Mountain Sch. Dist.*, No. 09-CV-2344, 2010 WL 1006917, at *2 (M.D. Pa. Mar. 16, 2010). However, when a motion to dismiss attacks the existence of subject matter jurisdiction in fact, "no presumptive truthfulness attaches to plaintiff's

allegations," and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. This case falls into the former category.

### B. Rule 12(b)(6) Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual

allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Phila.*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cnty. of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008).

III.    DISCUSSION

**A. Counts I, II, and III: APA Claims**

With respect to the plaintiffs' APA claims, set forth in Counts I, II, and III of the complaint, the defendants argue that this federal district court lacks subject matter jurisdiction under the APA "to enforce a contractual obligation to pay money" against the federal government. *See Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025) (per curiam) (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002); *see also* Br. Supp. 13 (quoting *California*, 604 U.S. at 651), Doc. 14. "Instead, the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the

United States.'" *California*, 604 U.S. at 651 (quoting 28 U.S.C. § 1491(a)(1)). *See generally Randall v. United States*, 95 F.3d 339, 346 (4th Cir. 1996) ("The interplay between the Tucker Act and the APA is somewhat complicated and raises some significant issues of federal court jurisdiction."). The defendants characterize the LFPA25 Agreement as such a contract, and the plaintiff's APA claims as ones seeking to enforce a contractual obligation to pay money.

"The United States and its agencies are generally immune from suit in federal court absent a clear and unequivocal waiver of sovereign immunity." *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1105 (D.C. Cir. 2022). In asserting their claims, the plaintiffs have relied on the APA, which waives sovereign immunity for claims against the United States "seeking relief other than money damages" brought by parties "adversely affected or aggrieved by agency action," provided no "other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702.

The defendants, on the other hand, rely on the Tucker Act, which grants jurisdiction to the Court of Federal Claims "to render judgment upon any claim against the United States founded . . . upon any express

or implied contract with the United States." 28 U.S.C. § 1491(a)(1). Courts have interpreted this provision "to confer exclusive jurisdiction over breach of contract claims against the United States seeking more than $10,000 in damages on the Court of Federal Claims, and thus to impliedly forbid contract claims against the Government from being brought in district court under the waiver in the APA." *Crowley*, 38 F.4th at 1106 (citations, internal quotation marks, and brackets omitted).[3] "In other words, if a claim falls within the Tucker Act's jurisdiction conferred on the Court of Federal Claims, the APA's waiver of sovereign immunity does not apply to that claim, and a federal district court would therefore lack subject-matter jurisdiction." *Am. Ctr. for Int'l Lab. Solidarity v. Chavez-Deremer*, 789 F. Supp. 3d 66, 83 (D.D.C. 2025).

"[A]n action against the United States which is *at its essence* a contract claim lies within the Tucker Act and . . . a district court has no power to grant injunctive relief in such a case." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982) (emphasis added). "The Tucker Act impliedly forbids an APA action seeking injunctive and declaratory relief

---

[3] The Little Tucker Act, 28 U.S.C. § 1346(a)(2), "gives district courts concurrent jurisdiction with the Court of Federal Claims in most Tucker Act cases seeking less than $10,000." *Crowley*, 38 F.4th at 10106 n.5.

only if that action is a disguised breach-of-contract claim." *Thakur v. Trump*, 148 F.4th 1096, 1103 (9th Cir. 2025) (quoting *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023) (brackets and internal quotation marks omitted). "To determine whether a claim is a disguised breach-of-contract claim, we apply the *Megapulse* test, which considers: (1) the source of the rights upon which the plaintiff bases its claims and (2) the type of relief sought (or appropriate)." *Thakur*, 148 F.4th at 1103 (citing *N. Star Alaska v. United States*, 14 F.3d 36, 37 (9th Cir. 1994); *see also Megapulse*, 672 F.2d at 968; *Porwancher v. Nat'l Endowment of the Humans.*, 792 F. Supp. 3d 107, 112 (D.D.C. 2025); *Chavez-Deremer*, 789 F. Supp. 3d at 83; *Pacito v. Trump*, 772 F. Supp. 3d 1204, 1214 (W.D. Wash. 2025), *appeal filed*, No. 25-1939 (9th Cir. Mar. 25, 2025); *Maryland v. Corp. for Nat'l & Cmty. Serv.*, 785 F. Supp. 3d 68, 103 (D. Md. 2025). "If rights and remedies are *statutorily* or *constitutionally* based, then district courts have jurisdiction; if rights and remedies are *contractually* based then only the Court of Federal Claims does, even if the plaintiff formally seeks injunctive relief." *United Aeronautical*, 80 F.4th at 1026; *see also Thakur*, 148 F.4th at 1103; *Pacito*, 772 F. Supp. 3d at 1214. "The mere fact that a case involves a contract 'does not, by

triggering some mystical metamorphosis, automatically transform an action . . . into one on the contract and deprive the court of jurisdiction it might otherwise have.'" *Chavez-Deremer*, 789 F. Supp. 3d at 83 (quoting *Crowley*, 38 F.4th at 1107 (ellipsis in original)).

The plaintiffs advance three claims under the APA, 5 U.S.C. § 706(2)(A). First, in Count I, the plaintiffs contend that the agency's termination of the LFPA25 cooperative agreement was arbitrary and capricious because the termination notice and letter claimed that the agreement no longer effectuated agency priorities, but failed to provide any further explanation of what those agency priorities were or how the program failed to advance them. Next, in Count II, the plaintiffs contend that the termination violated 2 C.F.R. § 200.340, and thus was contrary to law, because the LFPA25 cooperative agreement did not include a provision expressly permitting the agency to terminate the agreement based on changed agency priorities. Finally, in Count III, the plaintiffs contend that the termination violated 2 C.F.R. § 200.341(a), which requires written notice of termination to provide "reasons for termination," and 2 C.F.R. § 200.342, which requires an agency terminating such a federal award to provide recipients "with an

opportunity to object and provide information challenging the action," and thus it was contrary to law.

Upon review of the pleadings, the cooperative agreement, the parties' motion papers, and the substantial volume of recent jurisprudence in this area of the law, we conclude that the APA claims asserted by the plaintiffs in this case are essentially contractual, rather than based on federal statute or regulation, and thus they belong in the Court of Federal Claims.

At bottom, the source of the rights the plaintiffs seek to vindicate is the LFPA25 cooperative agreement itself, not any statute or regulation. The regulation upon which the termination was explicitly based requires that the basis for termination be spelled out in "the terms and conditions of the Federal award" itself. *See* 2 C.F.R. § 200.340(a)(4) ("The Federal award may be terminated . . . [b]y the Federal agency . . . pursuant to the terms and conditions of the Federal award, including, to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities."); *see also id.* § 200.340(b) ("The Federal agency . . . must clearly and unambiguously specify all termination provisions in the terms and conditions of the Federal award.").

> Thus, to determine whether [the agency] violated
> § 200.340(a)(4), the court must look back to the award[]
> [itself]. It must ask: Do[es] the agreement[] contain a
> term permitting [the agency] to terminate the award
> for no longer effectuating agency priorities, or is such
> provision absent? That is a classic contract question.

*Vera Inst. of Justice v. U.S. Dep't of Justice*, ___ F. Supp. 3d ____, 2025 WL 1865160, at *13 (D.D.C. July 7, 2025). "Although [§ 200.340(a)] might impose procedural requirements on the government having some impact on the contract, the [regulation] in no way creates the substantive right to the remedy [the plaintiffs] seek[]." *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985); *see also Vera Inst.*, 2025 WL 1865160, at *13 (quoting *Spectrum Leasing*, 764 F.2d at 894). In other words, PDA's "right to the . . . payments arose only upon creation and satisfaction of its [cooperative agreement] with the government; in no sense did it exist independently of that [cooperative agreement]." *Spectrum Leasing*, 764 F.2d at 894; *see also Vera Inst.*, 2025 WL 186516, at *13 (quoting *Spectrum Leasing*, 764 F.2d at 894). "That the termination also arguably violates certain other regulations does not transform the action into one based solely on those regulations. Nor does plaintiff's decision to allege only a violation of the regulations change the essential character of the action." *Ingersoll-Rand Co. v. United States*,

780 F.2d 74, 78 (D.C. Cir. 1985); *see also Vera Inst.*, 2025 WL 1865160, at

*12 (quoting *Ingersoll-Rand*, 780 F.2d at 78).[4]

In a recently filed notice of supplemental authority, the plaintiffs

contend that, as a *cooperative agreement*, the LFPA25 agreement is not

an enforceable contract under the Tucker Act because it lacks

consideration, providing no direct and tangible benefit to the federal

government, and, as a consequence, the Court of Federal Claims does not

possess exclusive jurisdiction in this case. *See* Doc. 18. Contrary to the

plaintiffs' argument, however, we find that the LFPA25 cooperative

agreement constitutes an enforceable contract. In exchange for provision

of $13 million in funds awarded under the LFPA agreement, PDA agreed

to comply with "an array of requirements attached to the receipt, use,

and distribution of the" funds awarded. *See Columbus Reg'l Hosp. v.*

*United States*, 990 F.3d 1330, 1340 (Fed. Cir. 2021); *id.* ("[C]onsideration

may consist of performance or a return promise to perform, and

performance 'may be a specified act of forbearance, or any one of several

specified acts or forbearances of which the offeree is given the choice, or

---

[4] We note that the LFPA25 cooperative agreement explicitly incorporates 2 C.F.R. part 200 as part of the agreement. *See* Compl. Ex. 1, at 4, Doc. 1-2.

such conduct as will produce a specified result[.]'") (quoting Restatement (Second) of Contracts § 71 cmt. d (1981)); *see also Vera Inst.*, 2025 WL 1865160, at *10.

As for the relief requested, the plaintiffs studiously avoid requesting a retrospective award of money damages. But the relief they do request—an order declaring that the termination action was unlawful and vacating the agency's termination action, with the effect of reinstating the LFPA25 cooperative agreement and making the allotted $13 million in funds once again available to reimburse PDA for its purchase of local agricultural products—amounts in essence to the "classic contractual remedy of specific performance." *U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*, 770 F. Supp. 3d 155, 163–64 (D.D.C. 2025); *see also Ingersoll-Rand*, 780 F.2d at 79–80; *Vera Inst.*, 2025 WL 1865160, at *12. Most critically, the non-monetary relief sought by the plaintiffs in this case "has little, if any, independent value [apart] from the future potential of monetary recovery" under the contract itself. *Vera Inst.*, 2025 WL 1865160, at *13. Several allegations in the complaint underscore the fact that, notwithstanding the complaint's focus on nonmonetary relief, the actual aim of this litigation is to secure the promised $13 million in

funds for the purchase of local agricultural products. *See, e.g.*, Compl. ¶¶ 31, 50, 57–59, 61, 73, 93 (discussing the intended use of LFPA25 funds and the ultimate impact of the agency's termination action on PDA's agricultural support and food assistance programs), Doc. 1. The declaratory and injunctive relief sought by the plaintiffs here "does not have 'considerable value' apart from the 'future potential for monetary gain.' . . . [I]t merely ensures that the monetary relief will continue." *Vera Inst.*, 2025 WL 1865160, at *13. As Justice Gorsuch has commented in a similar context: "An order vacating the government's decision to terminate [awards] under the APA is in every meaningful sense an order requiring the government to pay those [awards]." *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 606 U.S. ___, 145 S. Ct. 2658, 2664 (2025) (Gorsuch, J., concurring in part and dissenting in part).

Moreover, we find little to distinguish the scenario presented in this case from that presented in *Department of Education v. California*, 604 U.S. 650 (2025) (per curiam), and thus we find relief under the APA foreclosed by that Supreme Court precedent. Much like this case, the federal agency in *California* terminated grant agreements on the ground that the grants were "inconsistent with, and no longer effectuate[d],

Department priorities," with little elaboration, citing 2 C.F.R. § 200.340(a)(4). *See id.* at 656 (Jackson, J., dissenting) (quoting the termination letter). The plaintiffs challenged this award termination with minimal explanation as arbitrary and capricious. *See id.* (Jackson, J., dissenting) (describing the case's procedural history). The trial court entered a preliminary injunction, which the Supreme Court ultimately stayed, holding that the government was likely to succeed in showing that the district court lacked jurisdiction in that scenario. *See id.* at 968. In light of the *California* decision, we find the plaintiffs here have failed to meet their burden of demonstrating that this Court has jurisdiction over the plaintiffs' claim that termination of the LFPA25 cooperative agreement with minimal explanation was an arbitrary and capricious agency action under the APA. *See Harris Cnty. v. Kennedy*, 786 F. Supp. 3d 194, 218 (D.D.C. 2025).

Accordingly, the plaintiffs' APA claims, set forth in Counts I, II, and III of the complaint, will be dismissed for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1).

## B. Count IV: Fifth Amendment Due Process Claim

In Count IV of the complaint, the plaintiffs assert a Fifth

Amendment due process claim, contending that they had a protected property interest in the LFPA25 award, and the agency's termination action deprived them of that protected interest without due process of law. The defendants move to dismiss this claim for failure to state a claim upon which relief can be granted, arguing that the plaintiffs lacked any protected property interest in the LFPA25 cooperative agreement or award.[5]

"The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). As the defendants have noted in their supporting brief,[6]

> [o]utside of the employment context, courts have resisted application of due-process principles to government contracts because with scores of millions of government contracts in effect at any point in time,

---

[5] The parties do not contest our exercise of subject matter jurisdiction under the APA with respect to this claim. *See generally Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*, 967 F.2d 598, 609–11 (D.C. Cir. 1992) (finding the exercise of jurisdiction under the APA proper with respect to procedural due process claim based on deprivation of a protected property interest in a government contract), *abrogated on other grounds as recognized by Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 620 (D.C. Cir. 2017); *Sharp v. Weinberger*, 798 F.2d 1521, 1523–24 (D.C. Cir. 1986); *Vera Inst.*, 2025 WSL 1865160, at *7.

[6] *See* Br. Supp. 38 (quoting *Vera Inst.*, 2025 WL 1865160, at *15), Doc. 14.

> it is unimaginable that all government agencies would
> be required to provide a hearing before they take any
> action that is arguably inconsistent with a contract.

*Vera Inst.*, 2025 WL 1865160, at *15 (quoting *New Vision Photography Program, Inc. v. D.C.*, 54 F. Supp. 3d 12, 29 (D.D.C. 2014)); *see also Reich v. Barry*, 883 F.2d 239, 242 (3d Cir. 1989) ("[I]f every breach of contract by someone acting under color of state law constituted a deprivation of property for procedural due process purposes, the federal courts would be called upon to pass judgment on the procedural fairness of the processing of a myriad of contractual claims against public entities.").

In response, the plaintiffs have offered no reason to think that the LFPA25 cooperative agreement is "different from the 'millions of government contracts in effect at any point in time' to which courts seldom apply 'due-process principles.'" *Nat'l Urb. League v. Trump*, 783 F. Supp. 3d 61, 93 (D.D.C. 2025); *see also Vera Inst.*, 2025 WL 1865160, at *15 (quoting *Nat'l Urb. League*, 783 F. Supp. 3d at 93). Indeed, the plaintiffs have devoted no more than two cursory, unsupported sentences to this issue in their opposition brief, so it is waived.[7] *See Monzon v. De*

---

[7] The relevant portion of the plaintiffs' opposition brief follows in its entirety: "Finally, USDA argues PDA has no protected interest in the

*(continued on next page)*

*La Roca*, 910 F.3d 92, 106 n.90 (3d Cir. 2018) (finding argument waived where party failed to develop it beyond two sentences); *Rodrigues v. Fort Lee Bd. of Educ.*, 458 Fed. App'x 124, 128 (3d Cir. 2011) (per curiam) ("[Plaintiffs'] failure to develop these arguments is a sufficient ground for deeming any such claims waived."); *Gen. Auto Serv. Station v. City of Chi.*, 526 F.3d 991, 1006 (7th Cir. 2008) (concluding that a two-paragraph "cursory argument" was "so brief that [plaintiff] ha[d] waived it"); *Weinstein v. Schwartz*, 422 F.3d 476, 477 n.1 (7th Cir. 2005) ("The failure to develop an argument constitutes a waiver."); *Walker v. N.Y. State Dep't of Health*, 788 F. Supp. 3d 427, 503 (E.D.N.Y. 2025) ("Plaintiffs forfeited these arguments by making only conclusory assertions in their brief in opposition to Defendants' Motion to Dismiss."); *Rice v. Kim*, 704 F. Supp. 3d 845, 850 (N.D. Ill. 2023) ("[B]ecause it is a cursory argument citing no case law, that argument is waived."); *Holdcraft v. Town of Brookfield*, 365 F. Supp. 3d 190, 198 n.5 (D. Mass. 2019) (finding procedural due process

---

LFPA25 Agreement, USDA Br. at 38, but the protected interest here is not the contract itself. The protected interest is continued operation of the food assistance program that PDA has been running since 2022. Compl. ¶ 93." Br. Opp'n 22, Doc. 16. The plaintiffs have failed to articulate any substantive argument against dismissal, and they cite no legal authority whatsoever in support of these conclusory statements.

claim waived because "brief conclusory arguments made in Plaintiff's opposition brief" failed to provide any legal analysis to support the claim).

Notwithstanding the plaintiffs' waiver, we find the defendants' substantive argument for dismissal persuasive. The plaintiffs have failed to plausibly allege the deprivation of a protected property interest.

Accordingly, the plaintiffs' Fifth Amendment due process claim, set forth in Count IV of the complaint, will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). Moreover, this claim will be dismissed *without* leave to amend, as any such amendment is clearly futile.

## IV.    CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss will be granted. Counts I, II, and III of the complaint will be dismissed for lack of subject matter jurisdiction. Count IV of the complaint will be dismissed for failure to state a claim upon which relief can be granted. The plaintiffs' motion for a preliminary injunction will be denied as moot.

An appropriate order follows.


Dated: December 3, 2025         *s/Joseph F. Saporito, Jr.*
                                JOSEPH F. SAPORITO, JR.
                                United States District Judge